# EXHIBIT 12

# DHS Says Recording or following law enforcement 'sure sounds like obstruction of justice'

r  reason.com/2025/12/22/dhs-says-recording-or-following-law-enforcement-sure-sounds-like-obstruction-of-justice

C.J. Ciaramella                                                        December 22, 2025



The Department of Homeland Security (DHS) says recording or following federal law enforcement "sure sounds like obstruction of justice," despite federal circuit courts repeatedly ruling that such activity is core First Amendment speech.

In response to a question from *Reason* asking if the department considered following or recording a federal law enforcement officer to be obstruction of justice, the DHS Office of Public Affairs said in an emailed statement attributed to an unnamed spokesperson: "That sure sounds like obstruction of justice. Our brave ICE law enforcement face a more than 1150% increase in assaults against them. If you obstruct or assault our law enforcement, we will hunt you down and you will be prosecuted to the fullest extent of the law."

It's one of the most direct public statements yet from DHS articulating a policy that treats following, recording, and revealing the identities of federal immigration officers as illegal activity. There have been months of news reports and viral showing federal immigration officers threatening, brandishing weapons, and violently detaining people for following and recording them in public.

David Bier, director of immigration studies at the Cato Institute, collected dozens of these instances in a report released earlier this month. Bier concluded that the amount of video evidence, in conjunction memos and public statements from DHS leadership, amounts to "an official, nationwide policy of intimidating and threatening people who attempt to observe and record [DHS] operations."

Civil libertarians say it's an unconstitutional policy. Although the Supreme Court has declined to address the issue, seven federal circuit courts have firmly upheld the right to record and monitor the police, as long as one doesn't physically interfere with them.

"Observing, following, and recording law enforcement are unambiguously protected by the First Amendment of the Constitution," Bier tells *Reason*. "They are not obstruction of justice. The right to record helps guarantee justice by ensuring accountability and an accurate record of events."

For example, the U.S. Court of Appeals for the 5th Circuit concluded in 2017 that "First Amendment principles, controlling authority, and persuasive precedent demonstrate that a First Amendment right to record the police does exist, subject only to reasonable time, place, and manner restrictions."

The U.S. Court of Appeals for the 10th Circuit joined the club in 2022, when it ruled that a Colorado man had presented a clear First Amendment retaliation claim against a police officer who prevented him from filming a traffic stop.

Likewise, courts have frequently ruled that the First Amendment protects the right to warn others of police activity, such as flashing one's headlights to warn of a speed trap ahead. In 2023, the U.S. Court of Appeals for the 2nd Circuit ruled that a Connecticut man's First Amendment rights were violated when police arrested him for holding a sign warning drivers of police activity ahead.

"The right to record publicly visible law enforcement activity is a core First Amendment right," says Scarlet Kim, a senior staff attorney with the ACLU's Speech, Privacy, and Technology Project. "It creates an independent record of what officers are doing, and it is no accident that some of the most high-profile cases of misconduct have involved video recordings. The burning question is why ICE officers feel the need to hide who they are and what they do from the public—masking their faces, lacking visible ID, driving unmarked vehicles, and now attacking those who document their activities."

The guiding First Amendment principle behind these court decisions was most memorably expressed in the 1987 Supreme Court ruling in *Houston v. Hill*, which struck down a Houston ordinance that made it unlawful to oppose or interrupt a police officer: "The freedom of

individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state," Supreme Court Justice William J. Brennan Jr. wrote.

On December 17, *Reason* asked DHS' Office of Public Affairs for comment on the Cato Institute report: "Does DHS have any response to the report and why its officers are threatening, violently detaining, and arresting U.S. citizens for protected First Amendment activity?"

The office responded on December 18 in a statement attributed to an unnamed spokesperson: "We are proud of the brave men and women of ICE who are facing a 1150% increase in assaults as cowardly politicians and activists encourage violence against them. We have said it a million times: ICE does NOT arrest or deport U.S. citizens. If a U.S. citizen is arrested, it is because they have obstructed or assaulted law enforcement. Every day the men and women of ICE put their lives on the line to protect and defend the lives of American citizens. This violence against ICE must end."

*Reason* sent a follow-up question roughly half an hour later: "Do you consider recording or following a federal law enforcement officer to be obstruction?" On Friday night, DHS Office replied with the aforementioned comment that this "sure sounds like obstruction of justice" and that they will prosecute people "to the fullest extent of the law."

An unprecedented number of federal prosecutions for assaulting and impeding federal immigration officers have collapsed in recent months—sometimes because grand juries declined to indict defendants for lack of probable cause, sometimes because U.S. Attorney's Offices are dropping the cases once they review the evidence, or lack of evidence.