# EXHIBIT 15

# The Government Unconstitutionally Labels ICE Observers as Domestic Terrorists

C  cato.org/blog/dhs-policy-threatening-arresting-ice-observers-violates-their-rights

By David J. Bier                                                December 15, 2025

December 15, 2025 2:01PM

On December 4, the Department of Justice (DOJ) disseminated a memorandum to all federal prosecutors creating a strategy for arresting and charging individuals supposedly aligned with "Antifa." The memo requires DOJ to investigate and identify the "most serious, most readily provable" crimes committed by potential targets, including those with "extreme views in favor of mass migration and open borders."

Specifically, the document defines domestic terrorism broadly to include "doxing" and "impeding" immigration and other law enforcement. Doxing is not specifically defined, but the memo references calls to require Immigration and Customs Enforcement (ICE) agents to give their names and operate unmasked. Individuals who donate to organizations that "impede" or "dox" will be investigated and deemed to have supported "domestic terrorism."

Therefore, it is crucial to understand that ICE and the Department of Homeland Security (DHS) consider people who follow DHS and ICE agents to observe, record, or protest their operations as engaging in "impeding." DHS has a systematic policy of threatening people who follow ICE or DHS agents to record their activities with detentions, arrests, and violence, and agents have already chased, detained, arrested, charged, struck, and shot at people who follow them.

The purpose of this post is to establish that these incidents are not isolated overreach by individual agents, but rather, an official, nationwide policy of intimidating and threatening people who attempt to observe and record DHS operations. This matters legally because courts are more likely to enjoin an official policy rather than impose some new requirements to stop sporadic, uncoordinated actions by individual agents.

**The Right to Follow, Record, Report, and Protest**

DHS Secretary Kristi Noem told reporters in July that it was "violence" to be "doxing" and "videotaping them where they're at when they're out on operations." DHS Assistant Secretary Tricia McLaughlin reiterated the point in August that "videotaping ICE law enforcement and posting photos and videos of them online is doxing our agents.… And we will prosecute those who illegally harass ICE agents."

Agents have apparently been instructed to threaten observers and protesters who follow them with arrest under "18 U.S.C. § 111—Assaulting, resisting, or impeding a federal officer." Yet as the DOJ's criminal resource manual clearly states, "Force is an essential element" of the crime of impeding an officer. Following and recording ICE agents does not limit their ability to perform their operations.

On their own, yelling, protesting, honking a horn, blowing a whistle, following, and recording are all clearly First Amendment–protected activities, even if done during law enforcement operations. Of course, it is possible to follow an officer in a dangerous manner or physically interfere while recording an operation or protesting, but following and recording by themselves without physical interference are clearly protected. Courts have generally agreed. For instance, they have found:

- People have a right to record law enforcement during their operations, as my colleague Walter Olson describes in more depth.
- People generally have a right to protest, yell out, insult, swear at, and even "verbally interrupt" law enforcement during their operations.
- People generally have a right to post the names of law enforcement agents, including undercover agents, unless it is done with a provable intent to threaten them.
- People have a right to generally warn others about the presence of law enforcement, for example, by holding a sign, honking, flashing lights, or livestreaming.
- Honking can only be limited through a content-neutral, traffic-safety statute, which does not exist under federal law.
- People may not be arrested or detained, even for real technical traffic violations, if the officers are motivated by a desire to retaliate against their speech and the arrest or detention would not have otherwise been made.

Nevertheless, the federal government appears to have elevated Noem's and McLaughlin's threats to official DHS policy. In a series of videos that I have compiled over the past few weeks, ICE and DHS agents are seen pulling over people who follow them and issuing scripted "warnings" that the observers will be arrested if they continue recording. Finally, just this week, Border Patrol agents made multiple arrests of ICE observers. A district court judge in Illinois found this week that agents "often treat cars that are merely following them but not driving aggressively as potential threats."

