# EXHIBIT 28



The Latino Legal Voice for Civil Rights in America.

**National Headquarters**
MALDEF Nonprofit Center
634 S. Spring Street, 12th Fl.
Los Ángeles, CA 90014
*TEL:* 213.629.2512
*Fax:* 213.629.0266

**Atlanta**
**Program Office**
34 Peachtree Street, NW
Suite 2500
Atlanta, GA 30303
*Tel:* 678.559.1071
*Fax:* 678.559.1079

**Chicago**
**Regional Office**
11 East Adams Street
Suite 700
Chicago, IL 60603
*TEL:* 312.427.0701
*Fax:* 312.427.0691

**Los Angeles**
**Regional Office**
634 S. Spring Street,
11th Fl.
Los Angeles, CA 90014
*TEL:* 213.629.2512
*Fax:* 213.629.0266

**Sacramento**
**Program Office**
1512 4th Street
Sacramento, CA 95814
*Tel:* 916.444.3031
*Fax:* 916.444.7207

**San Antonio**
**Regional Office**
110 Broadway
Suite 300
San Antonio, TX 78205
*TEL:* 210.224.5476
*Fax:* 210.224.5382

**Washington, D.C.**
**Regional Office**
1016 16th Street, NW
Suite 100
Washington, DC 20036
*Tel:* 202.293.2828

**SENT VIA CERTIFIED U.S. MAIL**                    July 1, 2025
**AND ELECTRONIC MAIL**

Office of the General Counsel
U.S. Department of Homeland Security
2707 Martin Luther King Jr. Ave, SE
Washington, DC 20528-0485
ogc@hq.dhs.gov

Office of the Principal Legal Advisor
 U.S. Immigration and Customs Enforcement
 500 12th St. SW, Mail Stop 5900
 Washington, DC 20536–5900
 OPLAServiceIntake@ice.dhs.gov
 OPLA-DCLD-TortClaims@ice.dhs.gov

Office of Chief Counsel
U.S. Customs and Border Protection
1300 Pennsylvania Avenue, Suite 4.4–B
Washington, DC 20229
CBPServiceIntake@cbp.dhs.gov

Los Angeles/Long Beach Field Office
U.S. Customs and Border Protection
1 World Trade Center, Suite 741
Long Beach, CA 90831
Phone: (562) 980-3100

Los Angeles Field Office
U.S. Immigration and Customs Enforcement
300 North Los Angeles Street, Room 7631
Los Angeles, CA 90012
Phone: (213) 830-7911

**RE: Cover Letter and FTCA Claim of Job Garcia**

Dear Counsel:

The Mexican American Legal Defense and Educational Fund (MALDEF) represents Job Garcia in this claim against United States Customs and Border Protection, United States Border Patrol, United States Immigration and Customs Enforcement, and any other Department of Homeland Security agencies involved in Mr. Garcia's arrest and detention. Enclosed please find Mr. Garcia's authorization statement (Exhibit A) and the Claim for Damage, Injury, or Death (Standard Form 95, Exhibit B).

Under 28 U.S.C. § 2675(a) and 28 C.F.R. § 14.2, we provide this notification and claim for damages for injury caused to Job Garcia by agents or officers of U.S. Border Patrol and ICE under the Federal Tort Claims Act ("FTCA") and demand monetary damages in the amount of $1,000,000 resulting from the tortious conduct of Border Patrol and ICE agents.

The Border Patrol and ICE agents unlawfully restrained and detained Mr. Garcia for more than 24 hours without any valid grounds for interfering with his liberty and freedom of movement, and they did so based on legally prohibited grounds. As a direct and proximate result of the agents' commission

of false arrest, false imprisonment, assault, and battery, Mr. Garcia has suffered both economic losses and personal injury.

We present the information required in Standard Form 95 below, organized by the categories listed on the form, unless otherwise completed in the attached form.

**1. Submitted to ("Submit to Appropriate Federal Agency"):**

We submit this claim to the U.S. Border Patrol, the law enforcement arm of U.S. Customs and Border Protection. We also submit this claim to U.S. Immigration and Customs Enforcement. To the extent other federal employees or agents were involved in the detention of Mr. Garcia, we submit this claim to those employees' agencies.

