*Secretary*
**U.S. Department of Homeland Security**
Washington, DC 20528

**Homeland Security**

May 17, 2019

MEMORANDUM FOR: All DHS Employees

FROM: Kevin K. McAleenan
Acting Secretary

SUBJECT: Information Regarding First Amendment Protected Activities

I am proud of the work you do every day to protect our Homeland. You serve as America's Frontline and your commitment to the highest ethical and moral principles is a testament to each of you, the founding values of our Department, and our nation. It is in this spirit that I write to you today to emphasize – as you all know – that the privilege of administering and enforcing federal laws carries with it the responsibility for upholding the principles of professionalism, impartiality, courtesy, and respect for civil rights and civil liberties.

DHS does not profile, target, or discriminate against any individual for exercising his or her First Amendment rights.[1] Under the Privacy Act of 1974, all DHS personnel[2] are prohibited from maintaining records that describe how a U.S. citizen (USC) or alien lawfully admitted for permanent residence (LPR)[3] exercises his or her First Amendment rights, "unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity."[4]

Information, in any form, regarding how an individual exercises First Amendment rights shall include (among other things):

1. Information about an individual's religious beliefs and practices;
2. Information about an individual's political or personal beliefs or associations, academic or scientific inquiries, or the expressions thereof;

---

[1] The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.
[2] For purposes of this memorandum, "DHS personnel" includes all DHS employees, including those who are law enforcement agents and officers and those in the intelligence community, as well as those performing work on behalf of DHS employees, such as contractors.
[3] To the extent that a person's status is unknown or unclear, for the purposes of this policy that person shall be treated as an "individual" covered by the Privacy Act. 5 U.S.C. § 552a(a)(2).
[4] 5 U.S.C. § 552a(e)(7).

3. Information about an individual's (including journalists, attorneys, academics, representatives of non-governmental organizations, etc.) reporting activities and documentation; or,
4. Information about an individual's associations with others for lawful purposes, including participation in protests or other non-violent demonstrations against government policy or actions.

Individuals' First Amendment rights are protected regardless of the medium of their communications. These principles apply to communications such as oral or written speech (both in paper and electronic form); non-verbal communications such as art works; and, in some instances, to commercial speech and gestures (such as physical rituals associated with prayer).

With those First Amendment rights in mind, I direct that DHS personnel shall not collect, maintain in DHS systems, or use information protected by the First Amendment ***unless*** (a) an individual has expressly granted their consent for DHS to collect, maintain, and use that information; (b) maintaining the record is expressly authorized by a federal statute; or (c) that information is relevant to a criminal, civil, or administrative activity relating to a law DHS enforces or administers. In addition, DHS personnel should not pursue by questioning, research or other means, information relating to how an individual exercises his or her First Amendment rights unless one or more of the same conditions applies.

**Express Statutory Authorization**

DHS agencies may collect and maintain records regarding First Amendment activity when doing so is *expressly authorized by statute*. As explained in longstanding guidance from the Office of Management and Budget (OMB), a statute need not specifically address the maintenance of records of First Amendment activities if it references activities that are relevant to a determination concerning an individual.[5] Thus, for example, DHS personnel may collect information on First Amendment protected activity when that activity is relevant to the granting or denial of a pending application.

**Consent of the Individual**

Records on First Amendment activity may be maintained if the individual voluntarily provides it, thereby consenting to its use by DHS. For example, "if an individual volunteers information on civic or religious activities in order to enhance his chances of receiving a benefit, such as

