# EXHIBIT

# 4

LEGISLATIVE HISTORY - TENNESSEE GENERAL ASSEMBLY

# SENATE BILL 30



VETERAN COURT REPORTING
D. Rochelle Koenes, RPR, LCR
veterancourtreporting@gmail.com
(931) 919-8932

LEGISLATIVE HISTORY - TENNESSEE GENERAL ASSEMBLY

---

# VIDEO RECORDINGS

of

Senate Bill No. 30

---

Veteran Court Reporting
veterancourtreporting@gmail.com
D. Rochelle Koenes, RPR, LCR
P.O. Box 3593
Clarksville, Tennessee 37043
(931)919-8932

I N D E X

| | |
|---|---|
| | Page |
| March 25, 2025 Senate Judiciary Committee | 3 |
| April 2, 2025 Senate Judiciary Committee | 5 |
| April 8, 2025 Senate Judiciary Committee | 24 |
| April 14, 2025 Senate Session 23rd Legislative Day | 29 |
| April 21, 2025 House Floor Session 29th Legislative Day (A) | 40 |

* * *

SENATE JUDICIARY COMMITTEE
TENNESSEE GENERAL ASSEMBLY

March 25, 2025

(WHEREUPON, On the above date, there came up for consideration in the Senate Judiciary Committee, Tennessee General Assembly, Senate Bill 30, sponsored by Senator Pody and others. Discussion pertaining to this bill was as follows):

SENATOR GARDENHIRE (Chairman): You're now recognized on Item 19, Senate Bill 30. There's no amendments on this bill.

You're recognized on Senate Bill 30.

SENATOR PODY: Mr. Chairman, thank you.

Then I apologize because I believe there was supposed to be an amendment filed of 4788. If that's not correct, I would -- I'd ask to roll the bill. I thought it was done. Must have been my mistake.

SENATOR GARDENHIRE (Chairman): Let's see. No amendment.

We don't have it so we'll let you roll it until next week. Go ahead and get that

amendment filed, and if it wasn't, we'll take care of it.

SENATOR PODY: Thank you, Mr. Chairman. Thank you, Members.

[END OF SESSION.]

* * *

SENATE JUDICIARY COMMITTEE
TENNESSEE GENERAL ASSEMBLY

April 2, 2025

(WHEREUPON, On the above date, there came up for consideration in the Senate Judiciary Committee, Tennessee General Assembly, Senate Bill 30, sponsored by Senator Pody and others. Discussion pertaining to this bill was as follows):

SENATOR GARDENHIRE (Chairman): Senator Pody, you're recognized on Senate Bill 30.

There is an amendment, Amendment Number 3418.

Does the amendment make the bill?

UNIDENTIFIED SPEAKER: It does, Chairman.

SENATOR GARDENHIRE (Chairman): Okay. Well, the chair will move the bill; seconded by Senator Roberts.

The amendment, 3418, we're going to describe the amendment then we'll put it on the bill and take questions.

SENATOR PODY: Thank you, Mr. Chairman.

Members, I want to go real slow with this amendment, kind of go step by step. It's going to do several things.

The first one's going to be talking about littering. Section 2 creates a Class A misdemeanor for littering or trespassing with the intent to intimidate. So it's not something that you're just dropping a piece of paper off or it falls out of your pocket or you throw a Coke can, this is if you're intimidating someone from exercising their civil rights, or if you're in a situation -- this is very similar to what Metro in Davidson County has just passed.

Section 4, it's going to say "an individual who's been charged lawfully -- who has been lawfully detained or arrested and gives a false name can be charged with a misdemeanor."

Now, if somebody -- if somebody's stopped, they don't have to give a name. And we're not saying that they have to even give a name, but if you give a false name, then that's going to be something that you'd be charged with a class -- misdemeanor for. So we're not saying that somebody on -- the police can just say "who are you" and you've got to give your name or something like

that, we're not going that far. But we are saying if you're stopped and you're arrested, you can't give a false name.

Section 5 creates a B misdemeanor for intentionally approaching law enforcement who's actively engaged in lawful duties. That's going to be specifically saying a traffic stop, an active investigation of a crime scene, an ongoing and immediate threat to public safety. Now, we can do this already and sometimes they put the yellow police tape around, but if you're an officer by yourself or whatever, you've got to at some point just say "can you stand back?" I'm not trying to stop from -- somebody from being there, witnessing, videoing with their phone or anything else, but sometimes just to deescalate the situation they're going to say "can you stand back 25 feet?" if I'm involved in arresting somebody or something like this. It's not that they're walking down the street and they just don't want to be in a crowd, that's not what I'm trying to intend here. It's only if they're actively doing something where they need -- need to be focused on that.

Section 6 is a Class B misdemeanor for transporting someone in a box truck. Here in

Davidson County we had some people that came in and they were literally in the back of a box truck. A box truck -- it had no seat belts, it was not seats. It was designed to do something else. And so in this case, we're saying that it's specifically for transporting property, not people.

Section 7 says it's going to be a Class B misdemeanor for attaching unauthorized signs to a bridge or -- or overpass. So you can't go on 40 or 65 or 24 and hang a banner on -- on that.

And then finally, Class [sic] 8, it's going to allow a law -- law enforcement officer to arrest somebody for a misdemeanor committed outside of his presence. But this means current law allows a police officer to arrest when a felony -- a felony is committed. This bill would extend that ability to arrest for misdemeanors. For example, when video evidence is provided to -- that a crime is being committed that they can do that. If an officer has reasonable suspicion, meaning the officer must have specific observational facts that led him to believe that they're involved in a criminal activity. And this practice is upheld in Supreme Court, United States verse [sic] Hebolt (phonetic), 543.

UNIDENTIFIED SPEAKER: Motion.

SENATOR GARDENHIRE (Chairman): We have a motion on the amendment.

We have a second by Senator Taylor.

You've described the amendment. Let's put the amendment on the bill.

All in favor say "aye."

MEMBERS (Collectively): Aye.

SENATOR GARDENHIRE (Chairman): Opposed, "nay."

MEMBERS (Collectively): Nay.

SENATOR GARDENHIRE (Chairman): Ayes have it.

We've heard a description of the amendment that makes the bill.

Any questions or comments from the sponsor?

Senator Lamar? I'm sorry.

SENATOR LAMAR: Thank you, Mr. Chair.

And my questions to the sponsor just about the bill itself. And I have great respect for the sponsor of the bill.

But in Section 5 it appears that it creates a criminal prohibition of observing or recording law enforcement within a 25-foot

radius -- radius.

One, I would say, wouldn't this be a violation of your First Amendment right? And secondly, would it prevent an individual from being able to videotape or photograph a law enforcement officer who is involved in police misconduct?

For example, if you see an officer beating someone and one officer say "stay back" and then they have to be 25ft back, they wouldn't -- they couldn't get the video of the officer beating somebody. So would this, in fact, prohibit someone from being able to capture that video?

SENATOR PODY: That's a great question.

That is not the intent of what this is. This is an intent that if the officer is focused on specifically arresting somebody, they can still be videotaped. They can still do everything that they need to. But sometimes people are so close they don't know if they're reaching for a phone or reaching for a weapon or they don't know what the crowd around them is doing and they've got to make an arrest or they're doing a traffic stop, they've got to stay focused on what they're doing. They can still be witnessed. They can still be videotaped.

I think that the law enforcement is not opposed to anything like that. We still want them to be held accountable. If there's somebody that is misbehaving as a police officer, they need to be prosecuted. We're just saying that they -- there's a 25-foot radius if they're actively doing something where they need to have -- be focused right on that job.

SENATOR GARDENHIRE (Chairman): Thank you.

Senator Roberts?

SENATOR LAMAR: Oh, I wanted to follow up on that.

SENATOR GARDENHIRE (Chairman): Okay.

SENATOR LAMAR: I appreciate that's not necessarily the intent, but I do want you to understand that in Section 5 -- mandating that someone has to stay 25 feet away, which is, it's about here to the back of this room, if police officers are standing covering their partner -- and we know they're loyal to each other, and no disrespect to police, I love the police, but there are bad actors -- there -- for example, let's take George Floyd, and the officer had his knee on his neck. And he was telling the lady with the video

camera, oh, move back, move back. She was right there recording the officer essentially killing George Floyd with his knee in his neck. With this law, if that was happening, that evidence wouldn't have been available to charge that officer who end up killing George Floyd.

So I understand that's not the intent. I hear you. But I'm saying the flaw in this part is is that it doesn't give citizens the ability to exercise their First Amendment right and catch that and it opens up the door for police misconduct and not being able to -- and it shields them from having -- citizens having the evidence of police misconduct.

And so I just definitely want to point that out as one of the unintended flaws of this particular legislation.

Thank you, Mr. Chair.

SENATOR GARDENHIRE (Chairman): Okay. Thank you.

Senator Roberts?

SENATOR ROBERTS: Thank you.

Senator Pody, I'm going to just make a brief statement.

I mentioned this on a previous bill.

Article 2, Section 17 of the Constitution says that "bills may originate in either house, but may be amended, altered, or rejected by the other. No bill shall become a law which embraces more than one subject, that subject to be expressed in the title. All acts which repeal, revive, or amend former laws shall recite in their caption and otherwise -- and otherwise the title or substance of the law repealed, revived, or amended."

We've had a tendency to say that if it's mentioned in the caption, that it is acceptable, but we ignore that second sentence of Section 17 which says it can only be one subject, and that has really not been adjudicated and -- that I'm aware of -- and consequently, it's not really on a radar screen. Here's my request of you. Would you check with the Attorney General before this comes to the floor to make sure that we're not containing more than one subject because this does have several sections that are kind of just separate and not -- not connected. And if they are, we need to break it up into more than one bill.

I'm going to vote yes for it. I'm not against the bill, not against anything you're

trying to do. But before we get to it on the floor, if we could just have that -- just kind of make an emergency request from the AG to take a look at that in light of that second sentence of Article 2, Section 7.

SENATOR GARDENHIRE (Chairman): Senator Pody?

SENATOR PODY: I would be happy to do it. I'll do that today.

SENATOR ROBERTS: Thank you.

SENATOR GARDENHIRE (Chairman): So you want to move this down to the heel of the calendar?

UNIDENTIFIED SPEAKERS (Collectively): No.

SENATOR ROBERTS: No. We need to vote on it?

SENATOR GARDENHIRE (Chairman): Huh?

SENATOR ROBERTS: We need to vote.

Okay. Any other comments or questions?

Senator Taylor?

Then I'll come back to you.

