**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

HUNTER DEMSTER *et al.*,

      *Plaintiffs*,

v.

TODD BLANCHE, *in his official capacity as Acting Attorney General of the United States, et al.*,

      *Defendants*.

Case No. 26–cv–02546

**PLAINTIFFS' REPLY TO FEDERAL DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ........................................................................................................1

ARGUMENT ..............................................................................................................1

    I.   Plaintiffs Have Standing for Injunctive Relief...............................................1

        A.  Plaintiffs' Repeated and Ongoing Experiences of Retaliation Over
            Many Months Establishes that Their Injuries Are Likely to Recur ..................2

        B.  Defendants' Continuing Policy of Identifying Peaceful Observers as
            Threats to Law Enforcement Confirms That Plaintiffs' Injuries Are
            Likely to Recur .............................................................................................4

    II.  Plaintiffs Are Likely to Succeed on their Retaliation Claim .........................6

        A.  Plaintiffs' Observation and Recording of Task Force Operations in
            Public is Protected First Amendment Activity ...............................................7

        B.  Task Force Agents' Actions Chill the Recording of their Operations...............8

        C.  Defendants' Policy of Treating the Recording of Law Enforcement
            Operations as a Threat Causes Task Force Agents to Retaliate Against
            Plaintiffs......................................................................................................10

    III. The Proposed Preliminary Injunction is Specific and Workable................12

## TABLE OF AUTHORITIES

**CASES**

*ACLU of Illinois v. Alvarez*,
    679 F.3d 583 (7th Cir. 2012) ................................................................................ 7

*Alsaada v. City of Columbus*,
    536 F. Supp. 3d 216 (S.D. Ohio 2021) ................................................................ 3

*Animal Legal Defense Fund v. Wasden*,
    878 F.3d 1184 (9th Cir. 2018) ............................................................................. 7

*Beaver v. Macomb County*,
    2025 WL 975468 (E.D. Mich. Mar. 31, 2025) .................................................... 8

*Broska v. Henderson*,
    70 Fed. App'x 262 (6th Cir. 2003) ...................................................................... 8

*Brown v. Plata*,
    563 U.S. 493 (2011) ........................................................................................... 15

*Budget Charters, Inc. v. Pitts*,
    2018 WL 1745780 (M.D. Tenn. Apr. 11, 2018) ................................................. 2

*Chicago Headline Club v. Noem*,
    168 F.4th 1033 (7th Cir. 2026) .......................................................................... 15

*Christian Healthcare Centers, Inc. v. Nessel*,
    117 F.4th 826 (6th Cir. 2024) ............................................................................. 4

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ............................................................................................... 3

*Colten v. Kentucky*,
    407 U.S. 104 (1972) ......................................................................................... 7, 8

*Dickinson v. Trump*,
    174 F.4th 634 (9th Cir. 2026) ........................................................................... 6, 8

*E.E.O.C. v. Wooster Brush Co. Employees Relief Association*,
    727 F.2d 566 (6th Cir. 1984) ............................................................................. 13

*Electrical Workers Pension Trust Fund of Local Union # 58, IBEW v. Gary's Electric
    Service Co.*,
    340 F.3d 373 (6th Cir. 2003) ............................................................................. 13

*Franklin v. Franklin County*,
    115 F.4th 461 (6th Cir. 2024) ............................................................................. 3

*Gascho v. Global Fitness Holdings, LLC,*
    875 F.3d 795 (6th. Cir. 2017) ................................................................. 13

*Grendell v. Ohio Sup. Ct.,*
    252 F.3d 828 (6th Cir. 2001) ................................................................. 10

*Hays v. Jefferson County,*
    668 F.2d 869 (6th Cir. 1982) ................................................................. 15

*Hils v. Davis,*
    52 F.4th 997 (6th Cir. 2022) ................................................................... 7

*Howe v. City of Akron,*
    801 F.3d 718 (6th Cir. 2015) ................................................................. 13

*In re Blasingame,*
    986 F.3d 633 (6th Cir. 2021) ................................................................... 9

*Jackson v. City of Cleveland,*
    925 F.3d 793 (6th Cir. 2019) ................................................................... 5

*James B. Oswald Company v. Neate,*
    98. F.4th 666 (6th Cir. 2024) ................................................................. 14

*Joseph Burstyn, Inc. v. Wilson,*
    343 U.S. 495 (1952) ................................................................................ 7

*L.A. Press Club v. Noem,*
    171 F.4th 1179 (9th Cir. 2026) ........................................................ 5, 10

*L.A. Press Club v. Noem,*
    No. 2:25-cv-05563 (C.D. Cal. June 25, 2026) ....................................... 6

*Leach v. Shelby County Sheriff,*
    891 F.2d 1241 (6th Cir. 1989) ................................................................. 2

*Lipman v. Budish,*
    974 F.3d 726 (6th Cir. 2020) ................................................................... 2

*Lozman v. City of Riviera Beach,*
    585 U.S. 87 (2018) ................................................................................ 10

*McGlone v. Bell,*
    681 F.3d 718 (6th Cir. 2012) ................................................................... 4

*Michigan Department of State Police v. Sitz,*
    496 U.S. 444 (1990) .............................................................................. 15

iii

*Moltan Co. v. Eagle-Picher Industry, Inc.*,
  55 F.3d 1171 (6th Cir. 1995) ................................................................................ 16

*N.L.R.B. v. Cincinnati Bronze, Inc.*,
  829 F.2d 585 (6th Cir. 1987) ................................................................................ 13

