**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

HUNTER DEMSTER *et al*.,

*Plaintiffs*,

v.

TODD BLANCHE, *in his official capacity as Acting Attorney General of the United States*, *et al.*,

*Defendants*.

Case No. 26–cv–02546

**REPLY DECLARATION OF HUNTER DEMSTER**

I, Hunter Demster, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge:

1. I am over the age of 18, am competent to give this declaration, and testify from my own personal knowledge regarding the facts in this declaration.

2. I incorporate by reference all definitions from my opening declaration. ECF 16-49.

3. I have continued observing, gathering information about, and recording the Task Force since the filing of the complaint on May 13, 2026, ECF 1, and the filing of my opening declaration on May 28, 2026, ECF 16-49. Since my lawyers filed a motion for a preliminary injunction, I have continued to experience a variety of retaliation and intimidation by federal and state Task Force agents.

4. Task Force agents have continued to photograph or film me in response to my filming their public activities. For example:

a. On June 11 on Jackson Avenue, an unmarked plainclothes federal agent wearing a vest marked “Police” filmed or photographed me from across the street for approximately 10 minutes after I talked to a resident of the targeted house. At this scene, I was also targeted by and surveilled by a drone that

hovered directly over my head for approximately 10 minutes. I believe the drone was operated by a Task Force member because I could see what looked like a plainclothes federal agent with a laptop sitting in an unmarked truck across the street after the other agents dispersed. I know the drone was specifically targeting me because it remained over my head even after I heard the other agents present confirm that the individual they were looking for was not present at the house. This incident frightened me because, to my knowledge, it was the first time I have been surveilled by a drone. It felt like an escalation or shift to more high-tech surveillance. I am scared that I will be surveilled again by a drone in the future, either at a Task Force scene or my home;

b. On June 14 near Jackson Avenue, a plainclothes federal agent photographed or filmed me while I was recording Task Force activity from about 50 feet away. While the Task Force was leaving the scene, an unmarked plain-clothes federal agent held his phone out the window of a white unmarked Jeep that was closely followed by a THP vehicle towards me, presumably photographing or filming me;

c. On the afternoon of June 19, I was walking back to my car after filming a scene with 30-40 Task Force agents present including THP troopers and plainclothes federal agents when I saw a THP vehicle leave the scene, drive down the street, make a U-turn to pull directly behind my car, and appear to photograph my license plate. As I started walking faster back towards my car the THP trooper pulled away and drove back to the scene; and

d. On July 9, I spent about two-and-a-half hours filming a scene where the Task Force had surrounded a house near Manslick Road and Jessica Lauren Drive. An unmarked plainclothes federal agent repeatedly videotaped and/or photographed me and refused to identify himself or his agency.

5. Task Force agents have also continued to identify me by name in response to my filming and gathering information about their public operations. For example:

a. On June 15, an HSI agent approached an MPD agent filming me and asked something like "is this Hunter?" The MPD officer confirmed that was my name and showed the HSI agent his phone. The HSI agent then punched something into his phone, presumably my name, and showed it to the MPD officer.

6. Task Force agents have also continued to physically intimidate me, in response to my filming and gathering information about their public operations. For example:

a. On the evening of June 19, after I had returned to my car after filming a Task Force scene with DHS, HSI, THP, MPD, National Guard, and un-

marked federal agents present, a gray unmarked sedan full of plainclothes agents pulled up directly behind my car. An MPD vehicle with its lights flashing was already parked about a car's length ahead of my vehicle in the middle of the road. I felt blocked in and trapped. The vehicles remained boxing me in place for three to five minutes. This was nerve-wracking and I felt vulnerable;

b. On June 26, I was filming while approaching a Task Force scene when an FBI agent stuck his hand in front of my camera, pushed my phone with his hand, and attempted to push me back; and

c. On July 9, at the scene near Manslick Road and Jessica Lauren Drive, about one-and-a-half hours after I arrived and started filming about ten additional HSI and CBP agents arrived, swarmed the scene, and surrounded the family members standing outside the house. There were already more than 30 Task Force agents present, the house had already been searched, and an individual was already detained. This felt like an attempt to intimidate myself and other observers filming, as well as the family members standing outside.

7. Task Force agents have continued to invoke the Halo Law against me in a way that makes it difficult to observe, gather information about, and record Task Force activity. For example:

a. On June 11 on Jackson Avenue, at the scene with the drone that surveilled me, an unmarked plainclothes federal agent wearing a vest marked "Police" invoked the Halo Law almost immediately as I approached the scene filming in a way that prevented me from hearing the dialogue between Task Force agents armed with AR-15s surrounding a house and the homeowner; and

b. On June 27, near Jamaica Drive and Russwood Road, I was observing a scene with HSI, Federal Protective Services, MPD, Memphis Fire Department, and unmarked plainclothes federal agents present. I was across the street filming from about 40 feet away, when the Halo Law was repeatedly invoked against me by plainclothes federal agents and MPD officers. A federal agent and MPD officer then continued to walk towards me until I had been pushed back another 100 feet or about eight house down from where I had started filming. The Task Force then roped off the entire block with crime scene tape to prevent me from filming.

8. These continued incidents of retaliation have compounded the impacts of the retaliation detailed in my initial declaration. I am feeling the effects of almost ten months of retaliation and intimidation even more severely now. I recently went on vacation for nine days and it took me

five days just to decompress. Since I returned to Memphis in early July my nervous system has been completely shot, to the point where I can hardly go out and film at all anymore.

9. It now takes me at least two hours to decompress after observing and recording Task Force activity, even if the retaliatory conduct I experienced at the scene may appear relatively minor to an outside observer. This has had a severe negative impact on my personal relationships.

10. I mentioned in my previous declaration that I had been struggling to get out of my vehicle to observe and felt safer filming from within my car due to the retaliation I had experienced. Since filing that declaration, I resumed exiting my vehicle to observe whenever possible after the recent shootings of Joan Sebastian Guerrero and Lorenzo Salgado Araujo in their vehicles by agents from similar joint state and federal task forces, which significantly worsened my fear and anxiety about documenting the Task Force. But I do not feel safe outside of my car either and I continue to experience constant anxiety as a result of the retaliation I have continued to experience. As a result, I now almost always decline to go out and observe or record Task Force activity when I learn about it.

11. I have begun treatment with a trauma therapy specialist as a result of the retaliation I have experienced. I am also attending regular therapy twice as often.

Executed this 29th day of July, 2026

[signature]

Hunter Demster