**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

HUNTER DEMSTER *et al*.,

*Plaintiffs*,

v.

TODD BLANCHE, *in his official capacity as Acting Attorney General of the United States*, *et al*.,

*Defendants*.

Case No. 26–cv–02546

**PLAINTIFFS' REPLY TO STATE DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

I. Plaintiffs are likely to succeed on their retaliation claim ..............................................1

II. Plaintiffs are likely to succeed on the Halo Law challenge ..........................................2

# TABLE OF AUTHORITIES

## CASES

*ACLU of Illinois v. Alvarez*,
679 F.3d 583 (7th Cir. 2012) .......... 4

*Americans United for Separation of Church & State v. City of Grand Rapids*,
980 F.2d 1538 (6th Cir. 1992) .......... 2

*Babbitt v. United Farm Workers National Union*,
442 U.S. 289 (1979) .......... 5

*Blankenship v. Louisville-Jefferson County*,
162 F.4th 644 (6th Cir. 2025) .......... 3

*Boone County Republican Party Executive Committee v. Wallace*,
132 F.4th 406 (6th Cir. 2025) .......... 5

*Brown v. Kemp*,
86 F.4th 745 (7th Cir. 2023) .......... 2

*Children's Healthcare Is a Legal Duty, Inc. v. Deters*,
92 F.3d 1412 (6th Cir. 1996) .......... 1

*Deep South Today v. Murrill*,
779 F. Supp. 3d 782 (M.D. La. 2025) .......... 4

*Diaz v. Michigan Department of Corrections*,
703 F.3d 956 (6th Cir. 2013) .......... 1

*Enbridge Energy, LP v. Whitmer*,
135 F.4th 467 (6th Cir. 2025) .......... 1

*Ex parte Young*,
209 U.S. 123 (1908) .......... 1

*Glik v. Cunniffe*,
655 F.3d 78 (1st Cir. 2011) .......... 3

*Green v. Mansour*,
474 U.S. 64 (1985) .......... 1

*Holder v. Humanitarian L. Project*,
561 U.S. 1 (2010) .......... 2

*McCullen v. Coakley*,
573 U.S. 464 (2014) .......... 5

*Nicodemus v. City of South Bend*,
137 F.4th 654 (7th Cir. 2025) .......... 4

*Russell v. Lundergan-Grimes*,
784 F.3d 1037 (6th Cir. 2015) .......... 5

*S.H.A.R.K. v. Metro Parks Summit County*,
499 F.3d 553 (6th Cir. 2007) .......... 2

*Spann v. Hannah*,
2020 WL 8020457 (6th Cir. Sept. 10, 2020) .......... 2

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) .......... 5

*Texas v. Johnson*,
491 U.S. 397 (1989) .......... 2

*Top Flight Entertainment, Ltd. v. Schuette*,
729 F.3d 623 (6th Cir. 2013) .......... 2

*United States v. Playboy Entertainment Group, Inc.*,
529 U.S. 803 (2000) .......... 3

*Universal Life Church Monastery Storehouse v. Nabors*,
35 F.4th 1021 (6th Cir. 2022) .......... 5

*Will v. Michigan Department of State Police*,
491 U.S. 58 (1989) .......... 2

**STATUTES**

Tenn. Code Ann § 8-7-103(1) .......... 5

Defendants Matt Perry and Steven Mulroy ("Defendants") oppose Plaintiffs' preliminary injunction motion by misstating blackletter law and ignoring the extensive evidentiary record. *See* Dkt. 39 ("Opp."). Because Plaintiffs have shown a likelihood of success on the merits and the equities tip sharply in their favor, their preliminary injunction motion should be granted.[1]

