# Exhibit 2

**From:** Dunlap, Melanie (USATNW) <Melanie.Dunlap@usdoj.gov>
**Sent:** Friday, September 4, 2026 2:56 PM
**To:** Ken Sexauer; Collins, Jennifer (USATNW); David M. Rudolph; shannon.hoffert@ag.tn.gov; Robert W. Wilson; mark.weston@ag.tn.gov
**Cc:** Scarlet Kim; Brian Hauss; Lucas Cameron-Vaughn; Zee Scout; Faith Gay; Corey Stoughton; Katie Buoymaster; Sylvia Woodmansee; Matt Borden; Marissa Benavides
**Subject:** RE: Demster v. Blanche, No. 2:26-cv-02546-MSN-ATC (W.D. Tenn.)

**This Message Is From an External Sender**
This message came from outside your organization.

Ken,
I received your letter and emails. I anticipate we will discuss these events, along with the other incidents complained of by your clients, at the hearing on September 23.

**Melanie R. Dunlap**
Assistant United States Attorney
United States Attorney's Office
Western District of Tennessee
167 N. Main Street, Suite 800
Memphis, Tennessee 38103
Phone: (901) 544-4231
Mobile: (901) 233-2062
melanie.dunlap@usdoj.gov

**From:** Ken Sexauer <KSexauer@aclu.org>
**Sent:** Thursday, September 3, 2026 5:35 PM
**To:** Dunlap, Melanie (USATNW) <Melanie.Dunlap@usdoj.gov>; Collins, Jennifer (USATNW) <Jennifer.Collins2@usdoj.gov>; David M. Rudolph <david.rudolph@ag.tn.gov>; shannon.hoffert@ag.tn.gov; Robert W. Wilson <robert.wilson@ag.tn.gov>; mark.weston@ag.tn.gov
**Cc:** Scarlet Kim <ScarletK@aclu.org>; Brian Hauss <bhauss@aclu.org>; Lucas Cameron-Vaughn <Lucas@aclu-tn.org>; Zee Scout <zscout@aclu-tn.org>; Faith Gay <fgay@selendygay.com>; Corey Stoughton <CStoughton@selendygay.com>; Katie Buoymaster <kbuoymaster@selendygay.com>; Sylvia Woodmansee <swoodmansee@selendygay.com>; Matt Borden <borden@braunhagey.com>; Marissa Benavides <benavides@braunhagey.com>
**Subject:** [EXTERNAL] Re: Demster v. Blanche, No. 2:26-cv-02546-MSN-ATC (W.D. Tenn.)

Counsel:

We write to inform you of yet another incident during which Memphis Safe Task Force agents appear to have violated Plaintiff Hunter Demster's First Amendment rights.

At around 2:30 PM today, upon arriving home from work, Mr. Demster noticed a suspicious-looking gray SUV with tinted windows parked directly in front of his house. After going inside his residence, Mr. Demster went back outside to investigate and record the vehicle. Some time after he approached the SUV, the agent in the passenger's seat partially rolled down his window. Mr. Demster could see that the agent in the driver's seat was wearing a vest with the words "POLICE HSI." Mr. Demster asked the agents, "Is there anything I can help you with?" The agent in the passenger's seat responded "no" before rolling the window up and refusing to engage further. Mr. Demster walked around to the back of the vehicle. As he did so, he saw the agent in the passenger's seat roll down his window, point his phone at Mr. Demster, and appear to photograph or video record him.

Mr. Demster proceeded to notify members of the community that Task Force agents were present at his home. Shortly thereafter, Plaintiff Melissa Peeler arrived and parked down the street from the Task Force vehicle. As she walked towards the vehicle filming, the agents drove away from Mr. Demster's residence. Neighbors later informed Mr. Demster that they believed the vehicle had been parked in front of his home for a substantial amount of time.

These facts, together with the incidents documented in our letter yesterday, establish a serious and alarming pattern of continued intimidation and harassment of Mr. Demster. Again, the timing of these incidents, following Plaintiffs' filing of this lawsuit, raise troubling questions about whether Defendants are punishing and retaliating against Mr. Demster for exercising his First Amendment right to petition the government by bringing this lawsuit.

In light of the foregoing, we request that you explain, at minimum, with respect to today's incident:

1. Why Task Force agents were sitting outside Mr. Demster's home; and
2. Why a Task Force agent photographed or filmed Mr. Demster.

We ask that Defendants respond to these questions, in addition to the requests in the letter, by close of business Friday, September 4, 2026. Again, absent Defendants' explanation of a lawful purpose for this incident (and the incidents documented in the letter), Plaintiffs may be compelled to seek emergency relief from the Court to ensure that Mr. Demster is not subjected to further harm.

