**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| HUNTER DEMSTER *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>TODD BLANCHE, *in his official capacity as Acting Attorney General of the United States*, *et al.*,<br><br>*Defendants*. | Case No. 26–cv–02546 |

**JOINT STATUS REPORT**

Pursuant to the Court's September 23, 2026 Minute Entry, Dkt. 57, Plaintiffs Hunter Demster, Jessica Chodor, Kenneth Halt, and Melissa Peeler ("Plaintiffs"), together with Defendants Todd Blanche, Gadyaces Serralta, Tyreece Miller, Chad Hunt, Markwayne Mullin, David Venturella, John Condon, Dennis Fetting, Rodney Scott, and Rosario Vasquez in their official capacities ("Federal Defendants"), as well as Matt Perry and Steven Mulroy in their official capacities ("State Defendants," and together with Federal Defendants, "Defendants") jointly submit this Status Report.

The parties met and conferred on October 5, 2026 at 2:30 pm CT about the following topics: (1) supplemental briefing, (2) a draft protective order, (3) narrowing the language of Plaintiffs' proposed preliminary injunction order, (4) limited initial discovery and document preservation, and (5) scheduling a Rule 26(f) conference. The parties did not reach agreement on any of these topics. The parties' respective positions are set forth below.

## I. Supplemental Briefing

### A. Plaintiffs' Position

During the September 23, 2026 hearing, the Court raised the possibility of "additional briefing" to address cases cited during oral argument that were not briefed. *See* Dkt. 61 (Hrg. Tr.) at 120:18–25, 122:24–123:3. During the meet and confer, Plaintiffs reiterated their position regarding sequencing and timing of such supplemental briefing. *See* Dkt. 66. Noting the Court's request that the instant status report address what the parties could agree to regarding supplemental briefing, Hrg. Tr. at 130:24–131:3, Plaintiffs' counsel asked Defendants' counsel for the names of the eight cases Defendants stated they intended to address in their supplemental briefing. *See* Dkt. 67. Federal Defendants' counsel declined to provide Plaintiffs' counsel with a list during or following the meet and confer.

### B. Defendants' Position

During the meet and confer, Defendants reiterated their position regarding sequencing and timing of supplemental briefing. *See* Dkt. 67. Plaintiffs' counsel asked Defendants' counsel for the names of the eight cases that Defendants might address in their supplemental briefing, and Federal Defendants' counsel stated she did not have the list at that moment, but the cases were those cases Plaintiffs' counsel cited to at the hearing that Plaintiffs had not cited to in their pleadings, determined by comparing the hearing transcript with Plaintiffs' pleadings. It is assumed that Plaintiffs' counsel has a list of the cases they relied upon in their pleadings and argument at the hearing. Federal Defendants' counsel stated that they cited one additional case at the hearing: *Hilton v. Noem*, No. 2:26-CV-00092-JAW, 2026 WL 800228 (D. Me. Mar. 23, 2026).

## II. The Protective Order

### A. Plaintiffs' Position

In advance of the meet and confer, Plaintiffs' counsel provided Defendants' counsel with a draft protective order that closely tracks the Court-ordered protective order in *Los Angeles Press Club v. Noem*. *See* Stipulated Protective Order, *Los Angeles Press Club v. Noem*, No. 2:25-cv-05563-HDV-E (C.D. Cal Sept. 15, 2026), Dkt. 165. Defendants' counsel noted that they object to at least one paragraph but did not specify which. At the meet and confer, Defendants' counsel stated that Defendants will not agree to, nor discuss the proposed terms of, a protective order until after they have responded to the Complaint. Plaintiffs believe that entering a protective order will help expedite the discovery process and normal exchange of information.

### B. Defendants' Position

Defense counsel received a copy of Plaintiffs' 26-page proposed protective order on the afternoon of Friday, October 2, prior to the meet and confer on Monday, October 5, at 2:30pm. Federal Defendants' counsel stated it was her position that it was premature to enter a protective order, because, as she stated at the hearing on September 23, 2026, Federal Defendants object to conducting any discovery at this point in the case before Defendants have responded to the complaint, and conducting discovery prior to that time would be highly prejudicial to Defendants.[1] When Plaintiffs' counsel asked when Defendants would respond to the complaint, counsel for Federal Defendants stated it would be in compliance with the joint briefing schedule agreed to by all parties and approved by the Court. (*See* Order Granting Joint Motion to Establish Briefing

---

[1] A stay of discovery is appropriate where jurisdictional issues such as Article III standing and sovereign immunity are raised. *See Taylor v. Nichols*, No. 2:23-CV-02687-MSN-CGC, 2025 WL 3270638, at *1 (W.D. Tenn. Nov. 24, 2025) ("[D]istrict courts *must* issue a ruling on properly raised sovereign immunity defenses ... before permitting litigation to proceed.") (citations omitted).

