**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

**HUNTER DEMSTER, JESSICA CHODOR,
KENNETH HALT, and MELISSA PEELER,**

**Plaintiffs,**

**v.** **Case No. 2:26-cv-02546-MSN-atc**

**TODD BLANCHE, in his official capacity as
Acting Attorney General of the United States, at al.**

**Defendants.**

**DECLARATION OF SPECIAL AGENT JOHN K. HENDERSON**

I, John K. Henderson , pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

1. I am employed by U.S. Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), as a Special Agent, in Denver, CO. I have over 40 years of experience as a Federal, state, and local law enforcement officer.

2. In my current position, I conduct criminal investigations as part of a Homeland Security Task Force based in the Denver, CO area. As part of my duties, I perform a variety of criminal investigation and law enforcement duties while on temporary duty assignments to various areas outside of the Denver, CO area.

3. The statements contained in this declaration are based upon my personal knowledge or upon information provided to me in my official capacity.



EXHIBIT 3

4. As part of my official duties, from about August 21, 2026, to September 8, 2026 (including travel days) I was on TDY assignment to the Memphis Safe Task Force. During this assignment, I was attached to the Tillman Task Force operation out of the Memphis Police Department, Tillman Street Station. My duties included assisting the Memphis Police Department, Tennessee Highway Patrol, and other Federal law enforcement agencies with crime suppression activities.

5. From August 31, 2026, to September 6, 2026, I was an HSI Team Leader. Our work hours were from 1200-2400 daily.

6. On or about September 3, 2026, I was monitoring the Memphis Police radio channel and heard that a detective was following a vehicle suspected of involvement in an armed robbery in the Tillman District. I was previously briefed on the suspect vehicle. When I arrived at the Tillman District Station for the 1200 briefing, we were told of the detective's observations of the suspect vehicle and that it had since left the area. We were asked to immediately go to a home in the Hillcrest area in Memphis to see if the suspect returned. We left the briefing so we could immediately respond. We were also advised that it was a known drug sales and use house and in prior enforcement actions people ran out the back and tried to escape through the neighboring yards.

7. Based on this information, I positioned members of the team on Hillcrest, where they could observe the house, and on Hudson Street, behind (east) the house to intercept anyone running out the back. Since things can develop quickly, this was the most prudent way to ensure we had coverage of the area to intercept any suspects. While on surveillance, members of the team reported various people coming and going from the house in a manner consistent with observations of previous drug sales locations.

8. I positioned myself and my partner on Hudson Street where we tried several locations from which to observe the rear of the house, but we had a hard time determining the exact location of the rear of the Hillcrest house due to obstructed views. At about 1:15 pm we settled in a position facing north on Hudson and were sitting there for several minutes when we observed a green Kia Soul pull into the driveway behind us and an adult male get out of the car. The individual walked towards our car with his cell phone out and appeared to take pictures or was filming. I presumed it was a concerned homeowner, which is not unusual, but he approached the car and asked if he could "help us;" with a partially lowered window either my partner or I replied "no." The individual continued to walk around the car and take photos of our tag and yelled out that "ICE" was in the neighborhood. I never got a clear look at the individual because the phone was in front of his face and my view was obstructed by the angle of the car and his position relative to where I was sitting.

9. After a few minutes I observed other people coming out of their houses and arriving in a car and looking in our direction. Because this could alert people in the suspect house and was interfering with our law enforcement operation, I decided to move out of the area, and another unit replaced us on the observation of the street, but at a farther away, less strategically advantageous position.

10. I did not take photos, videos, or capture any recordings of Mr. Demster with a phone or other recording device and did not retaliate against Mr. Demster in any way. I have not conducted any investigations into Plaintiff Hunter Demster and did not know we were parked near his residence on September 3, 2026.

11. We were not on Hudson Street for any reason related to Mr. Demster. We were there for the above referenced law enforcement operation to try and apprehend a dangerous suspect involved in an armed robbery.

12. Although I did not recognize Mr. Demster on September 3, 2026, I later realized that I had encountered him two days prior, on September 1, 2026, at a different location.

13. On September 1, 2026, I encountered Mr. Demster while serving on The Tillman Task Force and was engaged in an enforcement action on Baltic Street, Memphis at a known abandoned house used for prostitution and drug activity. The encounter occurred at around 6:30 p.m. after we made several arrests in the residence and one of the individuals arrested was being interviewed by Memphis Police officers in the back of a patrol car in front of the location. While we were in front, two or three adult males approached us and began filming us with their cell phones. I believe Mr. Demster was one of individuals approaching us. On request by the Memphis Police Lieutenant on the scene, I directed the individuals move back a bit from the scene. This was necessary because filming the individuals being interviewed in the police car could compromise the interviewees' safety and privacy if their cooperation with police was made public. My encounter with Mr. Demster lasted about two minutes and was limited to instructing the individuals filming to move back from the scene, and they complied.

14. Asking these individuals to move back from the active law enforcement scene was not done in retaliation for the individuals filming.

I declare, under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief, as of the time of signature.

Executed this 8th day of October 2026.

JOHN K HENDERSON
Digitally signed by JOHN K HENDERSON
Date: 2026.10.08 13:21:32 -05'00'

John K. Henderson
Special Agent
Homeland Security Investigations
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security