**IN THE UNITED STATES DISTRICT COURT
FOR WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| **HUNTER DEMSTER, JESSICA CHODOR, KENNETH HALT, and MELISSA PEELER,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Case No. 2:26-cv-02546-MSN-atc** |
| **TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, *et al.*,** | ) | |
| **Defendants.** | ) | |

---

**STATE DEFENDANTS' SUPPLEMENTAL RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

---

Pursuant to the Court's Order of October 15, 2026, D.E. 70, State Defendants Matt Perry, in his official capacity as head of the Tennessee Highway Patrol, and Steven J. Mulroy, in his official capacity as District Attorney for Shelby County, Tennessee, offer this supplemental response in opposition to Plaintiffs' Motion for a Preliminary Injunction. While State Defendants have identified eight cases cited by Plaintiffs' counsel for the first time during oral argument on September 23, 2026,[1] the instant response will focus only on two of those authorities, through which Plaintiffs ask this Court to apply incorrect legal standards to its decision on Plaintiffs' request for extraordinary relief.

[1] Those cases include *Allee v. Medrano*, 416 U.S. 802 (1974), cited in "Official Transcript of Proceedings" ("Trans."), D.E. 61 at 20:9; *Morrison v. Bd. of Educ. of Boyd Cty.*, 521 F.3d 602 (6th Cir. 2008), Trans. at 21:17; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), Trans. at 36:6; *Houston v. Hill*, 482 U.S. 451 (1987), Trans. at 69:6; *Bennett v. Hendrix*, 423 F.3d 1247 (11th Cir. 2005), Trans. at 80:21; *Lemaster v. Lawrence Cty.*, 65 F.4th 302 (6th Cir. 2023), Trans. at 97:5; *Venema v. West*, 133 F.4th 625 (6th Cir. 2025), Trans. at 117:16; and *Peatross v. City of Memphis*, 818 F.3d 233 (6th Cir. 2016), Trans. at 118:25.

## I. Plaintiffs misconstrued the standards governing sovereign immunity and official capacity liability under § 1983.

At oral argument, both parties recognized that the State Defendants' invocation of sovereign immunity is subject to *Ex parte Young*, 209 U.S. 123 (1908), but they staunchly disagreed on whether Plaintiffs' retaliation claim meets that doctrine's requirements. Trans., D.61 at 47:10, 49:6-8. Plaintiffs said it does because Col. Perry "is connected to the ongoing pattern of unconstitutional retaliation because he is [sic] implicitly authorized or approved or knowingly acquiesced to the unconstitutional course of conduct." *Id.*, at 47:14-18. In support, Plaintiffs cited *Venema v. West*, 133 F.4th 625 (6th Cir. 2025), and *Peatross v. City of Memphis*, 818 F.3d 233 (6th Cir. 2016). Plaintiffs' reliance on those cases is misplaced. To demonstrate why, State Defendants begin with *Ex parte Young* itself.

*Ex parte Young* is an exception to state sovereign immunity for claims seeking prospective injunctive relief against state officials in their official capacities. *Diaz v. Mich. Dept. of Corrections*, 703 F.3d 956, 964 (6th Cir. 2013). To meet the exception, Plaintiffs must make two distinct showings: (1) a violation or imminent violation of federal law that is ongoing and not simply confined to past conduct, *Green v. Mansour*, 474 U.S. 64, 68 (1985); and (2) "some connection" between the alleged violation and the official to be enjoined. *Young*, 209 U.S. at 157. This Court has jurisdiction over Plaintiffs' claims against State Defendants only to the extent they satisfy both of *Ex parte Young*'s requirements for each of their claims. *See Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015).

It is Plaintiffs' burden to establish this Court's jurisdiction over their retaliation claim against the State. *See Lewis v. Whirlpool Corp.*, 630, F.3d 484, 487 (6th Cir. 2011). And because State Defendants have invoked *Ex parte Young*, that burden means that Plaintiffs must "allege facts showing how a state official is connected to, or has responsibility for, the alleged

constitutional violations." *Top Flight Ent. Ltd. v. Schuette*, 729 F.3d 623, 634 (6th Cir. 2013) (citing *Floyd v. Cnty. of Kent*, 454 Fed.Appx. 493, 499 (6th Cir. 2012). But Plaintiffs do not identify any such connection. They have disclaimed any challenge to particular conduct by Col. Perry, Tr., D.E. 61 at 47:19–22, and instead focus almost exclusively on the actions of individual state troopers who are not defendants in this action. *See* State Defts.' Resp. in Opp. to Pls.' Mot. for Prelim. Inj., D.E. 39 at 9. Those allegations alone cannot overcome the State's sovereign immunity.