As seen in the videos below, Border Patrol repeatedly stop vehicles that follow them to threaten them with arrest—often with weapons drawn. The threats given in the form of "this is your one warning" appear to recognize that at least some agents recognize that they cannot actually arrest someone simply for following and recording them. When arrests have

occurred, they have justified them by asserting that protesting, honking, or failing to disperse when ordered constitutes "obstruction."

## Threats to Arrest ICE Observers

In a typical video from Waukegan, Illinois, in October, a Border Patrol agent tells a woman he has pulled over: "If you continue to follow us around and monitor us like this, we will take you out and arrest you," adding it would be "for impeding operations." He delivers the telltale phrase of these scripted threats: "I'm just warning you."



Watch Video At: https://youtu.be/Cu_AC0IZ8Pg

- Another Border Patrol agent repeats a near identical threat: "If you continue to tail us, I am going to pull you out and arrest you."
- In Richfield, Minnesota, a group of ICE agents in December repeat over and over to an ICE observer in a car: "This is your one and only warning. The next time you will be arrested for impeding." The target calmly says: "I'm not obstructing. I'm observing."
- In another location near Chicago, in a video from 33rd Ward Alderwoman Rossana Rodríguez Sanchez, Border Patrol agents say to a female driver, "I'm giving you your warning." "For what?" the woman says. "For impeding and alerting," the agents respond.
- In another location near Chicago, agents tell a woman driver: "This is your one warning. If you continue to follow us, we'll arrest you for impeding."
- In another video from New Orleans, ICE agents tell a woman in a vehicle that she is impeding them. She says, "How am I impeding you? Because I'm recording?" The agent says, "We are on official business. If you impede, we will arrest you."

- In a wooded area, Border Patrol agents say to a woman filming them: "This is your one and only warning. Do not follow us."
- In Berwyn, Illinois, a Border Patrol agent tells an observer: "I suggest you stop following us, alright?" Another chimes in: "Otherwise we'll arrest you for impeding. This is your first warning and last warning."
- In Oregon, in November, a masked ICE agent tells a US citizen: "If you continue following, you will be arrested. You're impeding. This is your only warning."



Watch Video At: https://youtu.be/n74XrP1PaSY

- In November, Border Patrol agents say to a woman, "This is your warning. Stop following us. If you interfere, we will arrest you." She honks her horn, and they say: "That is not appropriate." She says, "Honking isn't allowed?" He says, "We're up front. This is your warning."
- In Skokie, Illinois, after one agent threatens to arrest two observers in a vehicle for "impeding," an agent repeats the same line three times: "You've been warned. You've been warned. You're on camera. You've been warned."
- In a separate incident from Waukegan, Illinois, a Border Patrol agent says: "Either you get out or we're going to get you out." The woman says, "I was following you to warn people. What was wrong with that?" A Border Patrol agent says to another agent: "She was following." The ICE observer says, "You don't even know who I was following!" He comes back and says: "This is your one and last warning. If you keep impeding us, we will stop you, pull you out, and arrest you."

- In another location near Chicago, agents tell an observer who is following them in a car: "This is your first warning. You only get two, and then you're going to be arrested for interfering." The woman says: "I'm just driving around in my neighborhood." The agents respond: "No, you're harassing us, you're following."