**8. Basis of Claim:**

1)  Border Patrol Agents' and Other Agents' Assault, Battery, and Unlawful Detention of Job Garcia

On June 19, 2025, Border Patrol agents employed by U.S. Customs and Border Protection unlawfully restrained and detained Job Garcia in connection with an incident that began at the Home Depot located at 5600 West Sunset Boulevard, Hollywood, CA 90028.

Mr. Garcia is a U.S. Citizen and resident of Los Angeles, California. He travels regularly to surrounding Home Depot locations as a delivery driver for an online application service. At approximately 7:20 am, Mr. Garcia noticed masked Border Patrol agents conducting a raid. The masked agents approached and grabbed at least five individuals from the parking lot of the Home Depot at 5600 W. Sunset Blvd. Mr. Garcia, along with other bystanders in the vicinity, informed the masked agents that they could not do this to people without a warrant and should leave. The agents did not present warrants to the individuals they detained. Mr. Garcia immediately began recording the Border Patrol agents' actions with his smartphone.

After Mr. Garcia began recording, Mr. Garcia turned and witnessed one of the masked agents banging on the window of another vehicle—a light, low-cab commercial truck—and telling the driver to open the door or lower the window. Four to five masked agents surrounded the light commercial truck. The masked agents were holding what appeared to be rubber bullet guns. Mr. Garcia proceeded to yell at the driver of the light commercial truck to inform him neither to open the door nor lower the window and to keep silent. At this point, Mr. Garcia was some distance behind the agents surrounding the light commercial truck.

All individuals that Border Patrol agents had detained up to this point appeared to be Latino or of Latin American national origin. The driver of the light commercial truck also appeared to be Latino or of Latin American national origin.

At no point did Mr. Garcia witness or record any agent providing a warrant or any other paperwork to the individuals whom agents were detaining.

One masked agent proceeded to break the driver's seat window of the light commercial truck while another masked agent reached into the cab of the vehicle to open the door. Mr. Garcia and other bystanders shouted their disapproval. Mr. Garcia continued to record with his smartphone throughout the entire incident. Mr. Garcia received no warning to move back from the agents while recording before agents tackled and restrained him.

With no warning from an agent to Mr. Garcia, one of the masked agents then turned around and lunged at Mr. Garcia, reaching for Mr. Garcia's phone. Mr. Garcia began to move backward and away from the agents. Then, the agent who lunged grabbed Mr. Garcia's phone, threw it to the ground, and tackled Mr. Garcia. Other agents, including one unmasked agent almost immediately joined in assisting to restrain Mr. Garcia. One masked agent then retrieved Mr. Garcia's phone and placed it in Mr. Garcia's pocket as he was on the ground.

The agents restrained Mr. Garcia by putting him on his stomach while at least one agent held down his legs. Mr. Garcia did not resist while being restrained. The agents placed metal cuffs on Mr. Garcia's hands behind his back. While they restrained him, the agents placed their knees on Mr. Garcia's back and neck, pressing his face into the asphalt. Mr. Garcia felt that his breathing was restricted and momentarily feared that he may be killed in this position.

After Mr. Garcia was tackled to the ground and detained, an agent transferring Mr. Garcia tried to speak to Mr. Garcia in Spanish and was surprised when Mr. Garcia responded in English. The agent, who appeared to be non-Hispanic white, continued to speak Spanish to Mr. Garcia. Mr. Garcia was then transferred to other agents that had not been involved in his initial detention. While he was being walked to a van nearby, he heard the agent tell the others, "I got another one." Mr. Garcia stated, "Another what?," believing that the comment was racially charged.

Mr. Garcia's hands remained restrained and was then placed in a white transit van with no ability to escape the van. Mr. Garcia attempted to prove to the agents that he was a United States citizen. The agents appeared not to know where to take them before eventually deciding to head towards Dodger Stadium.

Upon arrival at Dodger Stadium property, Mr. Garcia had been in tight handcuffs so long that he felt his hands go numb. Even though agents confirmed that Mr. Garcia was a U.S. citizen and that he had no criminal warrants or facts to suspect he had committed a crime, the agents continued Mr. Garcia's detention.