---

[5] Privacy Act Implementation, Guidelines and Responsibilities, 40 Fed. Reg. 28,948, 28,965 (July 9, 1975) (hereinafter OMB Guidelines). The Guidelines specifically cite to the Immigration and Nationality Act (INA) as an example: "[S]ince the Immigration and Nationality Act makes the possibility of religious or political persecution relevant to a stay of deportation, the information on these subjects may be admitted in evidence, and therefore would not be prohibited by [subsection (e)(7)." OMB Guidelines, at 28,965. Many other INA provisions potentially involve consideration of First Amendment activity. E.g., 8 U.S.C. 1101(a)(43) (definition of refugee, for purpose of refugee and asylum eligibility determinations, includes persecution based on membership in social group, religion, or political opinion); 8 U.S.C. 1182(a)(3)(B) (inadmissibility of any alien who, inter alia, "endorses or espouses terrorist activity or persuades others to endorse or espouse terrorist activity or support a terrorist organization"); 8 U.S.C. 1182(a)(3)(D) (ground of inadmissibility for membership or affiliation with the Communist or other totalitarian party); 8 U.S.C. 1182(a)(3)(F) (ground of inadmissibility for association with terrorist organizations); 8 U.S.C. 1227(a)(4)(B) (deportability of aliens admitted to the United States if described in terrorism-related grounds of inadmissibility); 8 U.S.C. 1424 (prohibition upon the naturalization of persons opposed to government or law, or who favor totalitarian forms of government).

executive clemency, the agency may consider information thus volunteered."[6] As applied to DHS, individuals may voluntarily provide consent in submitting their associations and beliefs when applying for naturalization pursuant to filing USCIS Form N-400[7] or may proactively provide information in written materials, including correspondence, or during an inspection or encounter.

**Relevant to Law Enforcement Activity**

If the use of information regarding First Amendment protected activities is not otherwise covered by one or both of the exceptions discussed above (explicit statutory authority and consent), DHS personnel may include such information in DHS systems if the information is pertinent to and within the scope of an authorized criminal, civil, or administrative law enforcement activity.[8]

For example, information about First Amendment protected activities is pertinent to and within the scope of DHS's administration or enforcement of a statute, regulation, or executive order when all DHS personnel:

1. Document questions and responses relating to an individual's occupation, purpose for international travel, or any merchandise the individual seeks to bring across the border;
2. Document questions, responses, or other information to validate information supplied by an individual or determine whether potential criminal, civil, or administrative violations exist relating to the laws that DHS enforces or administers;
3. Document journalistic or scientific research, academic inquiry, and/or analysis or questions and responses relating to information regarding an individual indicating a potential violation of a law DHS enforces or administers, or a threat to border security, national security, officer safety, or public safety;
4. Document research and/or analysis relating to activities protected by the First Amendment to the extent that it may facilitate an individual's travel by, for example, verifying information provided by the individual —(e.g., validating a visa based on a religious purpose); or,
5. Take into account information regarding religion in order to identify whether a reasonable accommodation for an individual's religious beliefs would be appropriate. This may include subsequent documentation of relevant information in DHS records regarding the action (for example, noting that a certain action was undertaken as an accommodation or noting that an accommodation was requested or deemed appropriate).

Each of us is called to do an extraordinarily important job for our nation. In executing this mission, it is my job to ensure that you are empowered to do so in accordance with our highest moral, ethical, and legal obligations. To this end, I have tasked the DHS Office for Civil Rights and Civil Liberties and the DHS Privacy Office to review existing guidance and develop new

---

[6] OMB Guidelines, at 28965.

[7] It must be noted that DHS/USCIS may also collect this information pursuant to its statutory authority in determining whether the applicant comes under section 313 of the INA's (8 U.S.C. 1424) prohibition upon the naturalization of persons opposed to government or law, or who favor totalitarian forms of government Thus, collecting and maintaining this information is lawful both because of express statutory authorization as described above, and because the applicant consented to providing it by signing and filing the application.

[8] DHS may still maintain records consistent with 552a(e)(7) even if there is no ongoing or current law enforcement investigation.

guidance, where appropriate, to assist the operational components in implementing this memorandum.[9]

As you execute your mission each day, our Privacy and Civil Rights and Civil Liberties colleagues stand by to assist with any further questions or concerns you may have on this topic. Please contact Jonathan R. Cantor, Acting Chief Privacy Officer and Peter Mina, CRCL Deputy Officer for Programs and Compliance, and their staffs with those questions. Please contact your Component Counsel Offices with any legal questions.

---

[9] Nothing in this policy memorandum or tasking otherwise impairs the statutory or delegated authorities and responsibilities of the Privacy Office or the Office for Civil Rights and Civil Liberties, including the authority to "investigate complaints and information indicating possible abuses of civil rights or civil liberties" under 6 U.S.C. § 345 or investigate noncompliance DHS privacy policies under 6 U.S.C. § 142.