SENATOR TAYLOR: Thank you, Mr. Chairman. Is there any way we can have Department of Safety come to answer a question?

SENATOR GARDENHIRE (Chairman): Sure.

Department of Safety?

We'll go out of session.

[Out of session.]

SENATOR GARDENHIRE (Chairman): You're recognized.

SENATOR TAYLOR: Mr. Chairman -- thank you, Mr. Chairman.

I wanted to concentrate on Section 8 of this bill, Ms. Stroecker, and where it allows law enforcement officers to arrest someone for a misdemeanor committed outside of an officer's presence.

I would like to draw your attention, first, to what I refer to as bridge bandits, intersection imbeciles, and interstate insurrectionists. As you know, we have a problem with people blocking intersections in Memphis and doing spinouts and all that and literally terrorizing people. It's -- you know, by the time the police get there, they're gone. The same is true with the -- what I refer to as the bridge bandits, the people who go and commandeer the Mississippi River Bridge. They block it for several hours, police make no arrests. But by the time the state troopers get there it's gone, it's

broken up and the traffic's flowing again. The thing that all these people have in common is they all film it and they all put it on social media and -- as if they're bragging about it.

So my question is that if this bill were to pass and become law, would this allow state troopers to be able to review that social media content with these people blocking the bridge, blocking the interstate and blocking intersections of state routes and allow the state troopers to make those arrests?

SENATOR GARDENHIRE (Chairman): You're recognized.

DEPARTMENT OF SAFETY (Ms. Stroecker): Elizabeth Stroecker, Legislative Director, Assistant General Counsel for the Department of Safety.

Yes, those misdemeanor offenses, it would expand that for them to be able to do that outside of the officer's presence.

SENATOR GARDENHIRE (Chairman): Senator Taylor.

SENATOR TAYLOR: Thank you, Mr. Chairman.

And currently they're unable to make those arrests because law -- the law won't allow

them to make an arrest unless it -- for a misdemeanor unless they commit the misdemeanor in their presence. Is that correct?

SENATOR GARDENHIRE (Chairman): You're recognized.

DEPARTMENT OF SAFETY (Ms. Stroecker): That is my understanding. However, I am not an expert of what you can and cannot arrest people for. So if the DAs are not shaking their head that I am wrong --

SENATOR GARDENHIRE (Chairman): They're shaking their heads up and down. That means --

DEPARTMENT OF SAFETY (Ms. Stroecker): Yes.

SENATOR GARDENHIRE (Chairman): All right. Go ahead.

SENATOR TAYLOR: Thank you, Mr. Chairman.

And my question is, if -- if we were to pass this bill, and I believe Department of Safety supports this bill, if we were to pass this and it become law, could I have a commitment that the Department of Safety and the state highway patrol is going to take this seriously and use this -- this law. If we give it to you, you're going to

use it to enforce the law and make arrests for people who commandeer the Mississippi River Bridge, who stop the interstate for the purposes of terrorizing people by doing spinouts and to -- that also block intersections of state routes?

Can I have a commitment the Department of Safety would take that seriously and use this tool that we're -- if we give it to you?

SENATOR GARDENHIRE (Chairman): Okay. You're recognized.

DEPARTMENT OF SAFETY (Ms. Stroecker): I never -- I always make sure I get recognized.

I do want to clarify, we are neutral on the bill. We are not one way or the other on it. But yes, Chairman, I think the colonel and the commissioner, especially with our partnership with the Memphis police, would love to utilize any tools that we can.

SENATOR TAYLOR: Thank you, Mr. Chairman.

SENATOR LAMAR: I have a question for --

SENATOR GARDENHIRE (Chairman): Okay. Thank you.

Okay. Senator Lamar, we're still in session -- out of session.

SENATOR LAMAR: Thank you, Mr. Chairman.

And my question to Safety is is that I pretty much want to pose the same question to you. Essentially -- well, Senator Taylor pointed out that this law would be used to essentially use another tool to attack protesters. But on the flip side, I was trying to point out the fact that this law could potentially prevent citizens from being able to record police misconduct by having to be over 25 feet away. Is that true?

DEPARTMENT OF SAFETY (Ms. Stroecker): I think that might be a better question for the bill's sponsor and their intent. I don't want to speak to whether or not it would be a potential problem if someone were to do that. I wouldn't feel comfortable commenting on that.

SENATOR LAMAR: Let me -- let me rephrase a question like this, Mr. Chair.

SENATOR GARDENHIRE (Chairman): You're recognized.

SENATOR LAMAR: If -- say misconduct is actually happening and an officer, according to this bill, tells someone to step away and according to this they have to just say it once or this person could get charged with a misdemeanor, do you feel

like it's an instance where if misconduct's happening and the officers say step away, a citizen would have to step away and could not record the mis- -- misconduct?

SENATOR GARDENHIRE (Chairman): You're recognized.

DEPARTMENT OF SAFETY (Ms. Stroecker): Again, I don't think it would be appropriate for me to answer that hypothetical. Nothing in the bill prohibits recording anything, and so I just don't think it would be appropriate for the department to opine on that.

SENATOR LAMAR: Who would be the appropriate person to answer this question? Legal? Okay.

SENATOR GARDENHIRE (Chairman): Ms. Stroecker, you're recognized. I mean, Ms. Insogna.

LEGAL SERVICES (Ms. Insogna): Elizabeth Insogna, Legal Services.

As I read the -- the statute in the amendment, there wouldn't be a specific prohibition against recording. It's just the 25 foot requirement. So you could record from 25 feet back. And -- and the directive can only be issued.

It's only an offense in those certain circumstances which are a traffic stop, I think there's public safety and there was one other one -- a lawful traffic stop, an active investigation of the scene of an alleged crime, or an ongoing and immediate threat to public safety.

SENATOR LAMAR: To legal, what --

SENATOR GARDENHIRE (Chairman): Does that answer your question?

SENATOR LAMAR: Yeah, I guess. What I'm trying to get -- 25 feet is far, essentially. That's about the size -- it's pretty big difference. While you can still record -- but you can't get the same footage of being able to be where you want to be in current law, and now being required to be 25 feet away and that's what I'm trying to point out. But I appreciate you answering my question, and I appreciate you.

Thank you, Mr. Chairman.

SENATOR GARDENHIRE (Chairman): Thank you.

Any other questions for legal?

I see none.

You're dismissed. Thank you.

[Back in session.]

SENATOR GARDENHIRE (Chairman): We're back into session.

And any other questions?

Senator Pody, there's quite a bit of questions. Do you want to roll this into the heel and maybe try to work out something for next Tuesday or do you want to go ahead and --

SENATOR PODY: Thank you, Mr. Chairman. So, Mr. Chairman, I can say the AG has actually looked at the bill, but I did not ask the AG specifically about the captions covering that way. But I will make that commitment back there. I know there was something pointed out that one of the laws that was similar to this has a federal -- it's in court right now. But I think that our law was worded and structured to overcome that.

Now, Mr. Chairman, I'm going to tell you, I've -- you've already been so gracious and rolled the bill for me. So this would have to be a committee roll, and I'm at the will of the committee.

SENATOR GARDENHIRE (Chairman): It'll be a committee roll.

SENATOR PODY: That -- could we roll it to the heel? That would be great.

SENATOR GARDENHIRE (Chairman): That'd be great. See you -- see you Tuesday.

SENATOR PODY: Thank you. Thank you.

SENATOR GARDENHIRE (Chairman): Thank you, folks.

[END OF SESSION.]

* * *

SENATE JUDICIARY COMMITTEE
TENNESSEE GENERAL ASSEMBLY

April 8, 2025

(WHEREUPON, On the above date, there came up for consideration in the Senate Judiciary Committee, Tennessee General Assembly, Senate Bill 30, sponsored by Senator Pody and others. Discussion pertaining to this bill was as follows):

SENATOR GARDENHIRE (Chairman): Senator Pody, we put you off last week. We're going to take you now on your bill, Item Number 38, which is Senate Bill 30. Last week we put it off to get an answer to a question and I think our legal department solved the question that Senator Roberts had on -- on that.

So you're recognized on your bill.

SENATOR PODY: Yep. Thank you. And Chairman -- yes, Senator Roberts did ask a question about the caption, if it was large enough, and we did get clarification that it is.

There was one other question that came

up and it has to do with hanging banners on signs and it was saying that if there was a high school team or somebody that had proper authorization, could they still hang signs on bridges and such. And the answer to that: As long as they go through the right channels, yes, they can.

SENATOR GARDENHIRE (Chairman): Any questions or comments from our sponsor?

I see none.

Senator Taylor, you're recognized.

SENATOR TAYLOR: Thank you, Mr. Chairman.

Would it be possible for me to ask a question of Department of Safety?

SENATOR GARDENHIRE (Chairman): Would it be possible to what?

SENATOR TAYLOR: To ask a question of the Department of Safety.

SENATOR GARDENHIRE (Chairman): Sure. Department of Safety, if you'll come forward. We'll go out of session, and I think Elizabeth knows the drill, and -- you're recognized.

[Out of session.]

DEPARTMENT OF SAFETY (Ms. Stroecker): Elizabeth Stroker, Legislative Director, Assistant

General Counsel for the Department of safety.

SENATOR TAYLOR: Thank you, Mr. Chairman.

May I?

SENATOR GARDENHIRE (Chairman): You're recognized.

SENATOR TAYLOR: Thank you, Mr. Chairman.

I know last meeting I asked a question if this would allow THP to make an arrest based on a video placed on social media of people, for example, commandeering the Mississippi River Bridge. And I wanted to ask -- I really want to put a fine point on it, and that is that if for whatever reason the Memphis police chose not to -- to charge, is this something that the THP could choose to -- to charge?

SENATOR GARDENHIRE (Chairman): You're recognized.

DEPARTMENT OF SAFETY (Ms. Stroecker): Yes, sir. They would have that jurisdiction.

SENATOR TAYLOR: All right. Thank you, Mr. Chairman.

SENATOR GARDENHIRE (Chairman): Any other questions of our witness while she's on?

Thank you.

We'll go back into session.

[Back in session.]

SENATOR GARDENHIRE (Chairman): Any other questions of the sponsor on his bill? I see none to my left, see none to my right.

Senator Pody, would you like to close or go for a vote?

SENATOR PODY: I just ask for a favorable vote.

SENATOR GARDENHIRE (Chairman): Oh, I don't think we have to have a motion again. We already had a motion to get the bill started last week. Do you want to vote?

SENATOR PODY: Yes, please. Yes.

SENATOR GARDENHIRE (Chairman): Madam Secretary, take the roll.