*Nieves v. Bartlett*,
  587 U.S. 391 (2019) ...................................................................................... 10, 12

*O'Shea v. Littleton*,
  414 U.S. 488 (1974) .............................................................................................. 4

*Pembaur v. City of Cincinnati*,
  475 U.S. 469 (1986) .............................................................................................. 5

*Perez v. Ohio Bell Telephone Co.*,
   655 Fed. App'x. 404 (6th Cir. 2016) .................................................................. 14

*Perkins v. Township of Clayton*,
  411 F. App'x. 810 (6th Cir. 2011) ........................................................................ 9

*Project Veritas Action Fund v. Rollins*,
  982 F.3d 813 (1st Cir. 2020) ................................................................................. 7

*RGIS, LLC v. Gerdes*,
  2020 WL 409657 (E.D. Mich. Jan. 24, 2020) .................................................... 16

*Richards v. Perttu*,
  96 F.4th 911 (6th Cir. 2024) ............................................................................. 9, 10

*Rizzo v. Goode*,
  423 U.S. 362 (1976) ............................................................................................ 15

*Rounds v. Clements*,
  495 F. App'x 938 (10th Cir. 2012) ....................................................................... 5

*Rudd v. City of Norton Shores*,
  977 F.3d 503 (6th Cir. 2020) ................................................................................ 9

*Ryburn v. Huff*,
  565 U.S. 469 (2012) ............................................................................................ 16

*Shaw v. Smith*,
  166 F.4th 61 (10th Cir. 2026) ............................................................................... 3

*Simpkins v. Boyd County Fiscal Court*,
  2022 WL 17748619 (6th Cir. 2022) ..................................................................... 4

*Spann v. Hannah*,
   2020 WL 8020457 (6th Cir. Sep. 10, 2020) ............................................................... 5

*Thaddeus-X v. Blatter*,
   175 F.3d 378 (6th Cir. 1999) ..................................................................................... 9

*Turner v. Lieutenant Driver*,
   848 F.3d 678 (5th Cir. 2017) ..................................................................................... 7

*Union Home Mortgage Corporation v. Cromer*,
   31 F.4th 356 (6th Cir. 2022) .................................................................................... 12

*United States v. Alvarez*,
   567 U.S. 709 (2012) .................................................................................................. 15

*Vereecke v. Huron Valley School District*,
   609 F.3d 392 (6th Cir. 2010) ..................................................................................... 8

## OTHER AUTHORITIES

ACLU, *Jessica Chodor – October 28, 2025 (Arrest)* (YouTube, May 12, 2026) ....................... 12

ACLU, *Jessica Chodor – October 28, 2025 (Bodycam footage)* (YouTube, May 12,
   2026) ......................................................................................................................... 12

## INTRODUCTION

Federal Defendants' ("Defendants'") opposition to Plaintiffs' preliminary injunction motion distorts the law and mischaracterizes the extensive evidentiary record. The Court should grant Plaintiffs' motion for three reasons.[1] *First*, Plaintiffs have standing because Defendants' policy, pattern, and practice of retaliating against people, including Plaintiffs, for recording law enforcement operations is ongoing and Plaintiffs' uncontested evidence of repeated and ongoing incidents of retaliation establishes a significant likelihood of recurring injury. *Second*, Plaintiffs are likely to succeed on their retaliation claims because the implementation of that policy, pattern, and practice has chilled the exercise of Plaintiffs' right to observe and record law enforcement in public. *Third*, the proposed preliminary injunction is workable and narrowly limited to restraining unlawful actions against Plaintiffs.

## ARGUMENT

## I. PLAINTIFFS HAVE STANDING FOR INJUNCTIVE RELIEF

Defendants' standing argument rests solely on their assertion that Plaintiffs' uncontested testimony and documentary evidence, establishing dozens of instances of retaliation, are insufficient to demonstrate a reasonable likelihood of recurring injury. Defendants are wrong. Defendants do not, and cannot, contest that Plaintiffs either continue to engage in peaceful observation of Task Force agents or would do so but for the chilling effects of Defendants' retaliation. *See* Dkt. 16-49 ¶¶ 144–48; Dkt. 16-50 ¶¶ 60, 62; Dkt. 16-51 ¶¶ 117, 121; Dkt. 16-52 ¶¶ 77–80. Plaintiffs have demonstrated that their injuries are likely to recur—indeed, they *are* recurring—based on both Plaintiffs' repeated experiences of retaliation and the ongoing federal

---

[1] Plaintiffs incorporate by reference their Reply to State Defendants. Undefined terms are as defined in Plaintiffs' opening motion. *See* Dkt. 16-2 ("Mot."). Unless otherwise indicated, internal citations are omitted.

policy identifying peaceful observers as threats to law enforcement. Plaintiffs thus have standing to obtain injunctive relief.

> ### A. Plaintiffs' Repeated and Ongoing Experiences of Retaliation Over Many Months Establishes that Their Injuries Are Likely to Recur.

Plaintiffs have demonstrated a pattern and practice of retaliatory behavior by Defendants, and thus a reasonable likelihood of recurring injury. Plaintiffs' declarations evince a consistent pattern: Plaintiffs observe and/or film Task Force activity and Defendants respond with a variety of retaliatory behaviors, ranging from shining bright lights at Plaintiffs' cameras to prevent them from recording, to swerving or driving at Plaintiffs, to threatening arrest. *See* Mot. 4–5, 8 (citing declarations). Defendants do not dispute that this behavior has occurred. Instead, they assert that it does not establish a likelihood of recurring injury. Dkt. 34 ("Opp.") 6–10. That is wrong as a matter of law.