## I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR RETALIATION CLAIM

State sovereign immunity does not bar this claim. *Ex parte Young* permits prospective relief against a state official whose conduct constitutes a "continuing violation of federal law," *Green v. Mansour*, 474 U.S. 64, 68 (1985)—precisely what Plaintiffs have shown here. Defendants argue that Plaintiffs must identify a particular law authorizing Defendants' unlawful conduct. Opp. 5–6. But the controlling question is whether "a state official's *action*"—not a particular statute—violates the "supreme authority of the United States." *Children's Healthcare Is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415–17 (6th Cir. 1996) (emphasis in original); *Ex parte Young*, 209 U.S. 123, 159–60 (1908). Courts routinely apply *Young* to permit suit against state officials alleged to have acted in violation of federal law, even where no statute authorized the unlawful conduct. *See, e.g.*, *Enbridge Energy, LP v. Whitmer*, 135 F.4th 467, 473–74 (6th Cir. 2025); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964–66 (6th Cir. 2013). This case is a textbook *Ex parte Young* action: Plaintiffs seek prospective relief to enjoin an ongoing pattern of retaliation, endorsed by Perry, against Plaintiffs exercising their First Amendment rights to observe, gather information about, and record Task Force agents in public. Dkt. 16-2 ("Mot.") at 4, 12–14; *see* Dkt. 34-1 ¶¶ 9–10.

Defendants further assert that Perry cannot be sued unless he adopted a "policy or custom" that caused Plaintiffs' injuries. Opp. 7. But Defendants rely solely on cases analyzing claims under

[1] Unless otherwise indicated, internal citations are omitted, alterations in original are accepted, and emphasis is added. Plaintiffs incorporate by reference their Reply to Federal Defendants' opposition.

*Monell*. And *Monell*'s "policy or custom requirement" has "no applicability to state officers who are . . . susceptible to suit under *Ex Parte Young* for injunctive relief." *Spann v. Hannah*, 2020 WL 8020457, at *3 (6th Cir. Sept. 10, 2020); *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989). Because Plaintiffs' claims are brought under *Young*, not *Monell*, Perry need only have "some connection with the alleged unconstitutional act." *Top Flight Ent., Ltd. v. Schuette*, 729 F.3d 623, 634 (6th Cir. 2013). That "connection" exists here, where Perry (1) has knowledge of the federal policy of unconstitutional retaliation; (2) is aware of, and has endorsed, the Task Force's pattern and practice of unconstitutional retaliation, which has been broadly reported; and (3) has inadequately trained, supervised, and disciplined THP troopers to prevent unconstitutional violations. Mot. 9–14 & nn.4–5; Dkts. 16-39, 16-40. Each is independently sufficient to establish Perry's "connection" to the Task Force's unconstitutional acts.

## II. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE HALO LAW CHALLENGE

Defendants ignore the as-applied nature of Plaintiffs' Halo Law challenge and raise a host of meritless arguments. *First*, they argue that the Halo Law does not regulate speech. Opp. 11–15. But, *as applied to Plaintiffs* when they are peacefully gathering information and recording, "the conduct triggering coverage under the statute" clearly implicates the First Amendment. *Holder v. Humanitarian L. Project*, 561 U.S. 1, 28, 36 (2010); Mot. 15. It is irrelevant that the statute refers to "conduct," Opp. 11, 14, 15; the First Amendment extends to "expressive conduct," *Texas v. Johnson*, 491 U.S. 397, 403 (1989), and the "conduct and activities necessary for expression," *Brown v. Kemp*, 86 F.4th 745, 779 (7th Cir. 2023); *see Ams. United for Separation of Church & State v. City of Grand Rapids*, 980 F.2d 1538, 1542 (6th Cir. 1992) (collecting cases).[2] Numerous

[2] Defendants suggest there is a right to gather news only "within the law," Opp. 12, but as *S.H.A.R.K. v. Metro Parks Summit County* explains, courts must also "determine whether the rule blocking access is, itself, constitutional," 499 F.3d 553, 560 (6th Cir. 2007).

courts have held that heightened scrutiny applies to halo laws burdening the right to gather information about and record police officers performing their duties in public. Mot. 15–16.