Regards,
Ken

**Ken Sexauer**
Staff Attorney | Speech, Privacy, and Technology Project
American Civil Liberties Union
ksexauer@aclu.org

---

**From:** Ken Sexauer <KSexauer@aclu.org>
**Sent:** Wednesday, September 2, 2026 3:19 PM
**To:** Dunlap, Melanie (USATNW) <melanie.dunlap@usdoj.gov>; Collins, Jennifer (USATNW

<jennifer.collins2@usdoj.gov>; David M. Rudolph <david.rudolph@ag.tn.gov>; shannon.hoffert@ag.tn.gov <shannon.hoffert@ag.tn.gov>; Robert W. Wilson <robert.wilson@ag.tn.gov>; mark.weston@ag.tn.gov <mark.weston@ag.tn.gov>
**Cc:** Scarlet Kim <ScarletK@aclu.org>; Brian Hauss <bhauss@aclu.org>; Lucas Cameron-Vaughn <Lucas@aclu-tn.org>; Zee Scout <zscout@aclu-tn.org>; Faith Gay <fgay@selendygay.com>; Corey Stoughton <CStoughton@selendygay.com>; Katie Buoymaster <kbuoymaster@selendygay.com>; Sylvia Woodmansee <swoodmansee@selendygay.com>; Matt Borden <borden@braunhagey.com>; Marissa Benavides <benavides@braunhagey.com>
**Subject:** Demster v. Blanche, No. 2:26-cv-02546-MSN-ATC (W.D. Tenn.)

Counsel:

Please see attached.

Regards,
Ken

**Ken Sexauer**

Staff Attorney | Speech, Privacy, and Technology Project

American Civil Liberties Union

ksexauer@aclu.org

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

**Ken Sexauer**
Staff Attorney
Speech, Privacy, and Technology Project
ACLU National Legal Department

September 2, 2026

***VIA Electronic Mail***

Melanie R. Dunlap
Jennifer H. Collins
United States Attorney's Office
167 North Main Street, Suite 800
Memphis, TN 38103
melanie.dunlap@usdoj.gov
jennifer.collins2@usdoj.gov

David M. Rudolph
Shannon Hoffert
Robert W. Wilson
Mark Weston
Office of the Tennessee Attorney General
40 South Main Street, Suite 1014
Memphis, TN 38103
david.rudolph@ag.tn.gov
shannon.hoffert@ag.tn.gov
robert.wilson@ag.tn.gov
mark.weston@ag.tn.gov

**Re: *Demster v. Blanche*, No. 2:26-cv-02546-MSN-ATC (W.D. Tenn.)**

Counsel:

We write to inform you of two recent incidents during which Memphis Safe Task Force ("Task Force") agents appear to have violated Plaintiff Hunter Demster's First Amendment rights. We are also concerned that Task Force agents' actions were taken in retaliation for Plaintiffs filing suit and seeking preliminary injunctive relief in *Demster v. Blanche*, No. 2:26-cv-02546-MSN-ATC (W.D. Tenn.) (the "Lawsuit"). As you know, Mr. Demster is the lead Plaintiff in the Lawsuit and submitted two declarations in support of Plaintiffs' motion for a preliminary injunction. *See* Dkt. Nos. 1, 16-49, 44-1.

We request that you promptly explain the purpose for the Task Force agents' actions described below. We further demand that your clients cease and desist from taking further unlawful actions against any of the Plaintiffs in the Lawsuit. Absent counsel's demonstration of a lawful purpose for the actions described in this letter, Plaintiffs may be compelled to seek emergency relief from the Court to ensure that Plaintiffs are not subjected to further harm.

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

Plaintiffs' concerns arise out of two events from the last week:

**First**, on the evening of August 26, 2026, Mr. Demster arrived at the scene of a Task Force operation in the Berclair neighborhood of Memphis, Tennessee, to gather information about and record Task Force activity. Upon arriving, he observed a damaged automobile that appeared to have collided with another vehicle. Other bystanders near the site of the collision informed Mr. Demster that someone crashed a car while attempting to evade law enforcement officers and fled on foot. After walking a short distance and arriving at or near the intersection of N. Mendenhall Road and Owen Road, Mr. Demster observed a group of Task Force agents bearing the insignia of the United States Marshals Service ("U.S. Marshals"); Department of Homeland Security ("DHS"); Homeland Security Investigations ("HSI"); United States Customs and Border Protection ("CBP"); United States Border Patrol ("USBP"); and Tennessee Highway Patrol ("THP") and congregating at the edge of what appeared to be a ditch on the side of the road (the "Scene"). Mr. Demster proceeded to record the agents' activities on the sidewalk at least 25 feet away from the agents. He was not interfering with, impeding, or intervening in Task Force activity.