Schedule on Motion for Preliminary Injunction and Response to Complaint, Dkt. 32). Federal Defendants' counsel stated that she objected to one paragraph, in particular. Federal Defendants' counsel indicated that, in any event, she would need to discuss Plaintiffs' proposed protective order with her agencies and could not agree to any terms of the protective order at this time. Defendants object to the entry of a protective order, and object to Plaintiffs' proposed protective order in particular, at this juncture of the case, prior to Defendants having responded to the complaint (*See Taylor v. Nichols*, No. 2:23-CV-02687-MSN-CGC, 2025 WL 3270638).

## III. Narrowing the Scope of Plaintiffs' Proposed Preliminary Injunction

### A. Plaintiffs' Position

Both before and after the September 23, 2026 hearing, Plaintiffs have tried to discuss with Defendants narrowing the scope of relief they are seeking regarding the First Amendment retaliation claim. On July 24, 2026, Plaintiffs' counsel wrote to Defendants' counsel requesting a meet and confer to discuss Defendants' objections to the scope of Plaintiffs' proposed preliminary injunction order, *see* Dkt. 16-1. Defendants refused, responding that "[Defendants'] position on the proposed preliminary injunction is outlined in [Defendants' opposition briefing]."[2] On October 2, 2026, Plaintiffs' counsel shared with Defendants' counsel a significantly revised draft proposed order (the "Proposed Order"), along with a redline of the draft against the original proposed order. Both are attached as **Exhibit 1**.

---

[2] Defendants argued in their briefing only that the part of the proposed preliminary injunction order enjoining Defendants Blanche, Serralta, Miller, Hunt, Mullin, Venturella, Condon, Fetting, Scott, Vasquez, and Perry from taking eight discrete retaliatory actions against Plaintiffs was overbroad and unworkable. *See* Dkt. 34 at 25–31. They did not contest the remainder of the proposed preliminary injunction order, including the parts of the order enjoining Defendants Perry and Mulroy from invoking, enforcing, and/or initiating any criminal prosecutions pursuant to Section 5 of Tennessee's Protecting Everyone Against Crime and Extremism Act, codified at Tenn. Code Ann. § 39-16-612(a) ("Halo Law") or requiring notice of the preliminary injunction order.

During the meet and confer, Defendants' counsel asserted that the revised terms of the Proposed Order are overbroad and unworkable for the same reasons that the terms of the prior proposed order were overbroad and unworkable. Defendants refused to specify which terms they believe are overbroad or unworkable or articulate specific reasons for their position with respect to the language of the new proposed terms, maintaining that they relied upon their arguments already made in their pleadings and at the September 23, 2026, hearing. Setting aside Defendants' position that Plaintiffs are not entitled to injunctive relief, Plaintiffs' counsel offered to discuss narrowing the proposed relief and attempted to discuss each of the revisions to the Proposed Order, but Defendants' counsel refused to engage, except to maintain that Plaintiffs were not entitled to any injunctive relief. Defendants' counsel also refused to offer any alternative terms or approaches to revising the Proposed Order that would mitigate their concerns.

In the Proposed Order, Plaintiffs have made every effort to address Defendants' overbreadth and workability arguments. Accordingly, if the Court is not inclined to enter the original proposed order, Plaintiffs would request that it instead enter the Proposed Order in Exhibit 2 for all the reasons explained at the September 23, 2026 hearing: there is a robust and unrebutted evidentiary record of Defendants retaliating against Plaintiffs in violation of the First Amendment.

**B. Defendants' Position**

When asked to discuss the proposed terms of Plaintiffs' revised preliminary injunction, counsel for Federal Defendants stated that it was their position that Plaintiffs are not entitled to a preliminary injunction, as outlined in their pleadings and at the hearing, and, therefore, the Federal Defendants could not agree to the original proposed preliminary injunction or the revised preliminary injunction. It remains the position of the Defendants that any preliminary injunction in this case is overbroad and unworkable, as outlined in their pleadings and arguments made at the hearing.