Plaintiffs assert that Col. Perry has sufficient connections to the alleged unconstitutional violations, thereby purportedly satisfying *Ex parte Young*, based on any one of three different theories: (1) that Col. Perry maintains a policy resulting in his subordinates unconstitutional acts, (2) that he has knowledge of and thus has acquiesced to those acts, (3) and that he has inadequately trained them. Pls. Mem. in Supp. of Mot. for Prelim. Inj., D.E. 16-2 at 10.

But neither *Venema* nor *Peatross* supports any of their three theories. In fact, neither case addressed sovereign immunity (or even official capacity liability) at all. Instead, both considered whether the defendants, a warden of a Michigan Department of Corrections facility and a director of the Memphis Police Department, respectively, were entitled to *qualified* immunity against *individual* capacity claims of supervisory liability. *See Venema,* 133 F.4th at 632-33; *Peatross,* 818 F.3d at 240-41. By invoking these cases, Plaintiffs misdirected the Court to standards governing both the wrong kind of immunity and the wrong kind of liability. *See generally, Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985) (emphasizing the differences between personal and official capacity actions as well as between qualified and sovereign immunity). Put simply, decisions that involve neither state sovereign immunity nor official capacity liability have little bearing on how this Court should assess Plaintiffs' theories. This supplemental response addresses the correct standards for both.

## II. Col. Perry is not a proper *Ex parte Young* defendant.

Rather than relying on *Venema* or *Peatross*, this Court should look to binding Sixth Circuit authority, which makes clear that mere inaction on the part of a state official does not satisfy *Young*. *See Children's Healthcare is a Legal Duty*, *Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996) ("The plaintiffs before us are not complaining of any action by General Montgomery. What we have here is not action, but inaction, and *Young* does not apply.") That authority effectively dispenses with Plaintiffs' second and third theories, as their claims of acquiescence and failure to train are predicated on actions Col. Perry *did not* take.

That leaves only Plaintiffs' assertion that individual troopers were acting pursuant to a federal policy of retaliation that Col. Perry adopted on behalf of the State. Compl., D.E. 14 at 69, ¶ 236. As a factual matter, it appears that Plaintiffs' policy allegation rests on a similar ground of inaction as their other two theories. *See, e.g.,* Pls. Mem. in Supp. of Mot. for Prelim. Inj., D.E. 16-2 at 14 (criticizing Col. Perry's refusal to commit to affirmative action in response to a legislator's question). But, more importantly, Plaintiffs' suggestion that the existence of a policy can overcome state sovereign immunity stems directly from *Monell v. Dep't. of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). ("[T]he touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution."); *cf. Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 37 (2010) ("The 'policy or custom' requirement rests upon that distinction [between a governmental unit's own actions and those of others] and embodies it in law."). And, as Plaintiffs' own authority demonstrate, *Monell* focuses on municipal liability and has nothing to do with a State's immunity under *Ex parte Young*. *See* Pls.' Reply to Federal Defts. Resp. in Opp. to Pls.' Mot. for Prelim. Inj., D.E. 44 at 11, n. 2 (citing *Rounds v. Clements*, 495 F. App'x 938, 941 (10th Cir. 2012); Pls.' Reply to State Defts.

Resp. in Opp. to Pls. Mot. for Prelim. Inj., D.E. 45 at 6 (citing *Spann v. Hannah*, 2020 WL 8020457 at *3 (6th Cir. Sept. 10, 2020).

Fortunately, to resolve this case, the Court need not decide whether such a *Monell*-style policy claim levied against a State could ever satisfy *Ex parte Young*. Even assuming, arguendo, that *Monell*'s standards govern that inquiry,[2] Plaintiffs' contention that Col. Perry adopted a policy of retaliation would require Plaintiff show a legislative enactment or policy; an action taken by an official with final decisionmaking authority; a policy of inadequate training or supervision; or a custom of tolerance or acquiescence of federal rights violations, *Rubicon*, 179 F.4th at 452, none of which Plaintiffs have shown, for the reasons explained in Part III below.

Thus even on Plaintiffs' own theory, they cannot satisfy *Ex parte Young*. And to the extent Plaintiffs also press *Monell* as their theory of substantive liability, they are likewise unlikely to prevail.