**Citing 18 U.S.C. 111**

- ICE agents in Carpinteria, California, tell a college professor, "It is a federal crime for you to be interfering with us." The professor says, "How did I interfere?" The agents tell him, "Stop following us." The agents then cite a statute: "18 U.S.C. 111."
- Customs and Border Protection (CBP) agents in Slidell, Louisiana, threaten a woman observing ICE from her vehicle with arrest under "18 U.S.C 111."
- In November, in Charlotte, Border Patrol agents tell a photojournalist following them, "Is there a reason you're following us? You're impeding a federal operation. If you do it again, you will be arrested. It's 18 USC 111."
- In Charlotte, Border Patrol agents stop a woman to claim: "18 U.S.C. § 111…. If someone is honking and shouting 'la migra, la migra, ICE, Border Patrol,' they're impeding our investigations."
- In November, in Chicago, a Border Patrol agent pulls a man over and says: "Final warning: If you keep following us, you'll get arrested."
- Two other Border Patrol agents in Skokie, Illinois, in November, rant about 18 U.S.C. § 111 at a woman, Kimberly Polka, following and recording them from her car. "If you do it again, I will pull you out of the vehicle and arrest you," they threaten.
- Another Border Patrol agent threatens a man at a Sam's Club: "Keep on following me and you're going to get arrested."
- Over Thanksgiving weekend, an Oregon DHS agent stopped an ICE observer for "following them." The agent says, "If you keep on following us around, we are going to arrest you."
- This video appears to catch the tail end of another such encounter in November.
- A district court judge in Illinois who reviewed CBP body camera footage found several instances of this exact warning:
  - "If you keep following us, we're going to arrest you, you've been warned."
  - "I'm just warning you … following law enforcement, honking, and harassing agents is impeding law enforcement."
  - Agent (tapping on glass of a car behind agent's vehicle): "Stop following us." Bystander: "They're allowed to follow you." Agent: "No they're not."

**State and Local Involvement**

- In some cases, it appears that ICE calls local police to arrest observers. In one case from November, an ICE agent tells his partner to call 911 on a woman whom he had pulled over for following her.

- In early July, ICE in San Diego called 911 on community volunteers following them and recording their activities. The ICE agent threatened to hold those following him at "gunpoint." Local police did respond, told the volunteers to leave ICE alone, and issued a ticket to the driver for not having his driver's license on him.

- In June, local police detained a man for following and honking at ICE agents.

- Another video of a woman stopped behind a Border Patrol vehicle shows a local police officer trying to tell a woman that she's not allowed to follow them.

- A social media influencer was chased by ICE agents after he followed and recorded them in November but managed to outrun them.

**Use of Weapons**

- In several situations, ICE agents have unholstered or pointed weapons at the people who followed them. On June 13, a group of ICE agents made a vehicle stop of individuals following and recording them and aimed assault rifles at them while they ordered them out of the vehicle.

- In July, a group of agents surrounded an observer's vehicle, took out a gun, and threatened him before a Federal Protective Service officer intervened to diffuse the situation.

- An ICE agent was threatening a woman with a gun for following him in Fullerton, California, until a Fullerton police officer intervened.

- Another ICE agent in Pasadena, California, in June, pulled a gun and pointed it directly at an observer who was filming his license plate.

> Federal agent in Pasadena, California draws his gun on an anti-ICE agitator attempting to take a picture of his license plate. pic.twitter.com/MQkl27dpH2
>
> — Kevin Dalton (@TheKevinDalton) June 19, 2025

- In October, ICE pulled over Illinois State Representative Hoan Huynh and his staff and told them to stop following the agents, threatening them with a gun and taking their photographs.

- At the end of October, an ICE agent pulls a gun on someone following and honking their horn. He points it directly at the person filming.

- In Charlotte, in November, a woman recording what she describes as an "illegal traffic stop" has several Border Patrol officers approach, demand that she leave, and point various less-than-lethal weapons at her.

6/9

**Arrests**

- In July, in Key West, Florida, a Border Patrol agent threatens to arrest a woman and a man on a sidewalk for recording and yelling at him, saying "I will arrest you. 18 USC 111." He ultimately did arrest the man who was released without charges 11 hours later.
- In Washington, DC, ICE accosted a woman for filming them, tried to remove her phone, and then accused her of assaulting them in July. A jury acquitted her.
- In Chicago, Border Patrol rammed a woman's vehicle as she was following them and honking at them. The agent shouted "do something b—-," hit her car, and then shot her five times. They then arrested her and charged her with assault before dropping the charges against her once they had presented the evidence. DHS labeled her a "domestic terrorist."
- In Chicago, Border Patrol pull out someone filming them as he yells: "What are you going to do? I'm a US citizen. I'm a US citizen."