At the stadium property, Mr. Garcia was Mirandized but refused to answer agents' questions. Agents then interrogated him again without re-Mirandizing him. While he was transferred to the custody of another agent, Mr. Garcia heard agents boast about how many "bodies" they nabbed that day and gave each other "high fives." He was ultimately placed in another vehicle and transferred to the federal Metropolitan Detention Center ("MDC") in downtown Los Angeles.

Once they arrived to the MDC, ICE agents processed Mr. Garcia and threatened to delay his processing until the following Tuesday. Once in an apparent interrogation room, Mr. Garcia then overheard some agents talking about how Trump was "really working them." ICE agents attempted to interrogate Mr. Garcia without re-Mirandizing him and, after viewing a video of the incident that had gone viral, stopped mentioning "assault" on an agent. Mr. Garcia reasserted that he did not want to speak with the ICE agents, at which point they stopped the interrogation.

The ICE agents processed Mr. Garcia and then walked him to corrections officers, where he was placed in what he describes as a cage. The following day, corrections officers took Mr. Garcia alongside another individual who was arrested by ICE or CBP. The other detained individual was put in one car while Mr. Garcia was taken back to the custody of ICE somewhere else and given his belongings. Mr. Garcia was released without arraignment or notification of charges.

The Border Patrol and other agents confined Mr. Garcia without legal authority, and the ICE agents continued to keep Mr. Garcia in detention at MDC, for a total of twenty-five hours. The Border Patrol, ICE, and other agents lacked reasonable suspicion or probable cause to believe that Mr. Garcia had violated any law. Their actions were instead racially motivated and in retaliation for Mr. Garcia recording the Home Depot raid with his smartphone.

2) <u>CBP Agents, Border Patrol Agents, and any Other DHS Agents are Liable for False Arrest, False Imprisonment, Assault, and Battery</u>

The Border Patrol agents and any other agents at Home Depot on June 19, 2025, detained Job Garcia without reasonable suspicion of an immigration violation or any other offense, and intentionally arrested him without a warrant or facts, that if proved, would establish probable cause to believe that he posed

a flight risk before a warrant could be obtained. Mr. Garcia has a First Amendment right to record the Border Patrol and other agents operating openly in a public place, particularly if they were targeting Latino individuals for detention at the Home Depot. The agents had no evidence to charge Mr. Garcia with a crime because he was not interfering with the detentions. Mr. Garcia received no verbal warning to move away from the agents before the agents tackled and detained him.

The agents tackling and restraining Mr. Garcia at the Home Depot caused him physical injury, emotional distress, and economic losses. Mr. Garcia sustained bruising on his back, neck, arms, face, and legs from the tackling and restraint. Mr. Garcia is suffering emotional distress. Because of the day of detention and emotional distress, Mr. Garcia also lost out on more than four days of delivery work, which cost him between $2,500 and $3,000.

The agents are therefore liable for false arrest.

Following Mr. Garcia's violent arrest, agents detained Mr. Garcia for a total of twenty-five hours without charging him with any crime. The agents deprived Mr. Garcia of his freedom of movement; they restricted him from leaving after his arrest at the Home Depot and at Dodger Stadium, keeping him handcuffed in closed vehicles, with at least one agent guarding him at all times. Mr. Garcia did not consent to be detained. The agents had no right to detain Mr. Garcia, yet continued looking for reasons to prolong his detention after identifying him as a U.S. citizen. After agents took Mr. Garcia to MDC for interrogation and booking, Border Patrol and then ICE agents booked him and interrogated him. When he was finally released, he was released by an ICE agent. The Border Patrol and ICE agents were the individuals responsible for placing restraints on Mr. Garcia's hands that caused numbing and for causing Mr. Garcia emotional distress due to his detention.

Therefore, Border Patrol and ICE agents are liable for false imprisonment of Mr. Garcia on June 19 and 20, 2025.