MADAM SECRETARY: Senator Harshbarger?

SENATOR HARSHBARGER: Aye.

MADAM SECRETARY: Votes aye.

Senator Kyle?

SENATOR KYLE: No.

MADAM SECRETARY: Votes no.

Senator Lamar?

SENATOR LAMAR: No.

MADAM SECRETARY: Votes no.
Senator Roberts?
SENATOR ROBERTS: (No audible response.)
MADAM SECRETARY: Senator Rose?
SENATOR ROSE: Aye.
MADAM SECRETARY: Votes aye.
Senator Stevens?
SENATOR STEVENS: Aye.
MADAM SECRETARY: Votes aye.
Senator Taylor?
SENATOR TAYLOR: Aye.
MADAM SECRETARY: Votes aye.
Senator White?
SENATOR WHITE: Aye.
MADAM SECRETARY: Votes aye.
Chairman Gardenhire?
SENATOR GARDENHIRE (Chairman): Aye.
MADAM SECRETARY: Votes aye.
Chairman, you have 6 ayes and 2 noes.
SENATOR GARDENHIRE (Chairman): Thank you. Senator Pody, your bill goes to calendar.

[END OF SESSION.]

* * *

SENATE SESSION
23rd LEGISLATIVE DAY
TENNESSEE GENERAL ASSEMBLY

April 14, 2025

(WHEREUPON, On the above date, there came up for consideration in the Senate Session - 23rd Legislative Day, Tennessee General Assembly, Senate Bill 30, sponsored by Senator Pody and others. Discussion pertaining to this bill was as follows):

SENATOR STEVENS (Chairman): Next bill. Mr. Clerk.

MR. CLERK: Mr. Speaker, the Senate is on Item Number 30, Senate Bill 30 by Senator Pody.

SENATOR STEVENS (Chairman): Senator Pody, you're --

SENATOR PODY: Thank you, Mr. --

SENATOR STEVENS (Chairman): -- you're recognized on Item Number 3 [sic].

SENATOR PODY: Thank you, Mr. Speaker.

Mr. Speaker, I move Senate Bill 30 on

third and final consideration.

SENATOR STEVENS (Chairman): That's a proper motion.

Senate -- Senate -- Senator Pody has moved Senate Bill 30 on third and final consideration.

Amendments, Mr. Clerk?

MR. CLERK: Amendment Number 1 by the Senate Judiciary Committee.

SENATOR STEVENS (Chairman): Chairman Gardenhire?

SENATOR GARDENHIRE: Thank you, Mr. Speaker.

Amendment 1 creates a Class B misdemeanor for placing unauthorized signs on highways or related structures and a -- Class A misdemeanors for civil rights intimidation through littering or trespassing. It also creates a Class C misdemeanor for failing to identify or give a false name to law enforcement and a Class B misdemeanor for approaching an officer within 25 feet after being ordered to stop. Another Class B misdemeanor is created for transporting a person in a cargo area of a box truck.

The amendment also expands law

enforcement arrest powers by allowing warrantless arrests for misdemeanors based on probable cause and grants officers civil and criminal immunity when making such arrests instead of issuing a citation.

With that, I move Amendment 1 for adoption and yield to the sponsor for any additional explanation.

SENATOR STEVENS (Chairman): Senator Gardenhire moves Amendment Number 1. Properly seconded.

Discussion on the amendment?

I see none.

We're ready to vote.

All in favor of the amendment say, "aye."

MEMBERS (Collectively): Aye.

SENATOR STEVENS (Chairman): Those opposed, "nay."

MEMBERS (Collectively): Nay.

SENATOR STEVENS (Chairman): You adopt. Back on the bill as amended.

Senator Pody, you're recognized.

SENATOR PODY: Thank you.

The chairman did a good job in

explaining the amendment, but I want to walk through this just a little bit. We're going to be changing a few things.

Number one, it is that you cannot bring a group of individuals into -- transport them in the back of a box truck without seat belts, without seats, without how they're supposed to be and just unload them that they can do protests. Another thing that it does, if a law enforcement officer comes up to an individual and asks for identification, they don't have to give that identification; however, if they do give identification, they give a name, it has to be their name. They can't give a fictitious name. It has to be their name that they give.

The next thing it does is it does say that you're not going to be allowed to hang banners over the interstates. You got to get proper permission to do that. And then the other thing it's going to do, it's going to do this, Mr. Speaker. If law enforcement is actively doing something like arresting somebody, they're not just walking down the street, but they're actively doing something in law enforcement, and they've got the right to say "you can film me, you can yell at me,

you can do anything you want, but while I'm doing this, you've got to stand back 25 feet."

And, Mr. Speaker, what we want to do is we want to make sure that the public can -- can film, can do whatever they want to do, but they're not going to be on top of the officer while they're making an arrest or something along that line.

With that, I'll answer any questions.

SENATOR STEVENS (Chairman): Senator Taylor, you're recognized.

SENATOR TAYLOR: Thank you, Mr. Speaker. Will the sponsor yield?

SENATOR STEVENS (Chairman): Sponsor yields.

SENATOR TAYLOR: I believe also included in this and I did not hear in your explanation is that law enforcement would be able to make arrests for misdemeanors based on video evidence; is -- do I understand that correctly?

SENATOR STEVENS (Chairman): Senator Pody?

SENATOR PODY: That -- that is correct. Right now, they have to physically see it, but if they're shown evidence like a video, they can -- they can act on that, yes.

SENATOR STEVENS (Chairman): Senator Yarbro?

SENATOR YARBRO: Thank you, Mr. Speaker. If the sponsor will yield.

SENATOR STEVENS (Chairman): Sponsor yields.

SENATOR YARBRO: Thank you, Mr. Speaker, and I appreciate the -- the sponsor's effort in shepherding this bill through. And I think this legislation actually does a lot of good and important things, but there are a few areas where I do have some concerns. But I want to ask just a couple clarifying questions about the rules regarding filming of -- of law enforcement officers.

I just want to be clear. So if someone is beyond 25 feet, like this -- this legislation does not change anything. That person has -- continues to have the right to film in that -- in that instance; is that correct?

SENATOR STEVENS (Chairman): Senator Pody?

SENATOR PODY: That's correct.

SENATOR STEVENS (Chairman): Senator Yarbro.

SENATOR YARBRO: And just to continue

following up, there are a few narrow exceptions where there is a 25-foot limit for traffic stops, active investigations and on -- and ongoing and immediate threat to public safety. But those are conditioned for when the officer is lawfully engaged in the execution of official duties and so does not apply if the officer is not engaged in lawful policing conduct; is that correct?

SENATOR STEVENS (Chairman): Senator Pody?

SENATOR PODY: That is correct. And it's -- even if they're arresting somebody, if the law enforcement officer doesn't tell somebody, they can still be right there within the 25 feet and they can still film and they can still film from the 25 feet as well. So we're never telling the public they can't stop filming. And the law enforcement has to be legally doing their -- their work. They can't be breaking the law themselves.

SENATOR STEVENS (Chairman): Senator -- Senator Yarbro.

SENATOR YARBRO: Thank you, Mr. Speaker. I appreciate those clarifications from the sponsor.

SENATOR STEVENS (Chairman): Leader Akbari?

SENATOR AKBARI: Thank you, Mr. Speaker. Will the sponsor yield?

SENATOR STEVENS (Chairman): Sponsor yields.

SENATOR AKBARI: Thank you, Mr. Speaker.

So just a point of clarification from my colleague from Davidson County. If the officer is performing their duties but they are doing it in a manner that is illegal -- and so I'm specifically thinking about a George Floyd situation. So, you know, what happened in that situation, the person who was filming it was quite close to the situation. Would this law preclude the person from filming that situation if the police officer gives them notice and asks them to move back?

SENATOR STEVENS (Chairman): Senator Pody?

SENATOR PODY: In no way are we trying to protect anybody that's breaking the law. So this is only for officers that are lawfully performing their duty.

SENATOR STEVENS (Chairman): Senator Oliver?

SENATOR OLIVER: Thank you, Mr. Speaker.

Does the sponsor yield for some

questions?

SENATOR STEVENS (Chairman): Sponsor yields.

SENATOR OLIVER: Thank you. I just had a couple of clarifying questions.

So in Nashville, I believe this past summer we had some incidences where there were some neo-Nazi type groups that came to Nashville. They came here in a U-haul truck and caused some disruptions in our downtown area. Is this legislation -- is the intent to respond to those types of incidences?

SENATOR STEVENS (Chairman): Senator Pody?

SENATOR PODY: We did have that happen in Nashville, and under this piece of legislation they would not be allowed to do that again.

SENATOR STEVENS (Chairman): Senator Oliver?

SENATOR OLIVER: Thank you, Mr. Speaker.

And in my district we had a neighborhood that was littered with KKK material in homeowners' yards. Would that be considered an offense under this legislation?

SENATOR STEVENS (Chairman): Senator

Pody?

SENATOR PODY: This legislation -- because littering is already illegal. But what we're trying to do, if they have the intent with their littering of saying that this is going to intimidate somebody, that's when this piece of legislation would kick in. They'd have to have the intent of whatever they're littering to obstruct somebody else's constitutional rights.

SENATOR STEVENS (Chairman): Further questions?

We ready to vote?

Senator Pody?

SENATOR PODY: I renew my motion.

SENATOR STEVENS (Chairman): Senator Pody renews this motion.

We're on Senate Bill 30 as amended.

All in favor of the bill will vote "aye" when the bell rings.

Those opposed, vote "nay."

Has every member voted?

Does any member wish to change the vote?

Mr. Clerk, take the vote.

MR. CLERK: Ayes, 30; 2 nays.

SENATOR STEVENS (Chairman): Senate Bill 30, having received the constitutional majority, is declared passed. Without objection, the motion to reconsider goes to the table.

[END OF SESSION.]

* * *

HOUSE FLOOR SESSION
29th LEGISLATIVE DAY (A)
TENNESSEE GENERAL ASSEMBLY

April 21, 2025

(WHEREUPON, On the above date, there came up for consideration in the Senate Judiciary Committee, Tennessee General Assembly, Senate Bill 30, sponsored by Representative Lamberth and others. Discussion pertaining to this bill was as follows):

REPRESENTATIVE SEXTON (Mr. Speaker): House Bill 55 by Leader Lamberth and others relative to criminal offenses.

MR. CLERK: Mr. Speaker, the Senate bill is on the desk.

REPRESENTATIVE SEXTON (Mr. Speaker): Leader Lamberth, you're recognized.