Plaintiffs' numerous, consistent, and ongoing experiences of retaliation demonstrate that they are likely to incur the same retaliatory injury in the future. *Compare* Reply Decl. of H. Demster ¶¶ 4–7 ("Demster Reply Decl."), *and* Mot. 4–8 (dozens of retaliatory incidents), *with Lipman v. Budish*, 974 F.3d 726, 748 (6th Cir. 2020) ("six different instances" was "enough to draw the reasonable inference that [a] custom was widespread … and known to policymakers within the county"); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1247–48 (6th Cir. 1989) (fourteen instances of mistreatment sufficed to establish policy or custom); *and Budget Charters, Inc. v. Pitts*, 2018 WL 1745780, at *6 (M.D. Tenn. Apr. 11, 2018) (standing for injunction based on complaint alleging "series" of past events). Defendants argue that future injury is unlikely because the Task Force has made "over 10,000 arrests and countless traffic stops" since September 2025 and Plaintiffs were present "at only a handful." Opp. 9, 12. This is irrelevant. Plaintiffs' testimony demonstrates a consistent pattern of retaliation when Plaintiffs exercise their First

2

Amendment rights. "[T]he possibility of recurring injury ceases to be speculative when actual repeated incidents are documented." *Alsaada v. City of Columbus*, 536 F. Supp. 3d 216, 256 (S.D. Ohio 2021) (alteration in original).

This case is readily distinguishable from *City of Los Angeles v. Lyons*, where the Supreme Court held that being placed in a chokehold by police on *one* occasion did not suffice to show that the plaintiff was likely to suffer future injury. 461 U.S. 95, 107–10 (1983). The plaintiff in *Lyons* was pulled over with probable cause and would not suffer a similar injury in the future unless he committed another traffic offense, which the court deemed speculative. *See id.* at 105–08. But this case involves Plaintiffs who *do* intend to engage in the *lawful* conduct that triggers the misconduct at issue here. *See supra* p. 1. Furthermore, even *Lyons* recognized that a single instance of misconduct can provide standing for injunctive relief if, as here, the plaintiff demonstrates that senior officials "ordered or authorized [agents] to act in such a manner." *See* 461 U.S. at 106. Indeed, "*Lyons* did not disrupt the Supreme Court's consistent understanding that '[w]here … there is a persistent pattern of police misconduct, injunctive relief is appropriate.'" *Shaw v. Smith*, 166 F.4th 61, 77 (10th Cir. 2026) (alteration in original).

Defendants characterize Plaintiffs' injuries as "factually distinct" and arising from "ad hoc, in the field, and proximity-dependent occurrences," Opp. 2, 9–10. But Defendants ignore the common thread running through Plaintiffs' testimony—they were all subject to retaliation by Task Force agents for exercising their First Amendment rights to gather information about and record the Task Force's public operations. Prior incidents of wrongdoing that violate the same constitutional rights in the same way are sufficient to establish a pattern and practice. *See Franklin v. Franklin Cnty.*, 115 F.4th 461, 472 (6th Cir. 2024) ("The alleged pattern of similar unconstitutional conduct need not be identical, or even 'almost identical' to that which a plaintiff

3

alleges occurred in her case."); *Simpkins v. Boyd Cnty. Fiscal Ct.*, 2022 WL 17748619, at \*12 (6th Cir. 2022) ("No caselaw within our circuit requires the production of evidence of almost identical conduct" to establish an unlawful policy or custom).

Finally, Defendants repeatedly assert that Plaintiffs' injuries are stale. But that is not true. As one example, Plaintiff Hunter Demster testified about more than twenty retaliatory incidents occurring every month between October 2025 and May 2026, shortly before this action was filed. *See generally* Dkt. 16-49; *see e.g.*, *Christian Healthcare Ctrs., Inc. v. Nessel*, 117 F.4th 826, 849 (6th Cir. 2024) ("Standing … is to be determined as of the time the complaint is filed."). And Demster has continued to experience retaliatory incidents since the filing of this lawsuit, including physical intimidation and having Task Force agents photograph or film him in response to his filming their public activities. *See* Demster Reply Decl. ¶¶ 4–7. The record thus flatly contradicts Defendants' claim that Plaintiffs' injuries are solely in the past. Moreover, "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury." *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). Defendants have produced no evidence to suggest that the underlying policy of retaliation has changed or that the Task Force has changed its approach in a manner that would bring the pattern established in the record to an end.

**B. Defendants' Continuing Policy of Identifying Peaceful Observers as Threats to Law Enforcement Confirms That Plaintiffs' Injuries Are Likely to Recur.**

Defendants have repeatedly reaffirmed a federal policy defining information-gathering and recording activities as threatening to law enforcement officials. *See* Mot. 10–12. The fact of this federal policy further establishes a likelihood of Plaintiffs' injuries recurring. *See, e.g.*, *McGlone v. Bell*, 681 F.3d 718, 730–31 (6th Cir. 2012) (plaintiff's "intention to engage in expression regulated by … policy is sufficient [for standing because] … [t]he injury is actual … and will

4

imminently occur again if [plaintiff] violates the policy").[2]