*Second*, Defendants argue that the Halo Law satisfies intermediate scrutiny. Opp. 15–18. They claim the law generally serves an interest in enforcing traffic laws and preserving public safety but fail to introduce any evidence that those interests justify their invocation of the law against Plaintiffs. Plaintiffs submitted a plethora of evidence that their newsgathering is non-obstructive and peaceful. *E.g.*, Dkts. 16-49 ¶ 14; 16-50 ¶¶ 12–13; 16-51 ¶ 16; 16-52 ¶ 26. Defendants have submitted no evidence to the contrary. "[P]eaceful recording . . . in a public space that does not interfere with the police officers' performance of their duties is not reasonably subject to limitation." *Glik v. Cunniffe*, 655 F.3d 78, 84 (1st Cir. 2011).

Defendants assert the Halo Law is narrowly tailored. But, as Defendants concede, existing laws already permit officers to prohibit interference, reinforcing that a prophylactic 25-foot buffer is unnecessary and overbroad. Opp. 12; Mot. 17; Dkt. 16-58 ¶¶ 36, 46.[3] As Plaintiffs' expert Jim Pugel explained, "a statutorily mandated 25-foot buffer" has never been "necessary in any [law enforcement] situation[]" he has encountered. Dkt. 16-58 ¶¶ 36–44; *see generally* Pugel Reply Decl. Rather than respond to that evidence, Defendants point to legislative debates. Opp. 13, 17. But the debates include no evidence of a *need* for a buffer zone—much less one of 25-feet that applies in all circumstances. *See id.* at 17 (Halo Law imposes "bright-line rule" based on distance). "[T]he Government must present more than anecdote and supposition" to satisfy First Amendment scrutiny. *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 822 (2000). As applied to

[3] *Blankenship v. Louisville-Jefferson County* concerned a permit that created a temporary restricted area around the Kentucky Derby, because officers otherwise "would have had *no* control over which or how many individuals were present in the immediate vicinity of the event." 162 F.4th 644, 649–50, 658 (6th Cir. 2025) (emphasis in original). Here, by contrast, Defendants concede that "pre-existing laws" help "'achiev[e]' the government's ends." Opp. 17.

Plaintiffs, who do not interfere with agents' duties, the Halo Law serves no legitimate interest.

Defendants further argue that the "obvious alternative" channel is to "record from, at most, twenty-five feet away." Opp. 17. But they ignore the evidence that this is *not* a "reasonably adequate substitute[]," *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 607 (7th Cir. 2012), because Plaintiffs often lose the ability to see, record, and otherwise gather information about the relevant law enforcement conduct if they are kept 25 feet away, *e.g.*, Dkts. 16-49 ¶¶ 24, 41, 44, 88, 103, 120; 16-50 ¶ 16; 16-52 ¶¶ 62, 79; *see also* 16-51 ¶¶ 57–62. And Defendants' assertion that Plaintiffs can "access 'body and dash cam video'" is entirely unsupported. Opp. 18. Plaintiffs, by contrast, provide evidence that Task Force agents are often in plainclothes, and their vehicles are often unmarked, *e.g.*, Dkts. 16-49 ¶¶ 30–31, 34, 42–43, 71, 87–88; 16-50 ¶¶ 18–19, 27–28; 16-51 ¶¶ 33, 41, 72, 86; 16-52 ¶¶ 35, 41, 48, 53, which means such video would not be easily accessible, if it exists at all. Nor is it a meaningful alternative to live recording. *E.g.*, Dkt. 16-50 ¶ 34 (Chodor "record[ing] and broadcast[ing] to social media in real time").

*Third*, Defendants insist the Halo Law does not "grant the police any new authority to issue 'Halo' orders." Opp. 9. But the law criminalizes noncompliance with such orders even if the individual is not obstructing law enforcement or threatening another important governmental interest. That makes the law unconstitutional as applied to Plaintiffs' peaceful information gathering and recording. *See Deep South Today v. Murrill*, 779 F. Supp. 3d 782, 829 (M.D. La. 2025); *Nicodemus v. City of South Bend*, 137 F.4th 654, 669 (7th Cir. 2025). Defendants contend that these "buffer zone" cases are inapposite because Plaintiffs want to gather information "in space[s] not traditionally open to the public." Opp. 13–14. But the record contradicts that assertion. *E.g.*, Dkt. 16-49 ¶ 15 (recording "in public" "from public streets and sidewalks"); Dkt. 16-50 ¶¶ 18, 31; Dkt. 16-51 ¶¶ 14, 17; Dkt. 16-52 ¶ 27 (similar); *see McCullen v. Coakley*, 573 U.S. 464, 476

(2014) (public streets and sidewalks are "traditional public fora").