After approximately 20 minutes of recording, the agents pulled a man out of the ditch and detained him on the Scene. When Mr. Demster walked a few feet closer to capture clear footage of the scene, several agents pointed at him and yelled "25 feet." Mr. Demster responded that he was "25 feet" away but nevertheless began retreating. While he was retreating, two HSI agents started walking towards him. One of the agents, wearing a vest listing his name as "Dayhoff," continually approached him without stopping and told Mr. Demster "you're going to have to go 25 feet back from me," forcing him well in excess of 25 feet from the Scene and obstructing his view. Mr. Demster protested, asking "so every time you walk toward me I got to go back 25 feet?" to which another HSI agent responded, "Yes sir, that's the law." Mr. Demster replied that the agent was mischaracterizing the law and stopped retreating. Mr. Demster told Agent Dayhoff that he was more than 25 feet back from the Scene and Agent Dayhoff responded, "you've gotta be 25 feet back from me because I've extended the scene."

Another HSI agent with blonde hair, a baseball cap, colored tattoos on her upper arms, and another tattoo on her lower left arm, approached Mr. Demster. Mr. Demster stated that he was more than 25 feet back from the scene and that he was filming and not impeding. The HSI agent responded that she could arrest Mr. Demster. Mr. Demster responded that he was more than 40 feet back from the scene. During this exchange, an agent wearing an orange and black baseball cap and a vest marked "Police U.S. Border Patrol" circled Mr. Demster and walked behind him. The blonde HSI agent ordered Mr. Demster twice to move back an additional 25 feet "from the last officer." She then called out to another agent named "Eric." Mr. Demster asserted again

ACLU
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

that he had a right to film and that the agents were continually pushing him back and violating his First Amendment rights. The blonde HSI agent responded, "goodbye" and "we're done."

Three agents—Agent Dayhoff, the blonde HSI agent, and the USBP agent—then grabbed Mr. Demster, tackled him to the ground, pinned him down, restrained his legs by forcibly bending his knees, and handcuffed him. After tackling and handcuffing Mr. Demster, three more agents approached Mr. Demster and the three agents on the ground and shouted to bystanders "25 feet." Mr. Demster was arrested approximately 60 feet or more from the Scene where agents had detained the man they pulled out of the ditch. Mr. Demster recalls hearing the agents discuss amongst themselves that they had called the Memphis Police Department ("MPD") to come pick him up.

Approximately 20 minutes later, Lucas Cameron-Vaughn, Legal Director of the ACLU Foundation of Tennessee and counsel of record in the lawsuit, arrived on the scene. He introduced himself as Mr. Demster's lawyer to one of the agents standing near Mr. Demster, who was sitting cuffed on the curb. That agent was the same blonde HSI agent mentioned above. Mr. Cameron-Vaughn asked if Mr. Demster was detained. The blonde HSI agent responded that they were waiting for MPD. Mr. Cameron-Vaughn asked the reason for Mr. Demster's detention. The blonde HSI agent responded, "I'm not answering any questions right now" and then ordered Mr. Cameron-Vaughn and another person recording the interaction back 25 feet from her and Mr. Demster. Mr. Cameron-Vaughn explained that there is a pending lawsuit regarding the Halo Law and the agent again ordered him to retreat 25 feet from her. Mr. Cameron-Vaughn immediately complied with the order. Mr. Cameron-Vaughn then approached a few feet and asked the agent to identify herself. She asked him to move back 25 feet again and indicated that her HSI badge number was 11388.

Several minutes later, Mr. Cameron-Vaughn approached two agents then standing by Mr. Demster—Agent Dayhoff and the USBP agent who was one of the three agents who arrested Mr. Demster—to request their badge numbers. Agent Dayhoff immediately responded by saying "back up" and refused to provide his badge number. Mr. Cameron-Vaughn stated he was Mr. Demster's attorney and Agent Dayhoff responded, "do you want to get arrested for violating the law?" A bystander offered Agent Dayhoff a tool to measure out 25 feet so that the people present could be sure to remain a proper distance away, but Agent Dayhoff refused to do so. The agents released Mr. Demster from their custody shortly thereafter.