## IV. Limited Initial Discovery

### A. Plaintiffs' Position

Plaintiffs' counsel requested that, by the October 30, 2026 status conference, Defendants provide Plaintiffs with support for certain factual assertions made at the hearing, namely any evidence that: (i) any Plaintiff was acting unlawfully in any incident described in Plaintiffs' declarations, *see, e.g.*, Hrg. Tr. at 26:25–27:11–13, 33:8–11, 66:23–67:3, 88:10–13, 88:19–23; (ii) any Plaintiff was impeding an investigation in any incident described in Plaintiffs' declarations, *see, e.g.*, Hrg. Tr. at 27:1–5, 88:10–13, 88:19–23, 93:2–8; (iii) Task Force agents had a legitimate, non-retaliatory law-enforcement purpose for being outside Plaintiffs' homes during the incidents described in Plaintiffs' declarations or discussed during the September 23, 2026, hearing, *see, e.g.*, Hrg. Tr. at 90:1–20; and (iv) Task Force agents had probable cause for arresting Mr. Demster in August 2026, *see* Hrg. Tr. at 61:7–9. Plaintiffs' counsel also asked whether Defendants were amenable to any form of discovery going to the identities of agents involved in the incidents described in Plaintiffs' declarations. Defendants' counsel said they were not.

Plaintiffs' counsel explained during the parties' meet and confer that Plaintiffs' requests derive from Defendants' repeated characterizations of Plaintiffs' behavior as "unlawful" and "impeding" law enforcement before the Court on September 23, 2026 without corresponding citation to the record. Plaintiffs sought to clarify whether Defendants' factual bases for these statements exist in the record or constitute extra-record assertions.

Defendants' counsel represented that the two declarations submitted with their opposition briefing contain all factual bases for these assertions. During the meet and confer, Plaintiffs' counsel observed that, by Federal Defendants' declarant's own account, the declarant did not serve on the Memphis Safe Task Force during any time period overlapping with any of the dates of the retaliatory incidents to which Plaintiffs attested. *See* Dkt. 34-1 (Diamond Decl.) ¶ 4. Plaintiffs'

counsel then asked where in the Diamond Declaration Plaintiffs might find support for Defendants' position that, in every incident of retaliation attested to by Plaintiffs, Plaintiffs were acting unlawfully. Federal Defendants' counsel stated she relied upon the pleadings filed and arguments made at the hearing and refused to further discuss Defendants' factual bases for asserting that Plaintiffs have acted unlawfully and obstructively in each of the over 30 incidents of retaliation to which Plaintiffs have attested.

Plaintiffs' counsel also requested that Defendants provide sworn affidavits from an official from each Defendant entity confirming that their respective agencies or departments are taking affirmative steps to preserve relevant discovery, explaining that these requests arise out of preservation concerns discussed during the September 23, 2026 hearing. *See* Hrg. Tr. at 124:18–25, 127:21–24. As Plaintiffs' counsel explained during the meet and confer, Plaintiffs have good reason for making this concededly unusual request: there are well-documented preservation issues concerning many of the same Federal Defendant agencies across the country in related cases. In response, Defendants' counsel categorically refused to provide any such affidavits.

Seeking compromise, Plaintiffs' counsel asked whether Defendants' counsel might be willing to offer "anything at all" to confirm that, at minimum, counsel had provided their clients with litigation holds and attendant instructions regarding their clients' duty to preserve. Other than stating that they had forwarded Plaintiffs' litigation hold letters to their clients, Defendants' counsel did not provide any other specific assurance that their clients had been made aware of and are adhering to their obligations to preserve.

**B. Defendants' Position**

Federal Defendants' counsel listened to Plaintiffs' discovery requests but reiterated their position that it would be highly prejudicial to the Defendants to engage in discovery prior to responding to the complaint, as discussed with the Court at the hearing. (*See* Dkt. 61, 127:6-10)

(*See also Taylor v. Nichols*, No. 2:23-CV-02687-MSN-CGC, 2025 WL 3270638, at *1 (W.D. Tenn. Nov. 24, 2025)). Federal Defendants' counsel stated they would respond to discovery in line with the Federal Rules of Civil Procedure. The Federal Defendants will also rely upon the declaration of Daryl Diamond, their pleadings, and counsel's argument at the hearing regarding support for their arguments in opposition to Plaintiffs' motion for preliminary injunction.