## III. Plaintiffs' *Monell*-style policy theory also fails on its own terms to support official capacity liability.

On a *Monell* theory, in order to award Plaintiffs extraordinary relief, the Court would have to find that Plaintiffs are likely to succeed on their claim that (1) through its "deliberate conduct," the State of Tennessee does, in fact, maintain a clear policy or custom of retaliation; and (2) that such policy or custom was the "moving force" behind the alleged violations. *See Rubicon Real Estate Holdings, LLC v. City of Pontiac*, 179 F.4th 431, 451-54 (6th Cir. 2026), *petition for cert. filed*, No. 26-359 (U.S. Sept. 16, 2026). And, in the unusual circumstances of this case, Plaintiffs

---

[2] Defendants do so for the purpose of argument in the alternative only, without conceding that a sovereign state could ever be liable under § 1983 on a *Monell* policy theory.

would have to make a third clear showing that Col. Perry's alleged adoption of that policy or custom of retaliation was motivated by hostility toward their protected First Amendment conduct.[3]

To satisfy the first prong, a clear state policy or custom, Plaintiffs would have to do more than broadly assert that unnamed officers engaged in instances of misconduct. *Cf. Wood v. Moss*, 572 U.S. 744, 763-64 (2014) ("We therefore decline to infer from alleged instances of misconduct on the part of particular agents an unwritten policy of the Secret Service to suppress disfavored expression, and then to attribute that supposed policy to all field-level operatives.") And they would have to do more than rely on a jumble of vague references to supposed knowledge and/or acquiescence, inadequate training and/or supervision, or patterns of behavior. *Compare* Trans., D.E. 61 at 41:19-42:10, 47:16-17 *with Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 372-73 (6th Cir. 2011) ("Indeed, it is altogether unclear what constitutes the . . . Policy…. As best we can tell, the policy is alleged to be an Orwellian monster that consists of some amorphous combination of a 'policy, practice, procedure, and/or custom of Defendants.")

Instead, Plaintiffs would have to establish one of what the Sixth Circuit has called "four *discrete* avenues" for proving the existence of a policy or custom. *Rubicon*, 179 F.4th at 452 (emphasis added). These include: "(1) a legislative enactment or policy; (2) an action taken by an official with final decisionmaking authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Id.* As Plaintiffs have not challenged a formal THP regulation and, as stated above, have disclaimed a focus on any particular

---

[3] Plaintiffs sought to evade this daunting requirement at oral argument by suggesting that the subjective intent requirement associated with their "policy of retaliation" claim is limited to the Ninth Circuit. *See* Trans., D.E. 61 at 105:22-106:11. That attempt fails in light of the Supreme Court's holding that a § 1983 claim against a governmental entity incorporates the state-of-mind element required to prove the underlying constitutional violation. *See Bd. of County Comm'rs. of Bryan Cnty. v. Brown*, 520 U.S. 397, 405 (1997).

conduct by Col. Perry, *see* Trans. D.E. 61 at 47:19-22, they would have to show the existence of a policy on the third or fourth avenues.

Official capacity failure to train claims must satisfy “rigorous requirements of culpability and causation.” *Byrum v. Knox County*, ---F.4th---, 2026 WL 3026245 at *4 (6th Cir. Oct. 8, 2026) (quoting *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 995 (6th Cir. 2017)). Plaintiffs would have to show that (1) the Highway Patrol’s “training program was inadequate for the tasks that [troopers] must perform;” (2) the “inadequacy was the result of [the State’s] deliberate indifference;” and (3) the “inadequacy was closely related to or actually caused the injury.” *Id.; see also City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (“We hold today that the inadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.”)

Failure to supervise official capacity claims likewise require a showing of deliberate indifference. *Winkler v. Madison County*, 893 F.3d 877, 902-03 (6th Cir. 2018). This “stringent standard of fault” far exceeds “simple, or even heightened negligence,” and requires proof that supervising Highway Patrol personnel disregarded the risk of Plaintiffs’ claimed First Amendment injuries, and that those injuries were “a known or obvious consequence” of their decision to do so. *See Bryan Cnty*., 520 U.S. at 407, 410.

Plaintiffs’ pleadings contain no specific allegations about the Highway Patrol’s training or supervisory practices with respect to the First Amendment. Instead, they identify two arguably “supervisory” actions to which Plaintiffs object: an alleged failure to investigate Plaintiff Chodor’s complaint, *see* Compl., D.E.14 at 81, ¶ 256; Pls. Mem. in Supp. of Mot. for Prelim. Inj., D.E. 16-2 at 14, and Col. Perry’s response to a question about alleged trooper misconduct in connection with federal immigration enforcement, *see* Compl., D.E. 14 at 81, ¶ 257; Pls. Mem. in Supp. of Mot. for Prelim. Inj., D.E. 16-2 at 14. Sixth Circuit caselaw is clear that the first allegation would

not be enough to warrant relief: "an allegation of a *single* failure to investigate a single plaintiff's claim does not suffice. As a result, a claim based on inadequate investigation requires not only an inadequate investigation in this instance, but multiple earlier inadequate investigations, and they must concern comparable claims." *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 495 (6th Cir. 2020). And, as referenced previously, the second allegation did not involve the First Amendment. Such paltry showings would not establish a policy of inadequate training or supervision.