Watch Video At: https://youtu.be/-q8SBwMGBRk

- In Hoffman Estates, Illinois, in October, ICE chased and arrested an 18-year-old girl and her boyfriend after they followed and recorded them. But ICE never filed charges against them.
- In Charlotte, in November, Border Patrol chased and arrested two women for honking their horns at them. The agents pointed a gun into the vehicle at head level before pulling the driver and passenger from the car.
- The same day, Border Patrol arrested another US citizen for following and honking in Charlotte, dragging him out in front of dozens of witnesses.

- In September, ICE arrested three women for recording an ICE agent on his way to his residence and warning his neighbors about his job. In this case, the women were charged with "disclosing the personal information of a federal agent" with intent to incite violence against him—a dubious claim.
- In November, Border Patrol agents chased a US citizen who was recording them. They ended up stopping him, smashing his window, arresting him, and charged him with felony impeding a federal officer and assault with a deadly weapon (his car). A judge has already dismissed the latter charge.
- In October, DHS arrested a woman in Oregon who followed and took pictures of their vehicles. The agents who pulled her over say, "Why are you taking photos?"

**Causing Car Crashes**

- A woman from North Carolina asks an agent why Border Patrol would slam on its brakes at 35 miles per hour, attempting to cause an accident with the ICE observer. He does not deny it. Instead, he says they did it to stop the observers.
- In October, Border Patrol agents managed to cause an accident with ICE observers in Chicago by slamming on their brakes before pulling them out of the car, brutally beating them, and arresting them for "impeding."
- In October, a DHS agent in Oxnard, California, intentionally slammed into the side door of a pickup truck of someone recording their activities. DHS accused him of "recording and verbal harassment of the officers."



Watch Video At: https://youtu.be/U31dnySNRng

In November, a district court judge in Illinois found an instance in which the video "suggests that the agent drove erratically and brake-checked other motorists in an attempt to force accidents that agents could then use as justifications for deploying force."

These incidents generally do not include the numerous cases of agents damaging home security cameras, throwing phones, or attacking people who follow, record, or protest by foot without threatening to arrest them.

Worryingly, when they are challenged for illegally threatening the observers, DHS agents demonstrate no awareness of the constitutional limits of their authority. One agent tells a woman that it would be illegal for her to follow him out of a Home Depot parking lot. After being told by an observer that she has the right to follow and record him, an ICE agent asserts, "You do not have the right to follow me like that." After a man told a DHS agent, "I'm within my constitutional rights to drive wherever I want on my streets," one agent told him, "You're breaking the law." After the man demanded to know what law, the other agent told him, "If you want to keep on following us, that's what's going to stop your constitutional rights and forego it."

In almost every case, however, agents make no attempt to justify their actions when challenged. A college professor says, "You can't describe how I'm interfering, can you?" The agent just walks away. After a woman says, "I'm exercising my right to record." One agent demands to know why, "What do you think you're accomplishing? Who do you think you're saving?"

DHS clearly has an official nationwide policy of threatening people who attempt to follow, record, document, and protest their activities. The DOJ memorandum asserts that this is "domestic terrorism" activity and threatens anyone who supports groups that monitor ICE activity. Congress should immediately act to stop this blatantly unconstitutional policy, demand information on the number of stops of individuals for following and reporting, and permit lawsuits by people who were wrongfully detained or threatened for engaging in First Amendment–protected activities.

Of course, this principle matters far beyond the realm of immigration policy. If police can threaten arrest or actually arrest people for recording or observing their activities, that would fundamentally diminish the rights of Americans everywhere. Any law enforcement agency could arrest journalists, investigators, and protesters for documenting abuses of authority. A free country must have an absolute wall of protection for those who record government actions.