The Border Patrol agents who tackled and detained Mr. Garcia on June 19, 2025, intentionally did so and used unreasonable force to harm Mr. Garcia. Mr. Garcia suffered physical injury and emotional distress as a result of the tackling and restraints. Mr. Garcia was not committing a crime when the Border Patrol agents tackled him, and the agents had not given Mr. Garcia a warning to back up. Once he was on the ground, one Border Patrol agent said, "you wanted it, you got it," indicating that he was retaliating for Mr. Garcia's recording and protesting the detention of the individual in the light commercial truck.

These Border Patrol agents and any other agents who tackled, restrained, and detained Mr. Garcia are liable for battery.

When Border Patrol agents restrained Mr. Garcia after being tackled, he felt as though the pressure on his body may cut off his breathing. As they told him that he "got it," he could feel his breathing becoming restricted and labored. He felt these agents were endangering his life or placing him at risk of significant injury. As a result of this offensive touching without consent, Mr. Garcia suffers from emotional distress and physical injury.

The Border Patrol agents and any other agents who restrained Mr. Garcia are liable for assault.

9. Property Damage:

Mr. Garcia's jewelry was damaged in the amount of at least $30.

10. Personal Injury:

FTCA Damages

Damages are owed to Job Garcia for his tackling, restraint, arrest, and detention. As a result of the tackling and restraint, Mr. Garcia suffered emotional distress and other physical injuries. Also, as a result of the detention, Mr. Garcia suffered emotional distress. As a result of the detention and the emotional distress he suffered, Mr. Garcia has missed work, resulting in $2,500-3,000 in economic losses. Mr. Garcia is a PhD candidate. He has also stopped his academic work due to the emotional distress and may not complete his program in a year, as expected.

Mr. Garcia has suffered additional emotional distress as a result of being singled out as a Latino protestor and person recording the incidents. A non-Hispanic white man, who stood as close to the agents as Mr. Garcia and was recording, too, was not tackled or arrested. Mr. Garcia was exercising his First Amendment right when recording the Border Patrol raids. Mr. Garcia has previously recorded and photographed protests and community events centered around immigrants' rights as a personal passion. Even though he would like to continue to document and photograph events and protests, he is fearful of encountering federal immigration agents and experiencing their abuses again.

11. Witnesses:

 Witness may be contacted through counsel.

Witness may be contacted through counsel.

12. Amount of Claim:

Mr. Garcia is owed damages in the amount of $1,000,000.

**Potential Constitutional Claims**

Border Patrol and ICE agents' conduct also violates various provisions of the federal Constitution, including, among others, the First Amendment rights to free speech and to record and photograph matters of public interest, the Fourth Amendment right to be free from unreasonable searches and seizures, and the Fifth Amendment rights to remain silent and to be afforded due process. Mr. Garcia may seek to allege these constitutional claims in addition to the FTCA torts if the case proceeds to court.

## CONCLUSION

The conduct of Border Patrol and ICE agents on June 19 and 20, 2025, meets the elements for the torts of assault, battery, false arrest, and false imprisonment under California law and common law. These federal agents violently tackled Mr. Garcia for speaking out against the agents' conduct and recording them. Moreover, the agents detained Mr. Garcia without any valid reason to believe Mr. Garcia was in the country unlawfully. Furthermore, they arrested Mr. Garcia without a warrant and without probable cause to believe he posed a flight risk. Last, they held Mr. Garcia in custody after they knew or reasonably should have known that he was a U.S. citizen and that they had no legal basis for such custody. Indeed, he was committing no crime and was charged with no crime.

Mr. Garcia suffered damages because of this conduct by Border Patrol and ICE agents. For the foregoing reasons, we submit this claim under the FTCA for compensation in the amount of $1,000,000.

If any additional information or clarification is required that will help expedite this request, I can be reached at eherrera@maldef.org.

Sincerely,

Ernest I. Herrera
Regional Counsel | Western Region
Mexican American Legal Defense and Educational Fund
634 S. Spring Street - 11th Floor
Los Angeles, CA 90014
(213) 629-2512 Ext. 109

Eduardo Casas
Staff Attorney
Mexican American Legal Defense and Educational Fund
634 S. Spring Street - 11th Floor
Los Angeles, CA 90014
(213) 629-2512 Ext. 121