REPRESENTATIVE LAMBERTH: Thank you, Mr. Speaker. Move to substitute and conform to Senate Bill 30.

No, thanks.

REPRESENTATIVE SEXTON (Mr. Speaker): Did he substitute and conform?

MR. CLERK: Yes.

REPRESENTATIVE SEXTON (Mr. Speaker): Okay. Leader Lamberth moves to substitute and conform to Senate Bill 30.

Properly seconded.

Without objection, so ordered.

Leader Lamberth?

REPRESENTATIVE LAMBERTH: Thank you, Mr. Speaker.

Move passage of Senate Bill 30 on third and final consideration.

REPRESENTATIVE SEXTON (Mr. Speaker): Leader Lamberth moves passage of Senate Bill 30 on third and final consideration.

Properly seconded.

Mr. Clerk, call out the first amendment.

MR. CLERK: House Judiciary Committee Amendment Number 1, Mr. Speaker, same as Senate Amendment Number 1.

REPRESENTATIVE SEXTON (Mr. Speaker): Chairman Farmer, you're recognized.

REPRESENTATIVE FARMER: Thank you,

Mr. Speaker.

Move to withdraw.

REPRESENTATIVE SEXTON (Mr. Speaker): Without objection, Amendment Number 1 withdrawn.

Next amendment, Mr. Clerk.

MR. CLERK: House Amendment 2 by Representative Behn.

Mr. Speaker, it was timely filed.

REPRESENTATIVE SEXTON (Mr. Speaker): Representative Behn, you're recognized.

REPRESENTATIVE BEHN: Thank you Mr. Speaker.

This amendment would remove the halo provision of this bill, which would ensure that press and citizens can use their constitutional rights during an exchange with law enforcement. So this bill would grant police unchecked power to prevent the public, including press, from being able to -- to be within 25 feet of police operating during an instance.

And with that, Leader Lamberth, I have a few questions for you with regard to this amendment.

One, what does ensuring police accountability have to do with antisemitism?

REPRESENTATIVE SEXTON (Mr. Speaker): Representative, it's your amendment so he could ask you, but it's your amendment, so asking him to comment probably wouldn't be effective right now. Representative Behn.

REPRESENTATIVE BEHN: Thank you. Okay, well, I just want to highlight a few questions I have for you to answer at some point with regard to this amendment.

But one is that I don't think that anything having to do with police accountability in this bill has nothing to do with antisemitism, period, end of statement.

Two, I also want to flag that there are no provisions in this bill to protect media, medical personnel, and legal observers in an incident where they are watching police brutality.

And three, I also want to flag that on numerous occasions, federal district courts have ruled and upheld the constitutional rights of the citizenry to ensure that they are able to film public officials, including police.

So not only is this bill unconstitutional, but yet you have not included exemptions of which these are important

constituencies that would be needed in order to ensure accountability and transparency.

I also want to flag that during the George Floyd protest, the woman that was recording that video was a woman named Darnella Frazier. And if -- if this bill had been in effect, not only would she have been criminalized for taking that video of George Floyd, she could have been retroactively thrown in jail.

So with that, I move to adopt this motion that would remove the halo provision in this bill. Thank you.

REPRESENTATIVE SEXTON (Mr. Speaker): Representative Behn moves adoption of Amendment Number -- Number 2.

Properly seconded.

Any discussion on the amendment?

Deputy Speaker Zachary, you're recognized.

REPRESENTATIVE ZACHARY: Thank you, Mr. Speaker.

Move to previous question.

REPRESENTATIVE SEXTON (Mr. Speaker): Previous question is being called.

Any objection?

Seeing none, we're voting.

All those in favor of adopting Amendment Number 2, vote "aye" when the bell rings.

Those opposed, vote "no."

Has every member voted?

Does any member wish to change their vote?

Mr. Clerk, please take the vote.

MR. CLERK: Ayes, 24; 70 nays.

REPRESENTATIVE SEXTON (Mr. Speaker): Amendment Number 2 fails.

Next amendment, Mr. Clerk.

MR. CLERK: Mr. Speaker, no further amendments.

REPRESENTATIVE SEXTON (Mr. Speaker): Leader Lamberth, you're recognized.

REPRESENTATIVE LAMBERTH: Thank you, Mr. Speaker. I renew my motion.

REPRESENTATIVE SEXTON (Mr. Speaker): Leader Lamberth renews his motion. No? All right.

Any further discussion?

Representative Pearson?

REPRESENTATIVE PEARSON: Thank you, Speaker.

And, Sponsor, when we have people who

have been given the power as our law enforcement officers have been given, which is ultimately the power to use force that could take someone's life, any of our lives, we should hold them to the highest standard of possible review and responsibility as we can. I have family who are law enforcement officers. Almost everybody in Memphis got somebody who they're related to who serves in the Memphis Police Department.

To require accountability for police officers is not to be anti-police. To require people and allow people to have the ability to record interactions with police officers is not anti-police. It's that we give them the authority and the power to use force enough to actually kill people. And we're weakening the protections of the people with legislation like this, but not only is this targeting folk's ability to be able to record, as was mentioned with the George Floyd murder, there's language in here that prevents people from even putting up banners on certain streets and highways that might be demanding government officials or others to do something.

This type of overreach into our civil liberties, into the ideals and ideas of this

constitutional democratic republic experiment feel maybe in this moment to some of my colleagues like a necessary exertion of force to silence, dissent, to keep people in check. It might feel that way, but the reality is this overreaching onto our rights as citizens, our rights as people who live in this state are deeply troubling and concerning, and we have a responsibility to defend and to protect those rights against anyone who might be abridging them in a way that is detrimental or harmful in our communities.

While I would like to believe, as many folks would, that officers of the law are always doing a great job and doing things perfectly, that isn't true. And it has often been regular people who continue to shine a light on the unjust practices that we see happen against citizens, particularly poor people and people of color, black folks in this country. . .

(WHEREUPON, there were technical difficulties with the video and a portion of the video is not available for transcription. The requested transcript continues below.)

REPRESENTATIVE PEARSON: ...to be using force against officers and I know my colleague will

say, well, it's within 25 feet, but who's measuring? Many people will start to use this legislation, I am concerned, as a bludgeon to our rights. This is why the consistent overreaching that is practiced in this legislation concerns me greatly for our communities, especially communities that for a very long time have dealt with and continue to deal with unjust practices by the people who are in positions of power who are supposed to be protecting and serving or supposed to be protecting our rights, our liberties, our communities, but that isn't always what happens.

And you can't legislate from the point of privilege. You legislate from the point of pain for the people who are most marginalized and who are struggling and who are facing the negative consequences or the unintended consequences of decisions.

And so while on its face this legislation might look like the right thing to do to take power away from folks, the reality is we have to view what can go wrong. And the silencing of voices, the stopping of certain recordings will silence the communities that need our protection and support more than ever before.

And so with that, I cannot support this legislation, and I ask that my colleagues don't support it as well.

REPRESENTATIVE SEXTON (Mr. Speaker): Leader Lamberth?

REPRESENTATIVE LAMBERTH: Thank you for your comments, and I feel like I've heard that particular speech on a few different bills, but it doesn't have anything to do with this bill. So I do appreciate your comments; so thank you, sir.

REPRESENTATIVE SEXTON (Mr. Speaker): Representative Jones of Davidson.

REPRESENTATIVE JONES (Davidson): Thank you.

To the sponsor, I understand that this bill is brought shamefully not just by you but by our mayor here in Nashville, who have offered a false solution to the rise of hate crimes and white nationalist groups marching here in our city that we've spoken out against, Representative Lamberth.

And so to Representative Lamberth, my question to you -- you bring this bill that says that this is the solution, this is the PEACE Act, that is your response to stop hate in this state.

Do you, sir, Representative Lamberth,

take any responsibility through your rhetoric and through your policies for welcoming these neo-Nazi groups to Tennessee when on October 2022, you stood with the Proud Boys outside this Capitol, a hate group that we are targeting? Do you take any responsibility, Representative William Lamberth, for welcoming hate groups to Tennessee when you attack migrants, when you dismantle racial justice policies? Do you, sir, believe that when you give this call and response and your cousins come here in masks and terrorize our community, do you take any responsibility for your actions?

REPRESENTATIVE SEXTON (Mr. Speaker): Leader Lamberth?

REPRESENTATIVE LAMBERTH: Yeah, literally nothing you said there was accurate. But I do appreciate you saying that you live in a reality far beyond ours and you just make stuff up. And you did it again just then. So thank you for your comments.

REPRESENTATIVE SEXTON (Mr. Speaker): Representative Jones of Davidson.

REPRESENTATIVE JONES (Davidson): The reality I live with are four young black boys who I met and stood with and we raised money for them

after neo-Nazis terrorized them when they were playing drums on Broadway. The reality I live with is representing the most diverse district where my constituents who are migrants are terrorized by your rhetoric which mirrors the policies of these white nationalist groups who you are saying that you condemn.

And so, sir, I say to you, my friend, William Lamberth -- actually, not my friend, let me be honest to Representative Lamberth -- you don't need a policy, a law. What you need is a mirror. The reality is that there's a certain reason why white nationalist groups feel welcome in Tennessee. And a lot of it has to do with the agenda that you've pushed as the leader of your party, shamefully, to welcome these groups here. Laws that have made it so that in Tennessee, one in five black people cannot vote, laws that protect Confederate monuments but don't protect migrant children. Laws like you're failing to do, but trying to advance a bill to create undocumented students -- prevent them from entering our schools.

This is the agenda of these white nationalist groups, these neo-Nazis. And so that's the reality we see in Tennessee. And I hope that

the media here connects the dots because they have not done their job either in connecting the policies in this building to the marches happening outside this building. They have not done their jobs to the media here in connecting the white nationalist terror that our constituents are feeling to the rhetoric from this body.

And so all of you all should be condemned for your actions right now. It is wrong that the mayor of Nashville has brought this to you, a bill that will restrict the rights of our constituents. So shame on Mayor Freddie O'Connell, shame on the Republican caucus, and this is an attack on the expression and free expression of all Tennesseans, which is why multiple civil rights groups from the NAACP, to the American Muslim Advisory Council, to immigrant advocacy groups have opposed this bill, because they know that this bill will not make them safer. And this is your attempt to try and deflect, as you often do, Representative Lamberth, from the real issue, which is the heart of which you've created in this state, a heart that has been poisoned by white supremacist violence and bigotry.