Defendants incorrectly assert that Plaintiffs have failed to identify a "document, policy directive, or anything else" establishing the existence of a federal policy. Opp. 10–11. Plaintiffs need not identify a document or written policy directive; it is sufficient that they have shown that there were "formal rules or understandings—*often but not always committed to writing*—that [were] intended to, and [did], establish fixed plans of action to be followed under similar circumstances consistently and over time." *Jackson v. City of Cleveland*, 925 F.3d 793, 829 (6th Cir. 2019) (alterations in original) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986)). DHS leadership has issued multiple statements characterizing constitutionally protected activity as a threat to law enforcement, including labeling observers as "domestic terrorists," Dkt. 16-3 ¶ 17, describing "legal observers" as "imped[ing]" or "threaten[ing]" officers, *id.* ¶ 15, equating "videotaping [agents] where they're at when they're out on operations" with violence, *id.* ¶ 13, and stating that recording or following law enforcement "sure sounds like obstruction of justice," *id.* ¶ 14. None of those statements have been retracted or amended. Indeed, across the country, federal agents have consistently treated legal observation and recording as if it were a threat, further evincing the existence of this federal policy. *See* Mot. 12–13 (citing Exs. 7, 22–34).

Defendants respond that DHS instructs its agents to "respect[] activities protected by the First Amendment." Opp. 11. But Defendants' policy defines observing and recording as illegal behavior outside the protection of the First Amendment and thus instructs Task Force agents that

---

[2] To be clear, Plaintiffs are not required to prove the existence of a federal policy to establish Defendants' liability. *See Rounds v. Clements*, 495 F. App'x 938, 941 (10th Cir. 2012) (Gorsuch, J.) (*Ex parte Young* claims do not require a "policy or custom," whereas municipal liability claims under § 1983 do); *Spann v. Hannah*, 2020 WL 8020457, at *3 (6th Cir. Sep. 10, 2020) (same). Nor can Defendants "avoid potential liability by pointing to DHS policies . . . when their actions were inconsistent with those policies." *L.A. Press Club v. Noem*, 171 F.4th 1179, 1189 (9th Cir. 2026).

their actions toward Plaintiffs are not "retaliation." Indeed, Defendants' repeated assertions that Plaintiffs' legal and protected activities constitute obstruction, *see, e.g.*, Opp. 10–11, underscore this point and confirm Plaintiffs' need for injunctive relief. Defendants have produced no evidence to suggest that the illegal actions of Task Force agents are contrary to any aspect of Defendants' policy or training, leaving Plaintiffs' evidence that those actions are in fact *pursuant to* Defendants' policy uncontroverted. Moreover, Defendants' reliance on a 2019 DHS memorandum, Opp. 11, rings hollow in light of post-2025 statements and directives from senior officials that effectively repudiate it.

Defendants' reliance on *Dickinson v. Trump*, 174 F.4th 634, 643 (9th Cir. 2026), is misplaced. Opp. 11. In *Dickinson*, the Ninth Circuit found individual officers' use of crowd-control munitions did not show a policy of retaliation against protestors. *See id.* at 643–44. In contrast, the district court in *L.A. Press Club* recently found the plaintiffs had sufficiently established "the existence of a policy within DHS that treats the mere public recording of its agents as a threat that may be viewed as criminal in nature"—the same policy at issue here—based on "internal bulletins and statements by government officials" along with factual allegations about DHS agents' use of force. *See* Order Granting Class Certification, *L.A. Press Club v. Noem*, No. 2:25-cv-05563 (C.D. Cal. June 25, 2026), Dkt. No. 120 at 16.

## II.  PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR RETALIATION CLAIM

Defendants argue that Plaintiffs' First Amendment retaliation claims are unlikely to succeed. This is wrong for three reasons. *First*, the First Amendment protects the right to gather information about and record law enforcement conduct. *Second*, the adverse actions taken against Plaintiffs were objectively chilling, especially when considered as a whole. And *third*, the existence of a policy of retaliation, coupled with a pattern of adverse actions unrelated to purported safety or obstruction concerns, undermine Defendants' hypothesized alternative explanations for

6

those actions.

### A. Plaintiffs' Observation and Recording of Task Force Operations in Public is Protected First Amendment Activity.

The Sixth Circuit has recognized "a general First Amendment right to gather information in public settings." *Hils v. Davis*, 52 F.4th 997, 1002 (6th Cir. 2022).[3] The First, Fourth, Fifth, Eighth, Ninth, Tenth, and Eleventh Circuits have unanimously recognized that the First Amendment protects the right to record law enforcement officers performing their duties in public, as have several district courts in this Circuit. *See* Mot. 4 (collecting cases). Although the Sixth Circuit has not yet had occasion to consider the right to record, no federal court of appeals has rejected the right. And for good reason: the right to observe and record law enforcement activity in public spaces is a corollary of the broader right to gather information about such activities. *E.g.*, *Project Veritas Action Fund v. Rollins*, 982 F.3d 813, 831–33 (1st Cir. 2020) (collecting cases).[4]

Defendants invoke *Colten v. Kentucky*, 407 U.S. 104 (1972), to argue that Plaintiffs do not have a constitutional right "to observe, record, and gather information about law-enforcement operations." Opp. 15. But *Colten* does not address gathering information about and recording law enforcement. In that case, the Supreme Court upheld a conviction for disorderly conduct based on the state court's finding that the defendant was "not undertaking to exercise any constitutionally

---

[3] State Defendants argue *Hils* forecloses the existence of the right to record Plaintiffs assert in this case. Dkt. 39 at 14. Not so. In *Hils*, the Sixth Circuit held that plaintiff police officers did not have the right to record "internal interviews of them during a governmental investigation into alleged police misconduct" because such proceedings are not historically open to the public. 52 F.4th at 1001–03. The court contrasted this with situations in which the "government excludes the people from a space historically open to them." *Id.* at 1002. Here, Plaintiffs assert the right to record law enforcement activities in public places, like sidewalks, that are historically open to the public.