*Finally*, Defendants argue Plaintiffs lack standing to sue Mulroy. But for a pre-enforcement challenge, Plaintiffs need only show that "the threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). Plaintiffs attest that they have engaged, and will continue to engage, in the constitutionally protected observing and recording of Task Force operations, and that state troopers have repeatedly invoked the Halo Law, impeding their ability to engage in those activities. *E.g.*, Dkts. 16-49 ¶¶ 6, 119–20, 141–49; 16-50 ¶¶ 5, 15–16, 60, 62; 16-51 ¶¶ 3–4;16-52 ¶¶ 8; *see also* 16-52 ¶¶ 56–73, 77. Given those past incidents, across numerous individuals, there is an imminent risk that the Halo Law will again be invoked against Plaintiffs, causing First Amendment injury.

Defendants respond that Mulroy must have *personally* invoked the Halo Law against them. Opp. 19. That is wrong. As Defendants' own case explains, plaintiffs may properly sue an official—like District Attorney Mulroy—with the power "to initiate . . . prosecution[]" under the relevant statute. *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1032, 1033 (6th Cir. 2022); Tenn. Code Ann § 8-7-103(1). And Defendants do not, and cannot, suggest the risk of enforcement is "chimerical." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1049 (6th Cir. 2015); *see also Boone Cnty. Republican Party Exec. Comm. v. Wallace*, 132 F.4th 406, 415 (6th Cir. 2025) (threat of "arrest, prosecution, or other enforcement action" suffices). In the year since the Halo Law was enacted, Task Force agents have repeatedly invoked the law to the detriment of Plaintiffs' First Amendment activities, *supra* pp. 4–5, including expressly threatening arrest, *e.g.*, Dkt. 16-49 ¶ 93. And because the State "has not disavowed any intention of invoking" the statute against Plaintiffs, they are "not without some reason in fearing prosecution." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979).

Dated: July 29, 2026

Respectfully Submitted,

*/s/ Ken Sexauer*
Ken Sexauer*
Scarlet Kim*
Brian Hauss*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500
ksexauer@aclu.org
scarletk@aclu.org
bhauss@aclu.org

Faith E. Gay (Bar No. 2117117)
Corey Stoughton (Bar No. 4152633)
Katherine Buoymaster (Bar No. 6096903)
Sylvia Woodmansee (Bar No. 6136618)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
Tel: (212) 390-9000
fgay@selendygay.com
cstoughton@selendygay.com
kbuoymaster@selendygay.com
swoodmansee@selendygay.com

*Admitted *Pro Hac Vice*

Zee Scout (BPR# 042637)
Lucas Cameron-Vaughn (BPR# 036284)
ACLU FOUNDATION OF TENNESSEE
P.O. Box 120160
Nashville, Tennessee 37212
Tel: (615) 320-7260
zscout@aclu-tn.org
lucas@aclu-tn.org

Matthew Borden
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Tel: (415) 599-0210
borden@braunhagey.com

Marissa R. Benavides
BRAUNHAGEY & BORDEN LLP
200 Madison Ave., 23rd Floor
New York, NY 10016
Tel: (646) 829-9403
benavides@braunhagey.com

*Attorneys for Plaintiffs Hunter Demster, Jessica Chodor, Kenneth Halt, and Melissa Peeler*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 29, 2026, I caused the Plaintiffs' Reply to State Defendants' Response in Opposition to Plaintiffs' Motion for a Preliminary Injunction to be filed via the Court's CM/ECF system and thereby served on this 29th day of July 2026, upon all counsel of record.

Dated: July 29, 2026

Respectfully Submitted,
*/s/ Ken Sexauer*
Ken Sexauer*

*Admitted *Pro Hac Vice*

*Attorney for Plaintiffs Hunter Demster, Jessica Chodor, Kenneth Halt, and Melissa Peeler*