**Second**, several days later, on the afternoon of August 30, 2026, Mr. Demster was at home when a group of Task Force agents amassed across the street from his home. Mr. Demster stepped outside to investigate and saw agents wearing tactical gear bearing U.S. Marshals, HSI, USBP, and Tennessee Department of Correction insignia. As Mr. Demster approached the group

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

of agents, one of the agents called Mr. Demster by his first name. Mr. Demster did not see any of the agents engage with other community members or enter any homes on his block. The agents departed in unmarked vehicles approximately ten minutes later. As they left, an agent wearing a U.S. Marshals vest appeared to take photos and/or video of Mr. Demster and his house.

* * *

These facts are alarming. They raise significant concerns about continued unlawful retaliation and intimidation of Plaintiffs as well as continued unlawful abuse of the Halo Law to interfere with Plaintiffs' First Amendment-protected activities. The timing of these incidents—following Plaintiffs' filing of this lawsuit and while a preliminary injunction motion is pending before the Court—also raises serious questions about whether Defendants are punishing and retaliating against Mr. Demster for exercising his First Amendment right to petition the government by bringing this lawsuit or seeking to intimidate and silence Mr. Demster before his attorneys have the opportunity to argue his case before the Court.

In light of the foregoing, we request that Defendants explain the basis for the actions described above. Please explain, at minimum:

**<u>August 26, 2026 Incident</u>**

**(1)** What basis Task Force agents had to invoke the Halo Law against Mr. Demster while he was filming Task Force activities from a public sidewalk;
**(2)** What basis Task Force agents had to continually invoke the Halo Law while continually moving towards Mr. Demster;
**(3)** What basis Task Force agents had to arrest or detain Mr. Demster;
**(4)** What basis Task Force agents had for invoking the Halo Law against Mr. Cameron-Vaughn;

**<u>August 30, 2026 Incident</u>**

**(1)** Why Task Force agents were congregated outside Mr. Demster's home;
**(2)** Why a Task Force agent photographed or filmed Mr. Demster and his residence.

Plaintiffs further request that you counsel your clients that their agents, officers, employees, and all others acting in active concert with them may not engage in any conduct that is retaliatory and/or may have the effect of chilling Plaintiffs' protected expressive activity, including gathering information about and recording Task Force activity occurring in public, or participating in this case. Retaliatory conduct includes but is not limited to threatening to arrest

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

or detain Plaintiffs, arresting or detaining Plaintiffs, congregating outside Plaintiffs' homes or workplaces, or photographing or filming Plaintiffs, in response to their protected expressive activity.

Plaintiffs also request that your clients provide written notice to their agents, officers, employees, and all others acting in active concert with them, that they cannot engage in any conduct that is retaliatory and/or may have the effect of chilling Plaintiffs' protected expressive activity, including gathering information about and recording Task Force activity occurring in public, or participating in this case.

In addition, we ask that you preserve all records in Defendants' possession, custody, or control regarding Mr. Demster's August 26, 2026 arrest and agents' presence in front of Mr. Demster's home on August 30, 2026. We remind you that your clients have an ongoing responsibility to preserve all information in their possession or control related, directly or indirectly, to the Memphis Safe Task Force. Given these new violations, we will be sending a written litigation hold to your clients as a reminder of their on-going preservation obligations.

We ask that Defendants respond to this letter by close of business Friday, September 4, 2026. If we do not receive a response, we may be forced to seek a protective order and all other available legal remedies from the court.

Respectfully,

*/s/ Ken Sexauer*

Ken Sexauer
Scarlet Kim
Brian Hauss
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500
ksexauer@aclu.org
scarletk@aclu.org
bhauss@aclu.org

Zee Scout (BPR# 042637)
Lucas Cameron-Vaughn (BPR# 036284)
ACLU FOUNDATION OF TENNESSEE
P.O. Box 120160
Nashville, Tennessee 37212
Tel: (615) 320-7260
zscout@aclu-tn.org
lucas@aclu-tn.org

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

Matthew Borden
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Tel: (415) 599-0210
borden@braunhagey.com

Marissa R. Benavides
BRAUNHAGEY & BORDEN LLP
200 Madison Ave., 23rd Floor
New York, NY 10016
Tel: (646) 829-9403
benavides@braunhagey.com

Faith E. Gay (Bar No. 2117117)
Corey Stoughton (Bar No. 4152633)
Katherine Buoymaster (Bar No. 6096903)
Sylvia Woodmansee (Bar No. 6136618)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
Tel: (212) 390-9000
fgay@selendygay.com
cstoughton@selendygay.com
kbuoymaster@selendygay.com
swoodmansee@selendygay.com