Plaintiffs' counsel requested a sworn affidavit from each defendant entity confirming, in part, that the litigation hold letters had gone out to each entity and that each affiant *personally* confirmed collecting the information referred to in the litigation hold letters. Counsel for Federal Defendants and State Defendants stated that they would not provide such affidavits. In response to Plaintiffs' Position above, when Plaintiffs' counsel asked whether Defendants' counsel might be willing to offer "anything at all" to confirm that, at minimum, counsel had provided their clients with litigation holds and attendant instructions regarding their clients' duty to preserve, counsel for Federal Defendants disagrees with Plaintiffs' counsel's statement that "Defendants' counsel did not provide any other specific assurance that their clients had been made aware of and are adhering to their obligations to preserve." Federal Defendants' counsel stated that all parties are aware of litigation hold and preservation requirements that come into play with any lawsuit, and Defense counsel both confirmed that they had forwarded Plaintiffs' litigation hold letters to their respective clients. Federal Defendants' counsel did state that Plaintiffs' litigation hold letters were overbroad and an abuse of litigation hold letters.

## V. Scheduling a Preliminary Conference

### A. Plaintiffs' Position

Plaintiffs' counsel notified Defendants' counsel that, at the October 30, 2026 status conference, Plaintiffs plan to request that the Court set a preliminary scheduling conference.

Plaintiffs' counsel asked whether Defendants would consent to scheduling a Rule 26(f) conferral in advance of the October 30 status conference.

**B. Defendants' Position**

Defendants' counsel object to setting a scheduling conference because a scheduling conference will not be triggered until they respond to the Complaint. Defendants' counsel reiterated that they object to any type of discovery until they have responded to the Complaint.

Dated: October 7, 2026

/s/ Sylvia Woodmansee
Sylvia Woodmansee (Bar No. 6136618)
Faith E. Gay (Bar No. 2117117)
Corey Stoughton (Bar No. 4152633)
Katherine Buoymaster (Bar No. 6096903)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
Tel: (212) 390-9000
swoodmansee@selendygay.com
fgay@selendygay.com
cstoughton@selendygay.com
kbuoymaster@selendygay.com

Scarlet Kim*
Ken Sexauer*
Brian Hauss*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500
scarletk@aclu.org
ksexauer@aclu.org
bhauss@aclu.org

Zee Scout (BPR# 042637)
Lucas Cameron-Vaughn (BPR# 036284)
ACLU FOUNDATION OF TENNESSEE
P.O. Box 120160

Respectfully Submitted,

D. MICHAEL DUNAVANT
United States Attorney
Western District of Tennessee

/s/ Melanie R. Dunlap
Melanie R. Dunlap (TN BPR #22477)
Jennifer H. Collins (TN BPR #27985)
Assistant United States Attorney
167 North Main St., Ste. 800
Memphis, Tennessee 38103
Phone: 901-544-4231
Fax: 901-544-4230
melanie.dunlap@usdoj.gov
jennifer.collins2@usdoj.gov

*Attorneys for Federal Defendants*

JONATHAN SKRMETTI
Tennessee Attorney General and Reporter

/s/ David M. Rudolph
David M. Rudolph
James R. Newsom III
Office of Tennessee Attorney General
One Commerce Square
40 South Main Street, Suite 1014
Memphis, TN 38103

Nashville, Tennessee 37212
Tel: (615) 320-7260
zscout@aclu-tn.org
lucas@aclu-tn.org

Matthew Borden*
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Tel: (415) 599-0210
borden@braunhagey.com

Marissa R. Benavides*
BRAUNHAGEY & BORDEN LLP
200 Madison Ave., 23rd Floor
New York, NY 10016
Tel: (646) 829-9403
benavides@braunhagey.com

*Attorneys for Plaintiffs Hunter Demster, Jessica Chodor, Kenneth Halt, and Melissa Peeler*

*Admitted *Pro Hac Vice*

David.rudolph@ag.tn.gov
Jim.Newsom@ag.tn.gov

*Attorneys for State Defendants*