Finally, Plaintiffs' approach under the fourth avenue, a custom of tolerance or acquiescence, would fail because they simply count alleged retaliatory incidents involving troopers and declare that ten alleged incidents constituted a pattern "sufficient to put a defendant on notice of the ongoing course of unlawful conduct." Trans., D.E. 61 at 118:1-13. But that conclusion runs afoul of *Thomas v. City of Chattanooga*, 398 F.3d 426, 431 (6th Cir. 2005), where the Sixth Circuit affirmed a trial court's determination that no less than 45 excessive force complaints did not show a clear and persistent pattern of illegal activity that the government deliberately ignored in the absence of data showing what a "normal" number of excessive force complaints would be. Moreover, the *Thomas* panel was clear that a finding of a governmental policy based on a custom of inaction must rest on a pattern that goes beyond the facts of Plaintiffs' own case. *Id.* at 434. Here, Plaintiffs have offered scant testimony from only two nonparties, each alleging a single instance of retaliation by THP officers. *See* Declaration of James West, D.E. 16-54 at 10, ¶¶ 42-43; Declaration of Christopher Kersey, D.E. 16-55 at 10, ¶¶ 29-30. That would hardly establish "the existence of a clear and persistent pattern." *See Thomas*, 398 F.3d at 429 (citing *Doe v. Claiborne Cnty.*, 103 F.3d 495, 508 (6th Cir. 2005)).

Even if the Court were to conclude that Plaintiffs' cited ten incidents establish a pattern of misconduct that the Highway Patrol deliberately ignored, § 1983's remaining causation requirement would stand as a formidable obstacle to Plaintiffs' requested relief. As noted

previously, that requirement insists that a defendant's policy or custom must have been the "moving force" behind Plaintiffs' injuries. *Rubicon*, 179 F.4th at 453-54. But, on Plaintiffs' telling, their eight incidents of trooper retaliation are what put the Highway Patrol on notice of illegality in the first instance. Logic insists that Plaintiffs cannot have it both ways—an incident cannot possibly be its own cause. Put differently, if the Court were to find that, taken together, the recounted incidents and the Highway Patrol's subsequent alleged inaction were enough to establish an unwritten policy of First Amendment retaliation, a tacit signal to individual troopers around the State that such behavior is condoned, authorized, and approved, then the Court could not simultaneously find that the resulting unwritten policy motivated the first recounted incidents.

**CONCLUSION**

In short, Plaintiffs' claims against Col. Perry fail at the onset. Though they recounted a litany of alleged constitutional violations at oral argument, *see, e.g.,* Trans., D.E. 61 at 35:14-22, neither *Venema* nor *Peatross* provides this Court with a basis to attribute those actions of individual troopers to Col. Perry. Col. Perry's supposed inaction in the face of those violations does not satisfy *Ex parte Young*. Plaintiffs also fail to plausibly allege facts indicating Col. Perry has otherwise adopted a policy of retaliation connecting him to those violations, or that any such purported policy was the moving force behind any violation. Thus, each of Plaintiffs' theories collapse, Tennessee's sovereign immunity remains intact, and Plaintiffs fail to show official capacity liability. Accordingly, this Court should deny Plaintiffs' request for extraordinary relief, as well as any subsequent requests for discovery. *See Kerchen v. University of Michigan*, 100 F.4th 751, 760-61 (6th Cir. 2024).

Respectfully submitted,
**JONATHAN SKRMETTI**
**Attorney General and Reporter**

Shannon Hoffert, BPR #28430
Deputy Attorney General
David M. Rudolph, BPR #13402
Senior Assistant Attorney General
James R. Newsom III, BPR #6683
Special Counsel
Mark Weston, BPR #38585
Assistant Attorney General
Office of the Tennessee Attorney General
40 South Main Street, Suite 1014
Memphis, Tennessee 38103-1877
Phone: 901-543-4162
Fax: 901-543-9025
david.rudolph@ag.tn.gov
shannon.hoffert@ag.tn.gov
jim.newsom@ag.tn.gov
mark.weston@ag.tn.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2026, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's ECF system to:

Scarlet Kim
Ken Sexauer
Brian Hauss
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
scarletk@aclu.org
ksexauer@aclu.org
bhauss@aclu.org

Faith E. Gay
Corey Stoughton
Katherine Buoymaster
Sylvia Woodmansee
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104
fgay@selendygay.com
cstoughton@selendygay.com
kbuoymaster@selenday.com
swoodmansee@selendygay.com

Zee Scout
Lucas Cameron-Vaughn
ACLU Foundation of Tennessee
P.O. Box 120160
Nashville, TN 37212
zscout@aclu-tn.org
lucas@aclu-tn.org

Melanie R. Dunlap
Assistant United States Attorney
167 N. Main St. Ste. 800
Memphis, TN 38103
melanie.dunlap@usdoj.gov

________________________________

*Counsel for Defendants Colonel Matt Perry and District Attorney General Steven J. Mulroy in their official capacities*