And it's on you, my friend,

Mr. Lamberth, to take accountability for your actions of welcoming those -- Blood and Tribe [sic] welcoming those groups that we've seen out here. We've seen them. And the truth be told, they're not coming for you, they're not coming for most of the people on your side of the aisle. They're coming for people who look like me. They're coming for people who look like my constituents. They're coming for the transgender Tennesseans. They're coming for the LGBTQ Tennesseans, the undocumented Tennesseans. They're coming for the Muslim Tennesseans. They're coming for people who are directly impacted, none of whom feel like your bill is a solution to this issue.

Would you respond to that reality that our constituents are facing, Representative Lamberth?

REPRESENTATIVE SEXTON (Mr. Speaker): Leader Lamberth.

REPRESENTATIVE LAMBERTH: Love to.

So every time you say "white nationalist," it's a racist comment. You're seeing someone based on their ethnicity. It's absolutely 100 percent racist. When you say "nationalist," you speak against Americans that have died for this

country. Every time you say that -- you may not realize this, but every single time you do that, you define your fellow Americans and Tennesseans through a racist lens. I stand against racism. I wish you would join us in that. I stand against Democratic Socialists, which is what Nazis are. Hey, you may hang your head, but it's true. My grandfather suited up, went to Germany and fought against the Nazis. You've done nothing but more than bring just words.

When you want to put a uniform on and go fight against the Nazis and beat them, then speak on this bill. But until then, the Democratic Socialists that try to take over this world, there are men and women in uniform of every single ethnicity. And you may hate every white person, but the rest of us will not stand for racism in this state.

REPRESENTATIVE SEXTON (Mr. Speaker): All right. Calm down. You-all are good. Thank you.

Representative Jones, you're recognized.

REPRESENTATIVE JONES (Davidson): Calling out racism does not make you racist. White

nationalism is --

REPRESENTATIVE SEXTON (Mr. Speaker): Here we go.

Speaker Pro Temp Marsh, you're recognized.

REPRESENTATIVE MARSH: Thank you, Mr. Speaker. Call -- call previous question.

MEMBERS (Collectively): Objection.

REPRESENTATIVE SEXTON (Mr. Speaker): Previous question been called.

MEMBERS (Collectively): Objection.

REPRESENTATIVE SEXTON (Mr. Speaker): There is objection. We're on the board.

All those in favor of previous question, vote "aye" when the bell rings.

Those opposed vote "no."

Has everyone voted?

Does anyone wish to change their vote?

Mr. Clerk, please take the vote.

MR. CLERK: Ayes, 70; 20 nays.

REPRESENTATIVE SEXTON (Mr. Speaker): Previous question prevails.

We're voting.

All those in favor of Senate Bill 30 as amended, vote "aye" when the bell rings.

Those opposed, vote "no."

Has every member voted?

Does any member wish change their vote?

Mr. Clerk, please take the vote.

MR. CLERK: Ayes, 70; 20 nays; 4 present not voted.

REPRESENTATIVE SEXTON (Mr. Speaker): Senate Bill 30, having received constitutional majority, I hereby declare it passed without objection. Motion to reconsider is tabled.

[END OF SESSION.]

FURTHER DEPONENT SAITH NOT

DEBORAH KOENES STATE OF TENNESSEE NOTARY PUBLIC MONTGOMERY COUNTY

REPORTER'S CERTIFICATE

STATE OF TENNESSEE
COUNTY OF MONTGOMERY

I, D. ROCHELLE KOENES, Licensed Court Reporter, with offices in Clarksville, Tennessee, hereby certify that I reported the foregoing Legislative recordings of SENATE BILL 30 by machine shorthand to the best of my skills and abilities, and thereafter the same was reduced to typewritten form by me.

I am not related to any of the parties named herein, nor their counsel, and have no interest, financial or otherwise, in the outcome of the proceedings.

I further certify that in order for this document to be considered a true and correct copy, it must bear my original signature, and that any unauthorized reproduction in whole or in part and/or transfer of this document is not authorized, will not be considered authentic, and will be in violation of Tennessee Code Annotated 39-14-104, Theft of Services.

____________________________________
D. ROCHELLE KOENES, RPR, LCR
Veteran Court Reporting
Court Reporter - and
Notary Public State of Tennessee

My Notary Public Commission Expires: 4/25/2027
LCR # 689 - Expires: 6/30/2027

**(**

**(A)** 40:4

**1**

**1** 30:8,14 31:6,10 41:21,22 42:4

**100** 53:24

**14** 29:6

**17** 13:1,13

**2**

**2** 5:4 6:5 13:1 14:5 28:19 38:25 42:6 44:15 45:3,11

**20** 55:20 56:5

**2022** 50:3

**2025** 5:4 24:5 29:6 40:6

**21** 40:6

**23rd** 29:10

**24** 8:10 45:9

**25** 7:17 11:18 19:10 20:23,24 21:11,15 30:21 33:2 34:16 35:14, 15 42:19 48:1

**25-foot** 9:25 11:6 35:2

**25ft** 10:9

**3**

**3** 29:23

**30** 5:9,13 24:10,16 29:11,18,25 30:5 38:17,25 39:4 40:11,24 41:6,12, 15 55:24 56:8

**3418** 5:15,22

**38** 24:15

**4**

**4** 6:14 56:5

**40** 8:9

**5**

**5** 7:4 9:23 11:17

**543** 8:25

**55** 40:16

**6**

**6** 7:24 28:19

**65** 8:10

**7**

**7** 8:7 14:5

**70** 45:9 55:20 56:5

**8**

**8** 8:11 15:8 24:5

**A**

**ability** 8:17 12:9 46:12,18

**abridging** 47:10

**absolutely** 53:23

**acceptable** 13:12

**accountability** 42:25 43:11 44:2 46:10 53:1

**accountable** 11:3

**accurate** 50:16

**act** 33:25 49:23

**actions** 50:12 52:9 53:2

**active** 7:7 21:4 35:3

**actively** 7:6,22 11:6 32:21,23

**activity** 8:23

**actors** 11:23

**acts** 13:6

**additional** 31:8

**adjudicated** 13:14

**adopt** 31:21 44:10

**adopting** 45:2

**adoption** 31:7 44:14

**advance** 51:21

**Advisory** 52:17

**advocacy** 52:17

**AG** 14:3 22:9,10

**agenda** 51:14,23

**ahead** 17:16 22:7

**aisle** 53:6

**Akbari** 35:25 36:1,5

**alleged** 21:5

**allowed** 32:17 37:17

**allowing** 31:1

**altered** 13:3

**amend** 13:6

**amended** 13:3,9 31:22 38:17 55:25

**amendment** 5:14,16,22,23 6:2 9:3,5,6,15 10:3 12:10 20:22 30:8, 14,25 31:6,10,12, 15 32:1 41:19,21, 22 42:4,5,6,13,23 43:2,3,9 44:14,17 45:3,11,12

**amendments** 30:7 45:14

**American** 52:16

**Americans** 53:25 54:3

**answering** 21:17

**anti-police** 46:11, 14

**antisemitism** 42:25 43:12

**appears** 9:23

**apply** 35:7

**approaching** 7:5 30:21

**April** 5:4 24:5 29:6 40:6

**area** 30:24 37:10

**areas** 34:11

**arrest** 8:13,15,17 10:22 15:10 17:1, 8 26:10 31:1 33:7

**arrested** 6:16 7:2

**arresting** 7:18 10:16 32:22 35:12

**arrests** 15:24 16:11,25 18:1 31:2,4 33:17

**Article** 13:1 14:5

**asks** 32:10 36:15

**Assembly** 5:2,8 24:3,9 29:5,10 40:5,10

**Assistant** 16:15 25:25

**attaching** 8:8

**attack** 19:6 50:8 52:14

**attempt** 52:19

**attention** 15:13

**Attorney** 13:17

**audible** 28:3

**authority** 46:14

**authorization** 25:3

**aware** 13:15

**aye** 9:7,8 27:19,20 28:5,6,8,9,11,12, 14,15,17,18

31:16,17 38:19 45:3 55:15,25

**ayes** 9:12 28:19 38:25 45:9 55:20 56:5

B

**back** 7:13,17 8:2 10:8,9 11:19 12:1 14:21 20:25 21:25 22:2,12 27:2,3 31:22 32:6 33:2 36:15

**bad** 11:23

**bandits** 15:14,22

**banner** 8:10

**banners** 25:1 32:17 46:21

**based** 26:10 31:2 33:18 53:23

**beat** 54:12

**beating** 10:8,10

**Behn** 42:7,10,11 43:5,6 44:14

**bell** 38:19 45:3 55:15,25

**belts** 8:3 32:6

**big** 21:12

**bigotry** 52:24

**bill** 5:8,10,13,16, 20,24 8:16 9:6,15, 21,22 12:25 13:4, 23,25 15:9 16:5 17:20,21 18:14 19:23 20:9 22:10, 19 24:9,11,15,16, 20 27:5,13 28:21 29:11,12,15,18,25 30:5 31:22 34:9 38:17,18 39:3 40:10,12,16,18,24 41:6,12,15 42:14, 17 43:12,15,23 44:6,12 49:9,16, 22 51:21 52:11,18 53:13 54:13 55:24 56:8

**bill's** 19:12

**bills** 13:2 49:8

**bit** 22:4 32:2

**black** 47:18 50:24 51:18

**block** 15:23 18:5

**blocking** 15:17 16:8,9

**Blood** 53:2

**bludgeon** 48:3

**board** 55:13

**body** 52:7

**box** 7:25 8:2,3 30:24 32:6

**boys** 50:4,24

**bragging** 16:4

**break** 13:22

**breaking** 35:19 36:19

**bridge** 8:9 15:14, 21,23 16:8 18:2 26:13

**bridges** 25:4

**bring** 32:4 49:22 54:10

**Broadway** 51:2

**broken** 16:1

**brought** 49:16 52:10

**brutality** 43:17

**building** 52:3,4

C

**calendar** 14:12 28:21

**call** 41:18 50:10 55:7

**called** 44:24 55:10

**Calling** 54:25

**Calm** 54:20

**camera** 12:1

**Capitol** 50:4

**caption** 13:7,11 24:23

**captions** 22:11

**capture** 10:12

**cargo** 30:24

**case** 8:5

**catch** 12:10

**caucus** 52:13

**caused** 37:9

**chair** 5:20 9:19 12:18 19:18

**chairman** 5:12, 18,19,25 9:2,9,12 11:9,14 12:19 14:6,11,17,23,25 15:4,6,7 16:12,20, 23 17:4,11,15,18 18:9,15,20,22 19:1,19 20:5,16 21:8,19,20 22:1,8, 9,17,22 23:1,4 24:13,22 25:7,12, 15,19 26:3,5,8,18, 23,24 27:4,11,16 28:16,17,19,20 29:15,19,22 30:2, 10 31:9,18,21,25 33:9,13,20 34:1,5, 20,23 35:9,20,24 36:3,16,22 37:2, 13,18,25 38:10,15 39:3 41:24