[4] Expression through film is protected by the First Amendment. *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501–02 (1952). And recording is a necessary part of the process to create films— much as the act of writing is essential to publishing books or newspapers. *Turner v. Lieutenant Driver*, 848 F.3d 678, 689 (5th Cir. 2017); *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1203 (9th Cir. 2018); *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 595–96 (7th Cir. 2012).

protected freedom" and "had no purpose other than to cause inconvenience and annoyance" when he refused to move his vehicle from the location of a traffic stop after being ordered to move at least five times. 407 U.S. at 106–07, 109. That conclusion turned on the defendant's *conduct* in refusing to get off the side of a particularly dangerous strip of highway and thereby posing "the risk of accident." *Id.* at 109. *Colten* does not stand for the proposition that merely observing police activity, or recording from a safe distance, is unprotected and thus has no application to this case.

For the same reason, Defendant's position that "there is no First Amendment right to criminally trespass, impede law enforcement efforts, [or] block traffic," Opp. 16 (quoting *Dickinson*, 174 F.4th at 647), is beside the point. Plaintiffs assert no such right, and nothing in the record indicates that Plaintiffs did any of those things while recording Task Force agents. Rather, Plaintiffs assert the right to do exactly what the undisputed factual record shows they did: peacefully gather information and record law enforcement officers in public.

### B. Task Force Agents' Actions Chill the Recording of their Operations.

Defendants present no evidence contradicting Plaintiffs' accounts of Task Force agents' extensive pattern of retaliatory actions. Instead, Defendants cherry-pick components of that pattern and argue that individual actions, in isolation, would not deter a reasonable person from continuing to exercise their constitutional rights. That is not responsive to Plaintiffs' claim that the cumulative effect of the Task Force agents' pattern of retaliatory actions chills Plaintiffs' exercise of their rights. The relevant inquiry is whether the government's course of conduct, considered "in the aggregate," would deter a person of ordinary firmness from engaging in protected activity—*not* whether each individual act, viewed in isolation, would independently chill the exercise of that person's rights. *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 399 (6th Cir. 2010); *Beaver v. Macomb Cnty.*, 2025 WL 975468, at *17 (E.D. Mich. Mar. 31, 2025) (analyzing "cumulative effect" of actions); *see also Broska v. Henderson*, 70 Fed. App'x 262, 269 (6th Cir. 2003) ("In

8

considering the totality of the circumstances, we are not to disaggregate the various retaliatory incidents that the plaintiff claims; this would inappropriately rob them of their cumulative effect."). The Court must consider the entire record, not only parts of it in isolation.

In the First Amendment retaliation context, conduct is adverse where it is "*capable of deterring a person of ordinary firmness*" from exercising his or her First Amendment rights. *Richards v. Perttu*, 96 F.4th 911, 918 (6th Cir. 2024) (emphasis in original).[5] Whether an action is adverse is an "objective inquiry." *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999). "[T]he deterrent effect of the adverse action need not be great in order to be actionable." *Hill v. Lappin*, 630 F.3d 468, 473 (6th Cir. 2010). Indeed, the standard exists to "weed out only inconsequential actions." *Thaddeus-X*, 175 F.3d at 398. The Sixth Circuit has stated that "[t]he standard is reduced even more" where "the plaintiff before the court" is "an ordinary citizen" and not a prisoner or a government employee. *Rudd v. City of Norton Shores*, 977 F.3d 503, 514 (6th Cir. 2020).

The Task Force's actions meet this standard, particularly when considered cumulatively. Plaintiffs submitted sworn declarations attesting that Task Force agents are engaging in an ongoing course of retaliatory conduct in which they have threatened, physically intimidated, followed, photographed, taunted, shined bright lights at, and stopped and questioned Plaintiffs without reasonable suspicion. *See* Mot. 4–5 (citing declarations). Plaintiff Chodor was tackled to the ground and falsely arrested for recording officers. *See id.* at 5. Plaintiffs' testimony is corroborated by video evidence. *See* Exhibits to Dkts. 16-49; 16-50; 16-51;16-52. Each Plaintiff's declaration indicates that he or she experiences fear, anxiety, and/or stress about continuing to record Task

---

[5] Defendants cite *Perkins v. Township of Clayton*, 411 F. App'x. 810, 814 (6th Cir. 2011), for the proposition that a plaintiff must "establish some relatively strong action" to demonstrate a chilling effect. Opp. 17. But because *Perkins* "is an unpublished decision … it is not binding authority." *In re Blasingame*, 986 F.3d 633, 637 n.2 (6th Cir. 2021).

Force agents in light of the adverse actions taken against them. Dkt. 16-49 ¶¶ 141–49; Dkt. 16-50 ¶¶ 54–62; Dkt. 16-51 ¶¶ 117–22; Dkt. 16-52 ¶¶ 74–80. These actions considered in the aggregate are capable of deterring an ordinary citizen from continuing to observe and record Task Force operations.[6]

### C. Defendants' Policy of Treating the Recording of Law Enforcement Operations as a Threat Causes Task Force Agents to Retaliate Against Plaintiffs.