**change** 34:17 38:22 45:6 55:18 56:3

**changing** 32:3

**channels** 25:6

**charge** 12:5 26:16,17

**charged** 6:15,17, 22 19:25

**check** 13:17 47:4

**children** 51:20

**choose** 26:17

**chose** 26:15

**circumstances** 21:1

**citation** 31:5

**citizen** 20:2

**citizenry** 43:21

**citizens** 12:9,13 19:8 42:15 47:6, 17

**city** 49:19

**civil** 6:11 30:17 31:3 46:24 52:15

**clarification** 24:24 36:6

**clarifications** 35:23

**clarify** 18:13

**clarifying** 34:13 37:5

**class** 6:5,22 7:24 8:7,11 30:14,16, 18,20,22

**clear** 34:15

**Clerk** 29:16,17 30:7,8 38:24,25 40:18 41:3,18,20 42:5,6 45:8,9,12, 13 55:19,20 56:4, 5

**close** 10:18 27:7 36:12

**Coke** 6:9

**colleague** 36:7 47:25

**colleagues** 47:2 49:2

**Collectively** 9:8, 11 14:13 31:17,20 55:8,11

**colonel** 18:15

**color** 47:18

**comfortable** 19:16

commandeer 15:22 18:2
commandeering 26:12
comment 43:4 53:22
commenting 19:16
comments 9:16 14:19 25:8 49:7, 10 50:20
commissioner 18:16
commit 17:2
commitment 17:22 18:6 22:12
committed 8:13, 16,19 15:11
committee 5:2,8 22:20,21,23 24:3, 9 30:9 40:10 41:20
common 16:2
communities 47:11 48:6,11,24
community 50:11
concentrate 15:8
concerned 48:3
concerns 34:12 48:5
condemn 51:7
condemned 52:9
conditioned 35:5
conduct 35:8
Confederate 51:19
conform 40:23 41:2,6
connected 13:21
connecting 52:2, 5
connects 52:1
consequences 48:17
consideration 5:7 24:8 29:9 30:1,6 40:9 41:13, 16
considered 37:23
consistent 48:4
constituencies 44:1
constituents 51:4 52:6,12 53:8, 16
Constitution 13:1
constitutional 38:9 39:4 42:15 43:20 47:1 56:8
content 16:8
continue 34:25 47:16 48:7
continues 34:18 47:23
correct 17:3 33:22 34:19,22 35:8,11
correctly 33:19
Council 52:17
Counsel 16:16 26:1
country 47:19 54:1
County 6:13 8:1 36:7
couple 34:13 37:5
court 8:24 22:15
courts 43:19
cousins 50:10
covering 11:20 22:11
create 51:21
created 30:23 52:22
creates 6:5 7:4 9:24 30:14,18
crime 7:8 8:18 21:5
crimes 49:18
criminal 8:23 9:24 31:3 40:17
criminalized 44:7
crowd 7:20 10:21
current 8:14 21:15

D

Darnella 44:5
DAS 17:9
date 5:6 24:7 29:8 40:8
Davidson 6:13 8:1 36:7 49:12,13 50:22,23 54:24
Day 29:4,10 40:4
deal 48:7
dealt 48:7
decisions 48:18
declare 56:9
declared 39:5
deeply 47:7
deescalate 7:16
defend 47:8
define 54:3
deflect 52:20
demanding 46:22
democratic 47:1 54:6,13
department 14:24 15:1 16:14, 16 17:6,13,20,23 18:6,11 19:11 20:7,11 24:18 25:14,18,20,24 26:1,20 46:9
DEPONENT 56:12
Deputy 44:18
describe 5:23
description 9:14
designed 8:4
desk 40:19
detained 6:16
detrimental 47:10
died 53:25
difference 21:12
difficulties 47:21
directive 20:25
directly 53:13
Director 16:15 25:25
discussion 5:10 24:11 29:12 31:12 40:12 44:17 45:21
dismantle 50:8
dismissed 21:24
disrespect 11:22
disruptions 37:10
dissent 47:3
district 37:21 43:19 51:3
diverse 51:3
door 12:11
dots 52:1
downtown 37:10
draw 15:13
drill 25:22
dropping 6:8
drums 51:2
duties 7:6 35:6 36:8
duty 36:21

E

effect 44:6
effective 43:4
effort 34:8
Elizabeth 16:15 20:19 25:21,25
else's 38:9
embraces 13:4
emergency 14:3
end 12:5 23:6 28:22 39:7 43:13 56:11
enforce 18:1
enforcement 7:5 8:12 9:25 10:5 11:1 15:10 30:20 31:1 32:9,21,24 33:17 34:14 35:13,17 42:16 46:1,7
engaged 7:6 35:5,7
ensure 42:14 43:21 44:2
ensuring 42:24
entering 51:22
essentially 12:2 19:4,5 21:11
ethnicity 53:23 54:16
evidence 8:18 12:4,13 33:18,24
exceptions 35:1
exchange 42:16
execution 35:6
exemptions 43:25
exercise 12:10
exercising 6:11
exertion 47:3
expand 16:18
expands 30:25
experiment 47:1
expert 17:8
explaining 32:1
explanation 31:8 33:16
expressed 13:5
expression 52:14
extend 8:16

F

face 48:19
facing 48:16 53:16
fact 10:11 19:7
facts 8:21
failing 30:19 51:20
fails 45:11
falls 6:9
false 6:17,21 7:3 30:20 49:18
family 46:6
Farmer 41:24,25
favor 9:7 31:15 38:18 45:2 55:14, 24
favorable 27:10
federal 22:14 43:19
feel 19:15,25 47:1, 4 49:7 51:13 53:13
feeling 52:7
feet 7:17 11:18 19:10 20:24 21:11,16 30:22 33:2 34:16 35:14, 16 42:19 48:1
fellow 54:3
felony 8:15,16
fictitious 32:14
fight 54:12
filed 42:8
film 16:3 32:25 33:5 34:18 35:15 43:21
filming 34:14 35:17 36:12,14
final 30:1,5 41:13, 16
finally 8:11
fine 26:14
flag 43:14,18 44:3
flaw 12:8
flaws 12:16
flip 19:6
floor 13:18 14:2 40:4
flowing 16:1
Floyd 11:24 12:3, 6 36:10 44:4,8 46:19
focused 7:23 10:15,23 11:7
folk's 46:18
folks 23:5 47:13, 19 48:21
follow 11:12
foot 20:23
footage 21:14
force 46:3,15 47:3,25
forward 25:20
fought 54:8
Frazier 44:5
Freddie 52:12
free 52:14
friend 51:8,9 52:25

G

Gardenhire 5:12, 19 9:2,9,12 11:9, 14 12:19 14:6,11, 17,25 15:4 16:12, 20 17:4,11,15 18:9,22 19:19 20:5,16 21:8,20 22:1,22 23:1,4 24:13 25:7,15,19 26:5,18,24 27:4, 11,16 28:16,17,20 30:11,12 31:10
General 5:2,8 13:17 16:16 24:3, 9 26:1 29:5,10 40:5,10
George 11:24 12:3,6 36:10 44:4, 8 46:19
Germany 54:8
give 6:19,20,21,25 7:3 12:9 17:25 18:8 30:19 32:11, 12,13,14,15 46:14 50:9
good 31:25 34:10 54:20
government 46:22
gracious 22:18
grandfather 54:8
grant 42:17
grants 31:3
great 9:21 10:13 22:25 23:2 47:14
greatly 48:5
group 32:5 50:5
groups 37:8 49:19 50:3,7 51:6, 13,16,24 52:16,17 53:3
guess 21:10

H

halo 42:13 44:11
hang 8:10 25:4 32:17 54:7
hanging 25:1
happen 37:15 47:17
happened 36:11
happening 12:4 19:22 20:2 52:3
happy 14:8
harmful 47:11
Harshbarger 27:18,19
hate 49:18,24 50:4,7 54:16
head 17:9 54:7
heads 17:12
hear 12:8 33:16
heard 9:14 49:7
heart 52:21,22
Hebolt 8:24
heel 14:12 22:5,25
held 11:3
Hey 54:7
high 25:2
highest 46:5
highlight 43:7
highway 17:23
highways 30:16 46:22
hold 46:4
homeowners' 37:23
honest 51:10
hope 51:25
hours 15:24
house 13:2 40:4, 16 41:20 42:6
hypothetical 20:9

I

ideals 46:25
ideas 46:25
identification 32:11,12,13
identify 30:19
ignore 13:12
illegal 36:9 38:3
imbeciles 15:15
immigrant 52:17
immunity 31:3
impacted 53:13
important 34:11 43:25
incidences 37:7, 12
incident 43:17
included 33:15 43:24
including 42:18 43:22
individual 6:15 10:4 32:10
individuals 32:5
Insogna 20:18, 19,20
instance 20:1 34:19 42:20
insurrectionists 15:16
intend 7:21
intent 6:7 10:14, 15 11:16 12:7 19:13 37:11 38:4, 8
intentionally 7:5
interactions 46:13
intersection 15:15
intersections 15:17 16:9 18:5
interstate 15:15 16:9 18:3
interstates 32:18
intimidate 6:7 38:6
intimidating 6:10
intimidation 30:17
investigation 7:8 21:4
investigations 35:3
involved 7:18 8:22 10:6
issue 52:21 53:14
issued 20:25
issuing 31:4
Item 24:15 29:18, 23

J

jail 44:9
job 11:8 31:25 47:14 52:2
jobs 52:5
join 54:5
Jones 49:12,13 50:22,23 54:22,24
Judiciary 5:2,7 24:3,8 30:9 40:9 41:20
jurisdiction 26:21
justice 50:8

K

kick 38:7
kill 46:15
killing 12:2,6
kind 6:2 13:20 14:2
KKK 37:22
knee 11:24 12:3
Kyle 27:21,22