Defendants assert that "the retaliation framework, with its focus on subjective causation, is a poor fit for cases[] like this … because applying the retaliation framework will often raise particularly difficult causation questions." Opp. 14–15. But Plaintiffs do not seek to establish liability solely based on the subjective motives of each individual Task Force officer during each encounter. Rather, Plaintiffs allege that supervisory officials have formulated and implemented an ongoing policy that leads to a pattern and practice of agents retaliating against everyday Americans who observe and record law enforcement operations. As the Supreme Court recognized in *Lozman v. City of Riviera Beach*, an official retaliatory policy can establish causation regardless of an individual officer's subjective intent in carrying out the retaliatory action. *See* 585 U.S. 87, 99–100 (2018).[7] Here, causation is established because the challenged actions were taken pursuant to a policy of retaliation, regardless of the subjective motivations of officers in every retaliatory encounter. Plaintiffs are likely to succeed in demonstrating that such a policy animated the adverse actions taken against them. *See supra* Section I.A.

Overlooking this point, Defendants insist that relief is unavailable because Plaintiffs failed

---

[6] This chilling of Plaintiffs' exercise of their First Amendment rights also "establishes continuing, present adverse effects [independently] sufficient to confer standing." *L.A. Press Club*, 171 F.4th at 1188; *see also Grendell v. Ohio Sup. Ct.*, 252 F.3d 828, 832 (6th Cir. 2001) (explaining that plaintiffs can establish standing for injunctive relief by showing "actual present harm").

[7] Contrary to Defendants' argument, *Nieves v. Bartlett* did not disturb the existing "motivating factor" standard outside the retaliatory arrest context. 587 U.S. 391, 398–99 (2019); *see Richards*, 96 F.4th at 919.

to show that Task Force agents possessed "subjective retaliatory intent." Opp. 18. But as discussed above, such a showing is not necessary where Defendants are acting pursuant to a policy of retaliation. And even looking at the individual level, retaliatory intent is the natural inference from Plaintiffs' evidence that Task Force agents are instructed to treat Plaintiffs as threats given how individual agents directly responded to Plaintiffs' peaceful recording and observing as if it was a threat. Moreover, despite having access to those agents, Defendants did not introduce any evidence concerning their subjective intent. Instead, Defendants hypothesize "obvious alternative explanation[s]" for the Task Force agents' actions, including to reduce the risk to officers, to stop interference with Task Force operations, or to address agents' apprehension of a clear and present danger or immediate threat to public safety. Opp. 18–19 (citations omitted).

These hypotheses cannot explain the conduct at issue here. The record of both Plaintiffs' and Task Force agents' actions is uncontroverted and nothing in the record establishes that Plaintiffs ever interfered with agents' operations, created risk to officers, or posed a threat to public safety. None of Defendants' hypothesized explanations could justify the instances of retaliation involving Task Force agents physically menacing Plaintiffs with their vehicles, Dkt. 16-49 ¶¶ 30–32, tailing Plaintiffs in their vehicles, Dkt. 16-51 ¶¶ 50, 69–71, 87–88, using threatening gestures toward Plaintiffs, Dkts. 16-49 ¶¶ 57–59; 16-51 ¶¶ 81–85, or sitting outside Plaintiffs' homes, Dkts. 16-49 ¶¶ 45–47, 50–51, 53–54, 130–35; 16-51 ¶¶ 89–93, 95–105. A Task Force agent miming shooting a gun at Plaintiff Halt, Dkt. 16-51 ¶¶ 81–84, cannot be explained by an intent to maintain public order. A Task Force agent swerving his car toward and nearly colliding with Plaintiff Demster, Dkt. 16-49 ¶¶ 30–32, cannot be explained by an intent to protect the safety of law enforcement officers. The Court cannot credit Defendants' "alternative explanations," particularly where Plaintiffs have put forth direct and circumstantial evidence of intent to retaliate. Mot. 7–9.

Finally, without introducing any evidence placing Plaintiff Chodor's account of her arrest into dispute, Defendants argue her claim is unlikely to succeed because there was probable cause to arrest her for "attempting to impede a law enforcement operation by breaching the perimeter established by agents." Opp. 21–23 (citing *Nieves v. Bartlett*, 587 U.S. 391, 404 (2019)). Not so. As Ms. Chodor's testimony and the corroborating videos establish, that is a blatant mischaracterization of the record. *See* Dkt. 16-50; Exs. A and C.[8] After Ms. Chodor arrived at the scene of a law enforcement operation with a phone in her hand to record the unfolding events, a trooper unlawfully ordered her to go back to her vehicle where she could not record the scene. *See id.* at ¶¶ 26–48, Exs. A and C. She then withdrew to a public sidewalk across the street from the scene she sought to record and verbally affirmed her intention to remain more than 25 feet away from the agents before the trooper tackled and falsely arrested her. *See id.* This evidence is fully consistent with the robust record showing Defendants' unconstitutional policy or practice of retaliating against individuals who gather information about or record Task Force operations.

## III. THE PROPOSED PRELIMINARY INJUNCTION IS SPECIFIC AND WORKABLE

Plaintiffs' proposed injunction "state[s] the reasons why it [would be] issued;" "state[s] its terms specifically;" and "describe[s] in reasonable detail ... the act or acts to be restrained." Fed. R. Civ. P. 65(d)(1)(A)–(C); *see also Union Home Mortgage Corp. v. Cromer*, 31 F.4th 356, 362 (6th Cir. 2022) (injunctions must be "couched in specific and unambiguous terms").