L

lady 11:25
Lamar 9:18,19 11:12,15 18:21,24 19:1,17,21 20:13 21:7,10 27:24,25
Lamberth 40:11, 16,21,22 41:5,9, 10,15 42:21 45:16,17,20 49:5, 6,20,21,25 50:6, 14,15 51:9,10 52:21 53:1,17,19, 20
language 46:20
large 24:23
law 7:5 8:12,14 9:25 10:5 11:1 12:4 13:4,9 15:9 16:6,25 17:22,25 18:1 19:5,8 21:15 22:15 30:20,25 32:9,21,24 33:17 34:14 35:13,17,19 36:13,19 42:16 46:1,7 47:13 51:11
lawful 7:6 21:3 35:7
lawfully 6:15,16 35:5 36:20
laws 13:7 22:13 51:16,18,20
leader 35:24 40:16,21 41:5,9, 15 42:21 45:16,20 49:5 50:14 51:15 53:19
led 8:22

**left** 27:6
**legal** 20:14,19,20 21:7,22 24:17 43:16
**legally** 35:18
**legislate** 48:13,14
**legislation** 12:17 34:10,16 37:11, 16,24 38:2,7 46:17 48:2,5,20 49:2
**Legislative** 16:15 25:25 29:4,10 40:4
**lens** 54:4
**LGBTQ** 53:10
**liberties** 46:25 48:11
**life** 46:3
**light** 14:4 47:16
**limit** 35:2
**literally** 8:2 15:18 50:16
**littered** 37:22
**littering** 6:5,6 30:18 38:3,5,8
**live** 47:6 50:17,24 51:2
**lives** 46:4
**long** 25:5 48:7
**looked** 22:10
**lot** 34:10 51:14
**love** 11:22 18:17 53:20
**loyal** 11:21

**M**

**Madam** 27:16,18, 20,23 28:1,4,6,9, 12,15,18
**made** 51:17
**majority** 39:4 56:9
**make** 5:16 10:21 12:23 13:18 14:3 15:24 16:11,24 17:1 18:1,12 22:12 26:10 33:4, 17 50:18 52:19 54:25
**makes** 9:15
**making** 31:4 33:7
**mandating** 11:17
**manner** 36:9
**marches** 52:3
**marching** 49:19
**marginalized** 48:15
**Marsh** 55:4,6
**masks** 50:11
**material** 37:22
**mayor** 49:17 52:10,12
**meaning** 8:20
**means** 8:14 17:12
**measuring** 48:1
**media** 16:3,7 26:11 43:15 52:1, 5
**medical** 43:16
**meeting** 26:9
**member** 38:21,22 45:5,6 56:2,3
**Members** 6:1 9:8, 11 31:17,20 55:8, 11
**Memphis** 15:17 18:17 26:15 46:8, 9
**men** 54:15
**mentioned** 12:25 13:11 46:19
**met** 50:25
**Metro** 6:12
**migrant** 51:19
**migrants** 50:8 51:4
**mirror** 51:11
**mirrors** 51:5
**mis-** 20:4
**misbehaving** 11:4
**misconduct** 10:6 12:11,14 19:9,21 20:4
**misconduct's** 20:1
**misdemeanor** 6:6,17,23 7:4,24 8:8,13 15:11 16:17 17:2 19:25 30:15,19,21,23
**misdemeanors** 8:17 30:17 31:2 33:18
**Mississippi** 15:23 18:2 26:12
**moment** 47:2
**money** 50:25
**monuments** 51:19
**motion** 9:1,3 27:12,13 30:3 38:14,16 39:5 44:11 45:18,20 56:10
**move** 5:20 12:1 14:12 29:25 31:6 36:15 40:23 41:12 42:2 44:10,22
**moved** 30:5
**moves** 31:10 41:5,15 44:14
**multiple** 52:15
**murder** 46:19
**Muslim** 52:16 53:11

**N**

**NAACP** 52:16
**named** 44:5
**narrow** 35:1
**Nashville** 37:6,8, 16 49:17 52:10
**nationalism** 55:1
**nationalist** 49:19 51:6,13,24 52:6 53:22,24
**nay** 9:10,11 31:19, 20 38:20
**nays** 38:25 45:9 55:20 56:5
**Nazis** 54:6,9,12
**necessarily** 11:16
**neck** 11:25 12:3
**needed** 44:1
**negative** 48:16
**neighborhood** 37:22
**neo-nazi** 37:8 50:2
**neo-nazis** 51:1, 24
**neutral** 18:13
**noes** 28:19
**notice** 36:15
**Number** 5:15 24:15 29:18,23 30:8 31:10 32:4 41:21,22 42:4 44:15 45:3,11
**numerous** 43:19

**O**

**O'CONNELL** 52:12
**objection** 39:5 41:8 42:4 44:25 55:8,11,13 56:10
**observational** 8:21
**observers** 43:16

observing 9:24
obstruct 38:8
occasions 43:19
October 50:3
offense 21:1 37:24
offenses 16:17 40:17
offered 49:17
officer 7:11 8:12, 15,20,21 10:6,7,8, 10,15 11:4,24 12:2,5 19:22 30:21 32:9 33:6 35:5,7,13 36:7,14
officer's 15:11 16:19
officers 11:20 15:10 20:2 31:3 34:14 36:20 46:2, 7,11,13 47:13,25
official 35:6
officials 43:22 46:23
Oliver 36:23,24 37:4,19,20
one's 6:4
ongoing 7:8 21:5 35:3
opens 12:11
operating 42:19
opine 20:12
opposed 9:9 11:2 31:19 38:20 45:4 52:18 55:16 56:1
order 44:1
ordered 30:22 41:8
originate 13:2
overcome 22:16
overpass 8:9
overreach 46:24
overreaching 47:5 48:4

P

pain 48:14
paper 6:8
part 12:8
partner 11:20
partnership 18:16
party 51:15
pass 16:6 17:20, 21
passage 41:12,15
passed 6:13 39:5 56:9
past 37:6
patrol 17:23
PEACE 49:23
Pearson 45:22,23 47:24
people 8:1,6 10:18 15:17,19,22 16:2,8 17:8 18:2,4 26:11 45:25 46:12,16,17,20 47:4,6,15,18 48:2, 8,15 51:18 53:6,7, 8,12
percent 53:24
perfectly 47:14
performing 36:8, 20
period 43:13
permission 32:19
person 19:24 20:14 30:23 34:17 36:11,13 54:16
personnel 43:16
pertaining 5:10 24:11 29:12 40:12
phone 7:15 10:19
phonetic 8:25
photograph 10:5
physically 33:23
piece 6:8 37:16 38:6
placing 30:15
playing 51:2
pocket 6:9
Pody 5:9,13,25 10:13 12:23 14:7, 8 22:4,8,24 23:3 24:10,14,21 27:7, 9,15 28:21 29:11, 18,20,21,24 30:4 31:23,24 33:21,22 34:21,22 35:10,11 36:17,18 37:14,15 38:1,2,13,14,16
point 7:12 12:15 19:7 21:16 26:14 36:6 43:8 48:13, 14
pointed 19:4 22:13
poisoned 52:23
police 6:24 7:11 8:15 10:6 11:4,19, 22 12:11,13 15:20,24 18:17 19:9 26:15 36:14 42:17,19,24 43:11,17,22 46:9, 10,13
policies 50:2,9 51:5 52:3
policing 35:8
policy 51:11
poor 47:18
portion 47:21
pose 19:3
positions 48:8
potential 19:14
potentially 19:8
power 42:17 46:1, 3,15 48:9,21
powers 31:1
practice 8:23
practiced 48:4
practices 47:17 48:8
preclude 36:13
presence 8:14 15:12 16:19 17:3
present 56:5
press 42:15,18
pretty 19:3 21:12
prevails 55:22
prevent 10:4 19:8 42:18 51:22
prevents 46:20
previous 12:25 44:22,24 55:7,10, 14,22
privilege 48:14
Pro 55:4
probable 31:2
problem 15:16 19:14
prohibit 10:11
prohibition 9:24 20:22
prohibits 20:10
proper 25:3 30:3 32:18
Properly 31:10 41:7,17 44:16
property 8:6
prosecuted 11:5
protect 36:19 43:15 47:9 51:18, 19
protecting 48:9, 10
protection 48:24
protections 46:16

**protest** 44:4
**protesters** 19:6
**protests** 32:8
**Proud** 50:4
**provided** 8:18
**provision** 42:14 44:11
**provisions** 43:15
**public** 7:9 21:2,6 33:4 35:4,16 42:18 43:22
**purposes** 18:3
**pushed** 51:15
**put** 5:23 7:10 9:6 16:3 24:14,16 26:14 54:11
**putting** 46:21

**Q**

**question** 10:13 14:24 16:5 17:19 18:21 19:2,3,12, 18 20:14 21:9,17 24:17,18,22,25 25:14,17 26:9 44:22,24 49:22 55:7,10,15,22
**questions** 5:24 9:16,20 14:19 21:22 22:3,5 25:8 26:25 27:5 33:8 34:13 37:1,5 38:11 42:22 43:7

**R**

**racial** 50:8
**racism** 54:4,17,25
**racist** 53:22,24 54:4,25
**radar** 13:16
**radius** 10:1 11:6
**raised** 50:25
**reaching** 10:19, 20
**read** 20:21
**ready** 31:14 38:12
**real** 6:1 52:21
**reality** 47:5 48:21 50:18,24 51:2,12, 25 53:15
**realize** 54:2
**reason** 26:15 51:12
**reasonable** 8:20
**received** 39:4 56:8
**recite** 13:7
**recognized** 5:13 15:5 16:13 17:5 18:10,12 19:20 20:6,17 24:20 25:10,22 26:6,19 29:23 31:23 33:10 40:21 41:24 42:10 44:19 45:16 54:23 55:5
**reconsider** 39:6 56:10
**record** 19:9 20:3, 24 21:13 46:13,18
**recording** 9:25 12:2 20:10,23 44:4
**recordings** 48:23
**refer** 15:14,21
**regard** 42:22 43:8
**regular** 47:15
**rejected** 13:3
**related** 30:16 46:8
**relative** 40:16
**remove** 42:13 44:11
**renew** 38:14 45:18
**renews** 38:16 45:20
**repeal** 13:6
**repealed** 13:9
**rephrase** 19:18
**Representative** 40:11,15,20,22 41:1,4,10,14,23, 25 42:3,7,9,10,11 43:1,2,5,6 44:13, 14,20,23 45:10, 15,17,19,22,23 47:24 49:4,6,11, 12,13,20,21,25 50:6,13,15,21,22, 23 51:10 52:20 53:16,18,20 54:19,22,24 55:2, 6,9,12,21 56:7
**representing** 51:3
**republic** 47:1
**Republican** 52:13
**request** 13:16 14:3
**requested** 47:23
**require** 46:10,11
**required** 21:15
**requirement** 20:24
**respect** 9:21
**respond** 37:11 53:15
**response** 28:3 49:24 50:10
**responsibility** 46:6 47:8 50:1,6, 12
**rest** 54:17
**restrict** 52:11
**retroactively** 44:9
**review** 16:7 46:5
**revive** 13:6
**revived** 13:9
**rhetoric** 50:1 51:5 52:7
**rights** 6:11 30:17 38:9 42:16 43:20 47:6,9 48:3,10 52:11,15
**rings** 38:19 45:3 55:15,25
**rise** 49:18
**River** 15:23 18:2 26:12
**Roberts** 5:21 11:11 12:21,22 14:10,15,18 24:18,22 28:2,3
**roll** 22:5,20,23,24 27:17
**rolled** 22:19
**room** 11:19
**Rose** 28:4,5
**routes** 16:10 18:5
**ruled** 43:20
**rules** 34:13