As an initial matter, Defendants do not dispute that certain provisions of the proposed order meet this standard, including the injunction against enforcement of the Halo Law. Instead, Defendants focus on the bullet-point list of eight specific actions Plaintiffs seek to enjoin "where

---

[8] The bodycam footage and the footage from Chodor's phone are both publicly available. ACLU, *Jessica Chodor – October 28, 2025 (Bodycam footage)* (YouTube, May 12, 2026), https://youtu.be/goDCot13rjM?si=Wew8WJXAHDyR0WDR; ACLU, *Jessica Chodor – October 28, 2025 (Arrest)* (YouTube, May 12, 2026), https://www.youtube.com/shorts/V8AvcoHXIik.

such actions are motivated in whole or in part by Plaintiffs gathering information about or recording Task Force agents performing their duties in public." Dkt. 16-1 at 1–2. Defendants ignore this limitation, which ensures that Task Force agents are free to engage in these actions whenever they are justified by legitimate law enforcement interests. Moreover, to successfully challenge any specific action, Plaintiffs would carry the "heavy" burden of demonstrating "by clear and convincing evidence" that Defendants "knowingly" retaliated against them in violation of a "specific order of the court." *Gascho v. Global Fitness Holdings, LLC*, 875 F.3d 795, 800 (6th. Cir. 2017). Defendants would also have an opportunity to demonstrate an inability to comply with any granted relief. *See Elec. Workers Pension Tr. Fund of Local Union # 58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003); *see also N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 589–90 (6th Cir. 1987). The limitations in the proposed order and this standard fully address Defendants' concern about "overbreadth," *see* Opp. 30–31, as well as their related concern that Task Force agents will be held in contempt for innocent mistakes, *id.* at 26, or that the injunction will unreasonably impair the normal functioning of law enforcement, *id.* at 29–30.

Both by requiring a showing of retaliatory purpose and by cabining the list of specific acts enjoined to a discrete list, the proposed order is tailored to the precise misconduct Plaintiffs' evidence establishes as a pattern of retaliation. Defendants' insistence that the injunction would do "no more than prohibit any and all conduct in contravention of already existing law," Opp. 27, is obviously wrong. The injunction describes specific conduct rather than merely enjoining "retaliation," and thus appropriately "limit[s] the scope of [any] injuncti[ve] [relief] to the conduct" [they want declared] unlawful." *Howe v. City of Akron*, 801 F.3d 718, 753 (6th Cir. 2015); *compare, e.g., E.E.O.C. v. Wooster Brush Co. Emps. Relief Ass'n*, 727 F.2d 566, 576 (6th Cir. 1984) (striking language enjoining defendants "from discriminating against women on the basis

13

of their gender" because it lacked reasonable detail). In any case, the Sixth Circuit maintains no "per se" rule against so-called "obey-the-law" injunctions. *Perez v. Ohio Bell Tel. Co.*, 655 Fed. App'x. 404, 412 (6th Cir. 2016).

Defendants focus on alleged vagueness in certain bullet points in the proposed order. Opp. 25–28. But those terms are not unreasonably vague. Plaintiffs specifically ask that the Court order agents to stop using threats and physical intimidation, including threatening retaliatory arrest, swerving vehicles at them; tailing, or stopping and questioning them for retaliatory purposes; sitting outside their homes with retaliatory purpose; shining lights in order to prevent recording; and using force, making arrests, or collecting information with retaliatory purpose. Dkt. 16-1 at 1–2. These are all specific acts described in unambiguous terms and directly linked to specific acts of Task Force agents. The injunction does not need to clarify "how close is too close" to be sitting outside Plaintiffs' homes, Opp. 26, when the requirement to show retaliatory purpose creates a workable standard for distinguishing intimidation from innocent parking. Defendants have not advanced any reasonable basis to conclude that Task Force agents will face "uncertainty and confusion" in complying with these terms.[9] *James B. Oswald Company v. Neate*, 98. F.4th 666, 677 (6th Cir. 2024).

Given its specificity and its grounding in the violation of law established by the record, the proposed order would be an appropriate exercise of judicial authority and would not "impermissibly infring[e] on principles of separation of powers." Opp. 28–29. Defendants vastly overstate the limits the law places on judicial authority to enjoin unlawful law enforcement practices. It is well-established that "[c]ourts may not allow constitutional violations to continue

---

[9] Prior to filing this brief, Plaintiffs asked Defendants to meet and confer regarding their concerns about scope of the proposed preliminary injunction. Defendants refused to do so.

simply because a remedy would involve intrusion into the realm of … administration." *Brown v. Plata*, 563 U.S. 493, 511 (2011). Using the First Amendment as a "defensive tool" when one's rights are being violated is entirely proper. *Contra* Opp. 30. Law enforcement actions that "suppress[] or restrict[] speech must be judged by the sometimes inconvenient principles of the First Amendment." *United States v. Alvarez*, 567 U.S. 709, 715 (2012).

Defendants rely on *Rizzo v. Goode*, 423 U.S. 362, 378 (1976), to argue "the scope of federal equity power" cannot "be extended to the fashioning of prophylactic procedures for a [government] agency designed to minimize this kind of [alleged] misconduct on the part of a handful of its employees." Opp. 29. But *Rizzo* describes a specific requirement to establish a causal connection between officer misconduct and the supervisory defendants charged with carrying out any prophylactic injunction to prevent future misconduct, not a general limitation on a court's equitable powers. Where, as here, there is causal relationship between the supervisory defendants and the acts of individual agents engaged in unconstitutional conduct, Mot. 9–14; *supra* Section II.C, injunctive relief is appropriate. *Hays v. Jefferson Cnty.*, 668 F.2d 869, 872 (6th Cir. 1982).