**S**

**safer** 52:19
**safety** 7:9 14:24 15:1 16:14,16 17:6,13,20,23 18:7,11 19:2,11 20:7 21:3,6 25:14, 18,20,24 26:1,20 35:4
**SAITH** 56:12
**scene** 7:8 21:4
**school** 25:2
**schools** 51:22
**screen** 13:16
**seat** 8:3 32:6
**seats** 8:4 32:7
**seconded** 5:20 31:11 41:7,17 44:16

**Secretary** 27:17, 18,20,23 28:1,4,6, 9,12,15,18

**Section** 6:5,14 7:4,24 8:7 9:23 11:17 13:1,13 14:5 15:8

**sections** 13:20

**Senate** 5:2,7,8,13 24:3,8,9,16 29:4, 9,11,17,18,25 30:4,5,9 38:17 39:3 40:9,10,18, 24 41:6,12,15,21 55:24 56:8

**Senator** 5:9,12, 19,21,25 9:2,4,9, 12,18,19 10:13 11:9,11,12,14,15 12:19,21,22,23 14:6,8,10,11,15, 17,18,20,22,25 15:4,6 16:12,20, 22 17:4,11,15,17 18:9,19,21,22,24 19:1,4,17,19,21 20:5,13,16 21:7,8, 10,20 22:1,4,8,22, 24 23:1,3,4 24:10, 13,18,21,22 25:7, 10,11,15,17,19 26:2,5,7,18,22,24 27:4,7,9,11,15,16, 18,19,21,22,24,25 28:2,3,4,5,7,8,10, 11,13,14,17,20,21 29:11,15,18,19, 21,22,24 30:2,4, 10,12 31:9,18,21, 23,24 33:9,11,13, 15,20,22 34:1,3,5, 7,20,22,23,25 35:9,11,20,21,22, 24 36:1,3,5,16,18, 22,24 37:2,4,13, 15,18,20,25 38:2, 10,13,14,15 39:3

**sentence** 13:12 14:4

**separate** 13:21

**serves** 46:9

**Services** 20:19, 20

**serving** 48:10

**session** 15:2,3 18:25 21:25 22:2 23:6 25:21,23 27:2,3 28:22 29:4, 9 39:7 40:4 56:11

**SEXTON** 40:15, 20 41:1,4,14,23 42:3,9 43:1 44:13, 23 45:10,15,19 49:4,11 50:13,21 53:18 54:19 55:2, 9,12,21 56:7

**shaking** 17:9,12

**shame** 52:12,13

**shamefully** 49:16 51:16

**shepherding** 34:9

**shields** 12:12

**shine** 47:16

**shown** 33:24

**sic** 8:11,24 29:23 53:2

**side** 19:7 53:6

**signs** 8:8 25:1,4 30:15

**silence** 47:3 48:24

**silencing** 48:22

**similar** 6:12 22:14

**single** 54:2,15

**sir** 26:21 49:10,25 50:9 51:8

**situation** 6:12 7:16 36:10,11,13, 14

**size** 21:12

**slow** 6:1

**social** 16:3,7 26:11

**Socialists** 54:6, 14

**solution** 49:18,23 53:14

**solved** 24:18

**somebody's** 6:18

**someone's** 46:3

**speak** 19:13 53:25 54:13

**Speaker** 5:17 9:1 29:17,24,25 30:13 32:21 33:3,11 34:3,7 35:22 36:1, 5,24 37:20 40:15, 18,20,23 41:1,4, 11,14,21,23 42:1, 3,8,9,12 43:1 44:13,18,21,23 45:10,13,15,18, 19,24 49:4,11 50:13,21 53:18 54:19 55:2,4,7,9, 12,21 56:7

**SPEAKERS** 14:13

**specific** 8:21 20:22

**specifically** 7:7 8:6 10:16 22:11 36:9

**speech** 49:8

**spinouts** 15:18 18:4

**spoken** 49:20

**sponsor** 9:17,20, 22 19:13 25:8 27:5 31:7 33:12, 13 34:4,5 35:23 36:2,3,25 37:2 45:25 49:15

**sponsor's** 34:8

**sponsored** 5:9 24:10 29:11 40:11

**stand** 7:13,17 33:2 54:4,5,17

**standard** 46:5

**standing** 11:20

**start** 48:2

**started** 27:13

**state** 15:25 16:6, 10 17:23 18:5 47:7 49:24 52:22 54:18

**statement** 12:24 43:13

**States** 8:24

**statute** 20:21

**stay** 10:8,23 11:18

**step** 6:2 19:23 20:2,3

**Stevens** 28:7,8 29:15,19,22 30:2, 10 31:9,18,21 33:9,13,20 34:1,5, 20,23 35:9,20,24 36:3,16,22 37:2, 13,18,25 38:10,15 39:3

**stood** 50:3,25

**stop** 7:7,14 10:22 18:3 21:2,4 30:22 35:17 49:24

**stopped** 6:19 7:2

**stopping** 48:23

**stops** 35:2

**street** 7:20 32:23

**streets** 46:21

**Stroecker** 15:9 16:14,15 17:6,13 18:11 19:11 20:7, 17 25:24 26:20

**Stroker** 25:25

**structured** 22:16

**structures** 30:16

**struggling** 48:16

**students** 51:22

**stuff** 50:18

**subject** 13:5,13, 19

**substance** 13:8

**substitute** 40:23 41:2,5
**suited** 54:8
**summer** 37:7
**support** 48:25 49:1,3
**supports** 17:21
**supposed** 32:7 48:9,10
**supremacist** 52:23
**Supreme** 8:24
**suspicion** 8:20

**T**

**table** 39:6
**tabled** 56:10
**taking** 44:7
**talking** 6:4
**tape** 7:11
**targeting** 46:18 50:5
**Taylor** 9:4 14:20, 22 15:6 16:21,22 17:17 18:19 19:4 25:10,11,17 26:2, 7,22 28:10,11 33:10,11,15
**team** 25:3
**technical** 47:20
**telling** 11:25 35:16
**tells** 19:23
**Temp** 55:4
**tendency** 13:10
**Tennesseans** 52:15 53:9,10,11, 12 54:3
**Tennessee** 5:2,8 24:3,9 29:5,10 40:5,10 50:3,7 51:13,17,25
**terror** 52:6
**terrorize** 50:11
**terrorized** 51:1,4
**terrorizing** 15:19 18:4
**That'd** 23:1
**thing** 16:2 32:9, 16,19 48:20
**things** 6:3 32:3 34:11 47:14
**thinking** 36:10
**THP** 26:10,16
**threat** 7:9 21:6 35:4
**throw** 6:9
**thrown** 44:9
**time** 15:19,25 48:7 53:21 54:1,2
**timely** 42:8
**title** 13:6,8
**today** 14:9
**told** 53:4
**tool** 18:8 19:6
**tools** 18:17
**top** 33:6
**traffic** 7:7 10:22 21:2,4 35:2
**traffic's** 16:1
**transcript** 47:23
**transcription** 47:22
**transgender** 53:9
**transparency** 44:2
**transport** 32:5
**transporting** 7:25 8:6 30:23
**trespassing** 6:6 30:18
**Tribe** 53:2
**troopers** 15:25 16:7,10
**troubling** 47:7
**truck** 7:25 8:2,3 30:24 32:6 37:9
**true** 15:21 19:10 47:15 54:7
**truth** 53:4
**Tuesday** 22:7 23:2
**type** 37:8 46:24
**types** 37:12

**U**

**U-HAUL** 37:9
**ultimately** 46:2
**unable** 16:24
**unauthorized** 8:8 30:15
**unchecked** 42:17
**unconstitutional** 43:24
**understand** 11:17 12:7 33:19 49:15
**understanding** 17:7
**undocumented** 51:21 53:10
**UNIDENTIFIED** 5:17 9:1 14:13
**uniform** 54:11,15
**unintended** 12:16 48:17
**United** 8:24
**unjust** 47:16 48:8
**unload** 32:8
**upheld** 8:23 43:20
**utilize** 18:17

**V**

**verse** 8:24
**video** 8:18 10:10, 12 11:25 26:11 33:18,24 44:5,8 47:21,22
**videoing** 7:15
**videotape** 10:5
**view** 48:22
**violation** 10:3
**violence** 52:23
**voices** 48:23
**vote** 13:24 14:15, 18 27:8,10,14 31:14 38:12,18, 20,23,24 45:3,4,7, 8 51:18 55:15,16, 18,19,25 56:1,3,4
**voted** 38:21 45:5 55:17 56:2,6
**Votes** 27:20,23 28:1,6,9,12,15,18
**voting** 45:1 55:23

**W**

**walk** 32:1
**walking** 7:19 32:23
**wanted** 11:12 15:8 26:13
**warrantless** 31:1
**watching** 43:17
**weakening** 46:16
**weapon** 10:20
**week** 24:14,16 27:14
**welcoming** 50:2, 7 53:2,3
**white** 28:13,14 49:18 51:5,13,23 52:5,23 53:21 54:16,25

**William** 50:6 51:9
**withdraw** 42:2
**withdrawn** 42:4
**witnessed** 10:24
**witnessing** 7:14
**woman** 44:4,5
**women** 54:15
**worded** 22:16
**words** 54:10
**work** 22:6 35:18
**world** 54:14
**wrong** 17:10 48:22 52:9

Y

**Yarbro** 34:2,3,7, 24,25 35:21,22
**yards** 37:23
**yell** 32:25
**yellow** 7:10
**yield** 31:7 33:12 34:4 36:2,25
**yields** 33:14 34:6 36:4 37:3
**You-all** 54:20
**young** 50:24

Z

**Zachary** 44:18,20