Defendants cite *Michigan Department of State Police v. Sitz*, 496 U.S. 444, 453 (1990), to argue courts are barred from deciding "which among *reasonable* alternative law enforcement techniques should be employed to deal with a serious public danger." Opp. 29 (emphasis added). This again ignores the proposed order's limitation restraining actions only when undertaken for unreasonable, retaliatory purposes, which leaves untouched any reasonable techniques. This also distinguishes the proposed order from the impermissible injunction in *Chicago Headline Club v. Noem* "enumerat[ing] and proscrib[ing] the use of" specific weapons and devices that may be components of reasonable use of force in certain circumstances. 168 F.4th 1033, 1037 (7th Cir. 2026).

15

Nor would the proposed order improperly intrude on the ability of law enforcement officers to operate in fast moving, uncertain environments. Opp. 30. The record shows that the retaliatory acts Plaintiffs seek to enjoin are either premeditated, *see* Dkt. 16-49 ¶¶ 45–47, 50–51, 53–54, 130–35 (sitting outside home); Dkt. 16-51 ¶¶ 89–93, 95–99, 100–05 (same), or occur in slow-moving operational environments characterized by overwhelming law enforcement command over the situation. *See* Reply Declaration of J. Pugel ¶ 9 (review of video exhibits "consistently reflect the presence of five to over twenty agents," concluding "[t]his is more than sufficient to maintain full situational awareness."); *cf. Ryburn v. Huff*, 565 U.S. 469, 477 (2012) (per curiam) (distinguishable qualified immunity analysis about "split second judgments"). Plaintiffs have never contested that they are required to follow agents' lawful commands; the requirement that Plaintiffs establish any challenged action was "motivated … by Plaintiffs gathering information about or recording Task Force agents performing their duties in public," Dkt. 16-1 at 1, ensures that Task Force agents subject to the preliminary injunction are free to reasonably respond to their environment and face no more burden on their ability to do so than the law already imposes. The Court should issue the requested preliminary injunction (without issuing a bond or staying it pending appeal).[10]

---

[10] Concerning the requested bond, the interests of justice dictate that the Court should waive the requirement for Plaintiffs to post a security for their requested relief. Fed. R. Civ. P. 65(c) gives the Court discretion to determine the amount of security required for a preliminary junction, or to waive the requirement entirely. *See Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995). The requested preliminary injunction here requires Defendants to end an unlawful practice, and there is minimal harm in enjoining them. *See id.* (upholding decision not to require bond "because of the strength of [the prevailing party's] case and the strong public interest involved"). Additionally, "[t]he party being enjoined has the burden of establishing the need for a bond and the required amount." *RGIS, LLC v. Gerdes*, 2020 WL 409657, at *1 (E.D. Mich. Jan. 24, 2020). Concerning the requested stay pending appeal, Plaintiffs' motion is premature. Fed R. Civ. P. 62(d) makes clear that courts may only "suspend, modify, restore, or grant" an injunction "*while an appeal is pending*." (emphasis added). While the Court should decline to rule on a stay, Plaintiffs request the opportunity to respond if the Court considers the issue.

Dated: July 29, 2026

Zee Scout (BPR# 042637)
Lucas Cameron-Vaughn (BPR# 036284)
ACLU FOUNDATION OF TENNESSEE
P.O. Box 120160
Nashville, Tennessee 37212
Tel: (615) 320-7260
zscout@aclu-tn.org
lucas@aclu-tn.org

Matthew Borden
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Tel: (415) 599-0210
borden@braunhagey.com

Marissa R. Benavides
BRAUNHAGEY & BORDEN LLP
200 Madison Ave., 23rd Floor
New York, NY 10016
Tel: (646) 829-9403
benavides@braunhagey.com

Respectfully Submitted,

*/s/ Ken Sexauer*
Ken Sexauer*
Scarlet Kim*
Brian Hauss*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500
ksexauer@aclu.org
scarletk@aclu.org
bhauss@aclu.org

Faith E. Gay (Bar No. 2117117)
Corey Stoughton (Bar No. 4152633)
Katherine Buoymaster (Bar No. 6096903)
Sylvia Woodmansee (Bar No. 6136618)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
Tel: (212) 390-9000
fgay@selendygay.com
cstoughton@selendygay.com
kbuoymaster@selendygay.com
swoodmansee@selendygay.com

*Admitted *Pro Hac Vice*

*Attorneys for Plaintiffs Hunter Demster,
Jessica Chodor, Kenneth Halt, and Melissa
Peeler*

17

**CERTIFICATE OF SERVICE**

I hereby certify that on July 29, 2026, I caused the Plaintiffs' Reply to Federal Defendants'

Response in Opposition to Plaintiffs' Motion for a Preliminary Injunction to be filed via the

Court's CM/ECF system and thereby served on this 29th day of July 2026, upon all counsel of

record.


Dated: July 29, 2026                              Respectfully Submitted,

                                                  */s/ Ken Sexauer*
                                                  Ken Sexauer*


                                                  *Admitted *Pro Hac Vice*

                                                  *Attorney for Plaintiffs Hunter Demster,
                                                  Jessica Chodor, Kenneth Halt, and Melissa
                                                  Peeler*